1    PETER RUKIN (SBN 178336)
    *prukin@rhdtlaw.com*
2    VALERIE BRENDER (SBN 298224)
    *vbrender@rhdtlaw.com*
3    RUKIN HYLAND DORIA & TINDALL LLP
    100 Pine Street, Suite 2150
4    San Francisco, CA 94111
    Telephone:   (415) 421-1800
5    Facsimile:    (415) 421-1700

6    WILMER J. HARRIS (SBN: 150407)
    *wharris@sdshhlaw.com*
7    SCHONBRUN DESIMONE SEPLOW HARRIS & HOFFMAN LLP
8    715 Fremont Avenue, Suite A
    S. Pasadena, CA 91030
9    Telephone: (626) 441-4129
    Facsimile: (626) 283-5770

10

11    (Additional counsel listed on the next page)

12

13               UNITED STATES DISTRICT COURT

14               CENTRAL DISTRICT OF CALIFORNIA

15

16    RAYMOND ALFRED and MARVIN
17    BARRISH, individually and on behalf
    of all others similarly situated,

18              Plaintiffs,

19        vs.

20    PEPPERIDGE FARM, INC., a
21    Connecticut Corporation, and DOES 1-
    100, inclusive,

22              Defendants.

23

24

| |
|---|
| CASE NO.: 2:14-cv-7086-JAK-RZx |
| Honorable John A. Kronstadt |
| **PLAINTIFFS' RESPONSE TO DEFENDANT'S EVIDENTIARY OBJECTIONS TO THE PORTIONS OF THE EXPERT REPORT OF GREGORY PINSONNEAULT (DKT. 75) AND THE UNAUTHORIZED SUPPLEMENTAL EXPERT REPORT OF DANIEL J. SLOTTJE (DKT. 75-2)** |

25

26

27

28

1    THOMAS V.URMY, JR.
     *turmy@shulaw.com*
2    IAN J. MCLOUGHLIN
     *imcloughlin@shulaw.com*
3    SHAPIRO HABER & URMY LLP
     Seaport East
4    Two Seaport Lane
     Boston, MA 02210
5    Telephone: (617) 439-3939
     Facsimile: (617) 439-0134
6
     ADAM SHAFRAN
7    *ashafran@rflawyers.com*
     RUDOLPH FRIEDMANN LLP
8    92 State Street
     Boston, MA 02109
9    Telephone: (617) 723-7700
     Facsimile: (617) 227-0313
10
     Attorneys for Plaintiffs
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                              - ii -

PLAINTIFFS' RESPONSE TO DEFENDANT'S EVIDENTIARY OBJECTIONS
CASE NO.: 2:14-CV-07086-JAK-RZX

1
2
3
4
5
6

       Plaintiffs respectfully submit this response in opposition to Defendant Pepperidge Farm, Inc.'s Evidentiary Objections to the Expert Report of Gregory Pinsonneault (Dkt. 75) and the unauthorized Supplemental Expert Report of Daniel J. Slottje (Dkt. 75-2). As set forth below, Defendant's Objections lack merit, the Pinsonneault Report should be properly considered as part of the class certification record, and Dr. Slottje's Supplemental Report should be stricken and be disregarded.

7

## A. Pinsonneault Report

8
9
10
11
12
13
14
15
16
17
18
19
20
21

       Because no surreply is allowed under the Central District Rules, Defendant uses "evidentiary objections" to respond to Plaintiffs' devastating critique of its expert's report. To begin with, Dr. Slottje has been forced to admit that his analysis of "*route listings*" failed to capture at least eleven such route listings. What Defendant calls "double or triple counting" (Dkt. 75 at 1-2) is merely an accurate count of the number of distinct route listing observations, many of which Dr. Slottje missed *entirely*. Dr. Slottje tries to excuse his mistake by claiming that comparing listings in the pre period to listings in the post period is "apples to oranges." In fact, by considering non-sale listings in the post period while ignoring non-sale listings in the pre period, it is Dr. Slottje who has ensured that no apples-to-apples comparison of listings can take place. Further, far from evidencing Pinsonneault's "unreliabl[ility]," Slottje's *admitted* errors, when corrected, result in *dramatic* changes in certain of his findings (Dkt. 75-2 at 21) and underscore the unreliability of his methodology.

22
23
24
25
26
27
28

       Defendant's objection to Pinsonneault's use of the Internet Archive (also known as the Wayback Machine) as "unreliable" and hearsay is dramatically undercut by Dr. Slottje himself, who says he used the Internet Archive for the *same purpose* as Pinsonneault (Dkt. 75-2 at 7 n. 8) ("I used the Internet Archive Wayback Machine to find archived listings for 30 routes posted on 22 days…"). Further, Pinsonneault did not use the listings on the Internet Archive for the truth of the matters asserted in the listings, but rather for the fact of the *listings*. *See Markel*

PLAINTIFFS' RESPONSE TO DEFENDANT'S EVIDENTIARY OBJECTIONS
CASE NO.: 2:14-CV-07086-JAK-RZX

1    *American Ins. Co. Eyeglasses*, 241 F.R.D. 534 (D. MD 2007) (rejecting FRE 901

2    challenge to archived website page; "Plaintiff has presented no evidence that the

3    Internet Archive is unreliable or biased").

4           The rest of the alleged "objections" to the Pinsonneault Report are not proper

5    objections, but merely regurgitations of Slottje's flawed analysis. Pinsonneault did

6    not state that Slottje should have "excluded" the large number of splits in the pre

7    period, but rather observed that Slottje failed to take any steps to account for the high

8    number of splits in the pre period, and failed to consider whether the spike in splits in

9    the pre period (and the subsequent fall-off in splits that occurred five months prior to

10   the filing of the litigation) was caused by something other than the filing of the

11   lawsuit. As explained by Pinsonneault, there were 13 splits and realignments in the

12   10-month period from May 27, 2013 through March 17, 2014, and then a dramatic

13   drop-off – the next split/realignment was not until November 16, 2014. For an expert

14   supposedly opining on how an event was "affecting" route sales, Slottje exhibited a

15   remarkable lack of curiosity about the high number of splits in the pre period. Even

16   after Pinsonneault demonstrated that Dr. Slottje's conclusions are purely driven by

17   his inclusion of splits in his analysis, Slottje says there is "no reason" to distinguish

18   between sales and splits, despite the fact that Pepperidge Farm itself tracked and

19   analyzed them separately (*See, e.g*., Dkt. 56-29 at 60-61), and pushed its managers to

20   convince SDAs to split their routes (Dkt. 56-33 p. 2) (directing DSMs push route

21   split on SDAs).

22          Defendant's characterization of Pinsonneault's observation of a large fall-off

23   in route sales during the second half of the pre period (before the filing of this

24   lawsuit) as "cherry-picking" is deeply ironic. Mr. Pinsonneault splits Dr. Slottje's

25   period of analysis for the pre period into two periods of equal duration to test

26   whether a trend existed prior to the filing of the lawsuit. It is Dr. Slottje that could

27   not justify the dates he selected for his pre period analysis. Indeed, at his deposition,

28

- 2 -

PLAINTIFFS' RESPONSE TO DEFENDANT'S EVIDENTIARY OBJECTIONS
CASE NO.: 2:14-CV-07086-JAK-RZX

1   Dr. Slottje could provide no defense for the selection of the August 2014 date other

2   than that was the date that Defendant gave him. The fact that Defendant's expert sees

3   no value in examining whether the supposedly observed "softening" in the route

4   "market" actually commenced before this litigation was filed, or actually *slowed*

5   after the litigation was filed, speaks volumes about his analytic approach.

6          Defendant's explanation of its contention that Pinsonneault relied on

7   "erroneous and/or speculative assumptions unsupported by the record" states that

8   "Mr. Pinsonneault's opinion is premised upon alleged errors made by Dr. Slottje that

9   either were not made or that were immaterial." However, Dr. Slottje admitted many

10  of these errors in his supplemental report and purports to correct for the errors, as

11  evidenced by Defendant's statements in its own Objection ("To the extent there were

12  any errors in the data analyzed by Dr. Slottje, they have now been corrected.")

13  Further, the statement that the alleged errors were immaterial is belied by the

14  summary statistics that Dr. Slottje presents in his reports. For example, the "Average

15  Change in Route Sale Price /Sales Ratio" changed from -13.6 in Dr. Slottje's original

16  report to -1.0 in his Supplemental Report. This level of change can hardly be

17  described as "immaterial." Dr. Slottje's refusal to reconsider his opinion despite such

18  significant changes in his underlying calculations speaks volumes about his analytic

19  approach and the unreliability of Dr. Slottje's conclusion that the market for

20  Defendant's routes "softened considerably."

21         Defendant also wrongly contends that Pinsonneault says that Slottje should

22  have excluded from his analysis the sale of distributorships during the pre period that

23  had been held on a long-term basis. Again, Pinsonneault said no such thing. Rather,

24  he observed that the pre period contained a disproportionate number of sales of

25  routes that had been held since the 1970s and 1980s, when route ratios were much

26  lower. A meaningful analysis of the sort purportedly being conducted by Slottje

27  should have taken that fact into consideration.

28

PLAINTIFFS' RESPONSE TO DEFENDANT'S EVIDENTIARY OBJECTIONS
CASE NO.: 2:14-CV-07086-JAK-RZX

1         Finally, Defendant defends Slottje's failure to conduct any test of statistical

2    significance on the grounds that Slottje's analysis was a "population study," not a

3    survey. But Slottje's own statements belie that claim. Slottje repeatedly states that he

4    is drawing conclusions about the entire California route market, not merely the

5    routes on which transactions occurred. He has looked at a limited number of

6    transactions for a limited number of routes, and from that snapshot opined regarding

7    "this action's impact on the *California market*…." If Slottje had performed a

8    population study, his conclusions about route value change would be valid for the

9    universe of routes he actually sampled, an opinion he has notably *not* expressed.

10   **B. Slottje Supplemental Report**

11        Defendant's submission of a supplemental report from Dr. Slottje is not

12   contemplated by the Civil Local Rules, and essentially functions as an impermissible

13   surreply. Central District Local Rule 7-10. It should be disregarded on that basis, as

14   well as because it is unreliable for all the reasons previously expressed.

15

16   Dated: December 10, 2015        Respectfully submitted,

17

18                          RUKIN HYLAND DORIA & TINDALL LLP

19

20                          By: */s/ Peter Rukin*

21                          Counsel for Plaintiffs

22

23

24

25

26

27

28

- 4 -

PLAINTIFFS' RESPONSE TO DEFENDANT'S EVIDENTIARY OBJECTIONS
CASE NO.: 2:14-CV-07086-JAK-RZX