THOMAS V. URMY, JR.
turmy@shulaw.com
IAN J. MCLOUGHLIN
imcloughlin@shulaw.com
SHAPIRO HABER & URMY LLP
Seaport East
Two Seaport Lane
Boston, MA 02210
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

ADAM SHAFRAN
ashafran@rflawyers.com
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
Telephone: (617) 723-7700
Facsimile: (617) 227-0313

ATTORNEYS FOR PLAINTIFFS

(Additional counsel listed on the next page)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND ALFRED and MARVIN BARRISH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PEPPERIDGE FARM, INC., a Connecticut Corporation, and DOES 1-100, inclusive,<br><br>Defendants. | CASE NO.: 2:14-cv-7086-JAK-RZx<br><br>Honorable John A. Kronstadt<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

PETER RUKIN (SBN 178336)
*prukin@rhdtlaw.com*
VALERIE BRENDER (SBN 298224)
*vbrender@rhdtlaw.com*
RUKIN HYLAND DORIA & TINDALL LLP
100 Pine Street, Suite 2150
San Francisco, CA 94111
Telephone:  (415) 421-1800
Facsimile:   (415) 421-1700

WILMER J. HARRIS (SBN: 150407)
*wharris@sdshhlaw.com*
SCHONBRUN DESIMONE SEPLOW HARRIS & HOFFMAN LLP
715 Fremont Avenue, Suite A
S. Pasadena, CA 91030
Telephone: (626) 441-4129
Facsimile: (626) 283-5770

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     ARGUMENT ........................................................................................................2

     A.      ALVES IS AN ADEQUATE REPRESENTATIVE FOR A SUBCLASS OF CURRENT DISTRIBUTORS.....................................................................2

         1.      ALVES WILL PROTECT THE INTERESTS OF CURRENT DISTRIBUTORS. ....................................................................................2

         2.      ALVES' INTERESTS IN THIS LAWSUIT ARE IDENTICAL TO THE INTERESTS OF THE OTHER CURRENT DISTRIBUTORS............5

         3.      ALVES' "PERSONAL CIRCUMSTANCES" DO NOT RENDER HER ATYPICAL OR INADEQUATE AS A CLASS REPRESENTATIVE.................................................................................10

     B.      PLAINTIFFS' SUBCLASS PROPOSAL SATISFIES RULE 23. ...........................11

         1.      ALVES' CLAIMS ARE TYPICAL OF CURRENT DISTRIBUTORS. ..................................................................................11

         2.      PLAINTIFFS' PROPOSED SUBCLASSES ARE ASCERTAINABLE. ..................................................................................12

         3.      THE PROPOSED SUBCLASSES SATISFY COMMONALITY, PREDOMINANCE, AND SUPERIORITY UNDER RULE 23. .................13

     C.      PLAINTIFFS' COUNSEL'S PROPOSED REPRESENTATION OF THE SUBCLASSES IS APPROPRIATE UNDER APPLICABLE ETHICAL STANDARDS. ..................................................................................................13

III.    CONCLUSION ...................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Ahlquist v. Bimbo Foods Bakeries Distribution, Inc.*,

    No. 12-cv-1272, Order Granting Final Approval of Class Action Settlement  (D.Ct. Jun. 24, 2013) (Dkt. 45) ............................................................................................................ 7

*Alexander v. FedEx Ground Package Sys., Inc.*,

    765 F.3d 981 (9th Cir. 2014) ................................................................................... 13

*Allen v. Dairy Farmers of Am., Inc.*,

    No. 5:09-cv-230, 2012 U.S. Dist. LEXIS 164718 (D.Vt. Nov. 19, 2012) .................... 15

*Flatt v. Superior Court*,

    9 Cal. 4th 275 (1994) ............................................................................................. 14

*Guifu Li v. A Perfect Day Franchise, Inc.*,

    No. 5:10-cv-01189-LHK, 2011 U.S. Dist. LEXIS 114821 (N.D. Cal. Oct. 5, 2011) .................... 3

*Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*,

    102 F.R.D. 457 (N.D. Cal. 1983) ............................................................................. 3

*Lanner v. Wimmer*,

    662 F.2d 1349 (10th Cir. 1981) ............................................................................... 3

*Lerwill v. Inflight Motion Pictures, Inc.*,

    582 F.2d 507 (9th Cir. 1978) ............................................................................... 4, 6

*Martinez v. Flowers*,

    No. 15-05112, Order Denying Class Certification (C.D. Cal. Feb. 1, 2016) ................... 4

*Norris-Wilson v. Delta-T Grp., Inc.*,

    270 F.R.D. 596 (S.D. Cal. 2010) ............................................................................. 3

*Overton v. Vita-Food Corp.*,

    94 Cal. App. 2d 367 (1949) ..................................................................................... 8

*Radcliffe v. Hernandez*,

    818 F.3d 537 (9th Cir. 2016) ............................................................................. 13, 14

*Ruggles v. Wellpoint, Inc.*,

    272 F.R.D. 320 (N.D.N.Y. 2011) ............................................................................. 4

*Ruiz v. Affinity Logistics*,

    754 F.3d 1093 (9th Cir. 2014) ............................................................................... 13

*Stockwell v. City & Cnty. of S.F.*,

    No. C 08-5180 PJH, 2015 U.S. Dist. LEXIS 61577 (N.D. Cal. May 8, 2015) ............................. 6

*United States Fid. & Guar. Co. v. Lord*,
   585 F.2d 860 (8th Cir. 1978) ............................................................................................ 3

*Ward v. Taggart*,
   51 Cal. 2d 736 (1959) ...................................................................................................... 8

**STATUTES**

Cal. Civ. Code § 3517 ...................................................................................................... 8

**OTHER AUTHORITIES**

5 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 23.25[2][b][iii] ......................... 4

# I.    INTRODUCTION

Late last year, Plaintiffs Raymond Alfred ("Alfred") and Marvin Barrish ("Barrish") moved for class certification. Dkt. 54-1. Defendant Pepperidge Farm, Inc.'s ("Pepperidge Farm") primary argument in opposition was that the Plaintiffs were inadequate class representatives because they are former distributors, whereas the proposed class included current distributors who had potentially conflicting interests. Dkt. 61 at 1, 3-10. Plaintiffs denied that there was any conflict between the two groups, but argued that if there was, the problem could be cured by the certification of two subclasses: former distributors represented by Plaintiffs Alfred and Barrish, and current distributors represented by a proposed new plaintiff Ashley Alves ("Alves"). Dkt. 72 at 1-4; Dkt. 81 at 1-8. By order dated August 5, 2016, the Court permitted Pepperidge Farm to depose Alves and her husband, and asked for supplemental briefing on Plaintiffs' subclass proposal. Dkt. 105.

Plaintiffs' subclass proposal would plainly avoid the purported conflict originally identified by Pepperidge Farm and discussed by the Court in its August 5, 2016 Order, since former distributors who no longer own routes would not represent current distributors who do. However, Pepperidge Farm's supplemental brief (Dkt. 112) now tries a different argument, which is that *no one* can adequately represent current distributors because the very existence of the lawsuit harms their interests. This argument fails for all the reasons discussed below.

Alves is an adequate representative of current distributors because her interests are identical to their interests. Pepperidge Farm argues that Plaintiffs' proposal fails to satisfy other requirements of Rule 23, but these arguments either rehash points from previous briefs to which Plaintiffs have already responded, or are otherwise baseless. Pepperidge Farm also argues that Plaintiffs' counsel cannot represent the proposed subclasses because they previously represented members from each subclass, but the recent Ninth Circuit case cited by Pepperidge Farm actually

Supplemental Brief in Support of Plaintiffs' Motion for Class Certification
Case No.: 2:14-cv-7086-JAK-RZx

supports Plaintiffs' counsel's proposal. The Court should therefore grant Plaintiffs'

motion for class certification.

## II.    ARGUMENT

### A.    Alves is an Adequate Representative for a Subclass of Current Distributors.

#### 1.  Alves will Protect the Interests of Current Distributors.

Pepperidge Farm's principal argument against Alves serving as a subclass

representative is that pursuit of this lawsuit conflicts with the financial interests of

current distributors because it reduces the value of their routes (Dkt. 112 at 3). This

argument fails for at least three reasons.

<u>First</u>, this lawsuit will exist and have whatever impact on route values it is

going to have whether or not this Court permits Alves to serve as a representative of

a current distributor subclass. Whichever way the Court rules on Plaintiffs' motion

for class certification, the case will inevitably proceed on the individual and Private

Attorneys General Act claims asserted by Plaintiffs Alfred and Barrish.[1] The

resolution of those claims will have the same effect on route values whether or not a

subclass of current distributors is certified. If the Court rules in an individual action

that Pepperidge Farm is treating its distributors as employees, rather than

independent contractors, the effect on route values will be the same. The only

difference is that if a subclass is certified with Alves as its representative, the current

distributors will have someone acting on their behalf in the litigation.

<u>Second</u>, the fact that some current distributors may have some "concerns"

about the possible effect of this lawsuit if it proceeds to judgment does not render

Alves an inadequate representative. What Pepperidge Farm is really arguing is not

that *Alves* is inadequate, but that *no current distributor* could serve as an adequate

subclass representative because some current distributors are concerned about the

---

[1] The Court could also certify a class of former distributors, as Pepperidge Farm has presented no argument that Plaintiffs Alfred and Barrish are inadequate representatives for a class (or subclass) of former distributors. In addition, Alves could file her own individual lawsuit against Pepperidge Farm even if this Court did not permit her to join the present action as a subclass representative.

Supplemental Brief in Support of Plaintiffs' Motion for Class Certification
Case No.: 2:14-cv-7086-JAK-RZx

possible effect of the litigation. *Id.* at 3 ("Ultimately, as PFI showed, these concerns were not the product of the proposed class representatives being former and not current Distributors, but from the *mere pursuit* of this lawsuit by *any plaintiff* on behalf of Current Distributors.") (emphasis in original).

Differences of opinion among class members are common in class actions. The mere fact that a few members of the class object to – or in this case have "concerns" about – the litigation is insufficient to render a putative class representative inadequate. *See, e.g.*, *Guifu Li v. A Perfect Day Franchise, Inc.*, No. 5:10-cv-01189-LHK, 2011 U.S. Dist. LEXIS 114821, at *27 (N.D. Cal. Oct. 5, 2011) ("The fact that all proposed class members may not like each other, or even that some potential class members may prefer their current employment situation, is not sufficient to defeat adequacy"); *Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 606 (S.D. Cal. 2010) ("[T]he conflicts that Rule 23(a)(4) is concerned about are conflicts between the class representatives and other members of the putative class, not between those who do and don't think a lawsuit is a good idea in the first place. Just because potential class members disagree with the spirit of an action doesn't mean it shouldn't be certified. It will almost always be the case that some putative class members are happy with things as they are.") (citation omitted); *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457, 464 (N.D. Cal. 1983) (although some members of class did not believe that challenged conduct of defendant was objectionable, this type of conflict among class members is insufficient to defeat class certification). Courts will *not* refuse to certify a class simply because some class members might prefer to leave the violation of their rights unremedied. *See, e.g.*, *Lanner v. Wimmer*, 662 F.2d 1349, 1357 (10th Cir. 1981) (holding class certification is still appropriate even where "some members of the class might prefer not to have violations of their rights remedied") (quoting *United*

Supplemental Brief in Support of Plaintiffs' Motion for Class Certification
Case No.: 2:14-cv-7086-JAK-RZx

1   *States Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 873 (8th Cir. 1978)); *Ruggles v.*

2   *Wellpoint, Inc.*, 272 F.R.D. 320, 338 (N.D.N.Y. 2011) ("Adequacy is not

3   undermined where the opposed class members' position requires continuation of an

4   allegedly unlawful practice."); 5 James Wm. Moore et al., MOORE'S FEDERAL

5   PRACTICE § 23.25[2][b][iii] ("[A] court will not refuse to certify a class solely

6   because some of the class members prefer to leave their rights unremedied").

7        As reflected in the testimony of Alves and the other current distributors who

8   submitted declarations (and were deposed) in support of Plaintiffs' motion for class

9   certification, many current distributors do support this lawsuit. Dkt. 54-4-54-8. If a

10  few remain concerned about the litigation, they can opt out. *See, e.g.*, *Lerwill v.*

11  *Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Martinez v.*

12  *Flowers*, No. 15-05112, Order Denying Class Certification at 10 (C.D. Cal. Feb. 1,

13  2016) (submitted in this case at Dkt. 86-1 at 13) ("Just because a subset of the

14  putative class may not agree with the lawsuit does not mean that certification is

15  foreclosed. In fact, there will almost always be a group of putative class members

16  who decide to opt out of a class action lawsuit; hence, the opt-out provision built into

17  Rule 23.") (citation omitted).

18        <u>Third</u>, Pepperidge Farm has presented no evidence demonstrating that route

19  values are declining **because of** the lawsuit. As an initial matter, this Court should

20  reject and ignore the new expert report Pepperidge Farm has submitted from Dr.

21  Daniel Slottje because the period for expert reports and discovery has long since

22  passed, and the Court did not authorize further expert reports or discovery in its

23  August 5, 2016 Order (Dkt. 105). But even if the Court considers the new report, it is

24  critical to understand that, like Pepperidge Farm's prior reports, Dr. Slottje claims **no**

25  **causal connection** between the existence of this litigation and any reduction in route

26  values or "softening of the market" for routes.[2] This is important because route

27  _____

28  [2] The new report also commits the same errors and unfounded assumptions as the prior ones, which Plaintiffs pointed out in their original briefing. Dkt. 72 at 3-4; Dkt. 72-8.

- 4 -

Supplemental Brief in Support of Plaintiffs' Motion for Class Certification
Case No.: 2:14-cv-7086-JAK-RZx

1    values have been declining since long before this lawsuit was filed, and there is

2    evidence that the real reason for the decline is the increasing level of controls that

3    Pepperidge Farm is placing on distributors. *See, e.g.*, August 11, 2011 e-mail from

4    Mark Dolbaum, Pepperidge Farm's Business Development Manager, to Kyle Jordan,

5    Pepperidge Farm's former Director of Distributor Development (Exhibit[3] 1) ("Kyle,

6    this number is not realistic. . . . We completed 18 company route transactions last

7    year and they will not be sold again this year. The nation and the west have been

8    trending down for several years. The financial guidelines have become stricter –

9    higher down payments, background checks, business plans etc."); 1st Alves

10   Deposition ("Dep.") (Exhibit 2) 46:21-47:4; 2nd Alves Dep. (Exhibit 3) 54:24-55:21;

11   Barrish Dep. (Exhibit 4) 30:6-15; Bradley Caputo Dep. (Exhibit 5) 164:5-165:4. The

12   real "cloud on the title" over the distributorships is not any "uncertainty" created by

13   the lawsuit, but the fact of Pepperidge Farm's treatment of its supposed independent

14   distributors as if they were employees.

15          Put simply, there is **no evidence** in the record that this lawsuit is reducing

16   route values, but even if there was, that would not be a reason for this Court to refuse

17   to certify a subclass of current distributors with Alves at the helm. On the contrary,

18   given that the issues underlying this lawsuit will continue to be litigated in one case

19   or another, the best way to protect the interests of current distributors is to certify a

20   subclass with Alves as its representative.

21                   **2.  Alves' Interests in this Lawsuit are Identical to the Interests of
                          the Other Current Distributors.**

22
23          Pepperidge Farm argues that Alves is an inadequate representative because she

24   refuses to consider the "risks" of the lawsuit because she does not believe it will

25   actually result in reclassification of distributors as employees. Applying the

26   appropriate legal standard, the question is not how Alves calculates the "risks" posed

27   by the lawsuit, but whether Alves' *interests* in this litigation align with the *interests*

28

---

[3] "Exhibit" refers to an Exhibit to the accompanying Declaration of Ian J. McLoughlin.

Supplemental Brief in Support of Plaintiffs' Motion for Class Certification
Case No.: 2:14-cv-7086-JAK-RZx

of the other current distributors. "Generally, representation will be found to be adequate when… the class representatives are not disqualified by interests antagonistic to the remainder of the class." *Stockwell v. City & Cnty. of S.F.*, No. C 08-5180 PJH, 2015 U.S. Dist. LEXIS 61577, at *18 (N.D. Cal. May 8, 2015) (citing *Lerwill*, 582 F.2d at 512). Here, Alves has the same interests as the current distributor subclass.

Alves, like every other current distributor identified by Pepperidge Farm, has an interest in being treated as a "true" independent contractor who is not subjected to rigorous and unjustified controls by Pepperidge Farm:

> Q. What do you want to see happen as an outcome of this lawsuit?
> A. I want to stop being treated as an employee for myself as well as all of the current distributors. I want all of us to be able to run our businesses as we see fit and have full control as independent business owners and not feel threatened and not feel pressured from Pepperidge Farm to conform to their standards of what they see fit for our own business.

2nd Alves Dep. 28:6-15.

Alves, like every other current distributor, wishes to *increase* the value of distributor routes, and she believes that this lawsuit will have that effect:

> Q. Why don't you believe the lawsuit would devalue your routes?
> A. I don't believe it would devalue the routes because I feel that my feeling of being treated as an employee, that if that was to stop and I was to have full control over my business the way that I should, and the way that I was represented through Pepperidge Farm showing this is how it should be, it would only increase the value of my route….

> \* \* \*

> Q. Are you aware of whether or not the value of routes in California has declined since the lawsuit was filed?
> A…. I personally don't feel that this should affect the value of our routes, and reason being is if things go the way I would like them to go for all current SDAs, I personally feel that our route values would be better if not the same that they are right now. I highly doubt that they would ever be devalued, and the basis of that is because at any given time Pepperidge Farm can stop doing what they're doing and make a heck of a lot of SDAs happy.

1st Alves Dep. 46:21-47:4; 2nd Alves Dep. 54:24-55:21.

- 6 -

In Alves' view, the practical solution here, which would be beneficial to all current distributors, is a negotiated resolution under which Pepperidge Farm compensates distributors for its past misclassification and, going forward, relaxes its controls on distributors and treats them as actual independent contractors:

> Q.[I]f as a result of the lawsuit the model changed such that there were no longer independent SDAs but employee distributors, would it concern you if that's a potential outcome of the lawsuit?...
> A. [I]f we were employees, hypothetically, the overtime we would get paid, the meal breaks we don't get that we would have to… back pay… wage statements, things like having vacation time, I mean, personally I think it would be a great disadvantage for Pepperidge Farm to do that…. my opinion is that if that were the case, why didn't Pepperidge Farm from day one exhibit that instead of having independent distributors, why would they want to change that now when at any given time, like I said before, they can just stop implementing the things that they're doing with route rides and store evaluations and other factors like so, they can stop that at any given time and it would change the relationship that we have….
>
> Personally, I feel ultimately the goal here is very simple, and it's for Pepperidge Farm, as I have stated before, to stop the route rides, to stop the governing in our stores, to stop implementing all these standards that they see fit, to stop butting in our business. They can easily stop that at any point and stop treating us like employees.

*Id.* at 56:25-58:1; 63:23-64:5.[4] This is how a similar class action against Bimbo Bakeries was resolved. *See* 1st Alves Dep. 56:22-60:14; *Ahlquist v. Bimbo Foods Bakeries Distribution, Inc.*, No. 12-cv-1272, Order Granting Final Approval of Class Action Settlement in (D.Ct. Jun. 24, 2013) (Dkt. 45) and accompanying term sheet (Exhibit 7).

In addition, even in the unlikely event that Pepperidge Farm reclassified distributors as employees, the distributors would still be protected because they would continue to own their routes under their Consignment Agreements, and

---

[4] Alves' testimony is similar to the testimony of Plaintiffs Barrish and Alfred, illustrating that there is no conflict, even between current and former distributors, let alone within the proposed subclass of current distributors. Barrish, for example, stated he was pursuing the litigation to prompt a resolution under which Pepperidge Farm would stop treating distributors as employees by relaxing the increasing level of controls exercised over them, stated he had no interest in reclassifying distributors as employees, and thought that it was extremely unlikely that reclassification would ever happen. Barrish Dep. 18:21-21:5; 28:10-29:5; Alfred Dep. (Exhibit 6) 40:13-42:17; 220:20-221:16.

- 7 -

Pepperidge Farm could not take those routes away without paying them 125% of the routes' fair market value. 2nd Alves Dep. 25:22-26:11, 58:19-61:9; Consignment Agreement (Dkt. 112-4) ¶ 20. Pepperidge Farm cites language in the Consignment Agreement indicating that an essential condition of the agreement is that the distributors are independent contractors. But this language would not justify Pepperidge Farm taking the distributors' routes away from them without paying them 125% of fair market value. It is black-letter law that Pepperidge Farm cannot benefit from its own breach or wrong. *See, e.g.*, *Overton v. Vita-Food Corp.*, 94 Cal. App. 2d 367, 371 (1949) ("A party to a contract cannot take advantage of his own act or omission to escape liability thereon…. Where a party to a contract prevents the fulfillment of a condition precedent or its performance by the adverse party, he cannot rely on such condition to defeat his liability.") (citation omitted); *see also* *Ward v. Taggart*, 51 Cal. 2d 736, 741-42 (1959) (citing Cal. Civ. Code § 3517 ("No one can take advantage of his own wrong.")). So if Pepperidge Farm breached the contract, or otherwise violated the law, by improperly treating distributors as employees instead of independent contractors, it could not take advantage of its own wrong by taking distributors' routes without paying them what they are owed under the agreement.

The declarations from current distributors submitted by Pepperidge Farm do not dispute any of the foregoing, or reflect any opposition to the litigation *per se*, but instead reflect "concern" that the lawsuit could somehow affect their ability to sell their routes, drive down route values, or result in distributors being reclassified as employees. *See* Dkt. 112, CE 6-8. These concerns appear to have been largely manufactured by Pepperidge Farm itself, which has been communicating with current distributors and aggressively planting these ideas in their heads.

- 8 -

On June 26, 2015, Pepperidge Farm's Vice President of Distribution Strategy Kyle Jordan sent a letter to all distributors in California (Exhibit 8). The very first sentence of that letter misleadingly states: "As you may know, Pepperidge Farm is defending against a lawsuit brought by two former California SDAs who claim that Pepperidge Farm misclassified them as independent businesspersons, ***and should have treated them as employees***" (emphasis added). This mischaracterizes this lawsuit; the complaint in no way suggests that Pepperidge Farm "should have" treated distributors as employees. Instead, the complaint alleges that even though Pepperidge Farm labels the distributors as independent contractors, in reality it treats them as employees by retaining and exercising the right to control the means and manner of their job performance. The complaint seeks damages (not injunctive relief) as a result.

The letter from Mr. Jordan to distributors also implies that the lawsuit could interfere with the ability of distributors to market and sell their routes: "If there is ever a ruling that California SDAs have been misclassified as independent businesspersons, it is unclear what the impact would be on the day-to-day operations of distributorships or the ability of SDAs to market and sell their routes." In addition, current distributor Cindy Dufault has testified that Mr. Jordan spoke to her in a threatening and intimidating manner, telling her in no uncertain terms that the lawsuit could "greatly" and "severely" "hurt" distributors' ability to sell their routes and jeopardize distributors' ownership of the routes. Cindy Dufault Dep. (Exhibit 9) 35:1-40:11. Mr. Jordan has had similar conversations with other current distributors. 1st Alves Dep. 43:3-46:20; 2nd Alves Dep. 61:16-62:10; 64:10-66:1; 168:23-169:14). Jordan Dep. (Exhibit 10) 362:4-364:3.

In reality, Alves shares the interests and concerns of the other current distributors, and is open to hearing their ideas to the extent they differ from hers. 2nd

Supplemental Brief in Support of Plaintiffs' Motion for Class Certification
Case No.: 2:14-cv-7086-JAK-RZx

Alves Dep. 40:14-41:16; 52:14-54:4; 167:12-169:14. Her willingness to do so does not, as Pepperidge Farm suggests, create individualized issues, but rather it demonstrates Alves' willingness to make reasoned and informed decisions that are in the best interest of the class as a whole. And Alves' belief that the end result of this litigation will not be the reclassification of distributors as employees is shared by others. *See* Barrish Dep. 20:25-22:10 ("My feeling is there's no way possible that [reclassification as employees]'s going to happen, in my opinion. My opinion is that Pepperidge Farm simply is going to have to change their mode of operation and honor the contracts, and that's going to be the solution…. [T]he current structure is very beneficial to Pepperidge Farm, very cost effective. They could not possibly, in my opinion, distribute the product at the low cost that they have in place. And if they had employees, you know, it would be probably economically unfeasible for them. They know they have a good deal. They just need to honor their end of the arrangement."); Alfred Dep. 221:8-16.

### 3. Alves' "Personal Circumstances" do not Render Her Atypical or Inadequate as a Class Representative.

Pepperidge Farm also argues that Alves' "personal circumstances" render her atypical and inadequate, either because she has less equity in her route than certain other current distributors or is not planning to sell her route as soon as some other distributors, such that she would supposedly be less worried about her route's value going down as a result of the lawsuit. These arguments are based on the new, unauthorized expert report from Pepperidge Farm, which this Court should ignore. But Pepperidge Farm's arguments also fail on the merits because Alves has testified unequivocally that she has no interest in reducing the value of her route. This is common sense; no rational current distributor wants the value of their route to go down, regardless of whether they have 20% equity or 100% equity in the route, or whether they plan to sell the route in a month or in ten years. As previously noted,

- 10 -

Alves' position, and the position of other Pepperidge Farm distributors, is that the value of the routes will actually go up as a result of this lawsuit.[5] Alves' interests are the same as those of the other current distributors.

## B.    Plaintiffs' Subclass Proposal Satisfies Rule 23.

### 1.  Alves' Claims are Typical of Current Distributors.

Contrary to Pepperidge Farm's argument that Alves' interests are not typical of those of other current distributors, their interests are all identical, for the reasons discussed above. One specific issue Pepperidge Farm focuses on is "pallet fees," fees that distributors pay for the direct shipment of Pepperidge Farm product to certain stores on their routes. Dkt. 112 at 8-9. Pepperidge Farm asserts that, unlike Alves and many other current distributors, some current distributors are not opposed to such fees. *Id.* First, as set forth above, a minor difference of opinion such as this does not rise to the level of making Alves' claims atypical or rendering her an inadequate representative. Second, the complaint here is not seeking any injunction to stop pallet fees, just damages for past misclassification. The only way this issue would arise is in the context of a settlement and, in that arena, Alves is fully prepared to listen to the input of other current distributors. 2nd Alves Dep. 40:14-41:16; 52:14-54:4; 167:12-169:14. Alves' claim, that Pepperidge Farm has misclassified distributors as employees and is thus liable for damages, is entirely typical of the claims of other current distributors. Dkt. 54-1 at 13-14.

---

[5] Pepperidge Farm also argues that Alves is inadequate because she may be entitled to more damages than other current representatives because, for example, she worked overtime while others did not or seeks different expenses than others might. Dkt. 112 at 7. But there is no reason why this would make her an inadequate representative to pursue other damages on behalf of a current distributor subclass as a result of Pepperidge Farm's misclassification. Pepperidge Farm also raises again the chimerical idea that current distributors who sell the routes could be sued by the buyer of the routes because of Pepperidge Farm's misclassification. *Id.* at 7-8. This is completely speculative and makes no sense; if any future distributors are aggrieved as a result of Pepperidge Farm's misclassification, the party liable for such misconduct is Pepperidge Farm, not other distributors.

Supplemental Brief in Support of Plaintiffs' Motion for Class Certification
Case No.: 2:14-cv-7086-JAK-RZx

## 2.  Plaintiffs' Proposed Subclasses are Ascertainable.

Pepperidge Farm again argues that Plaintiffs' proposed subclasses are not "ascertainable," giving the same reasons it offered in its original briefing, i.e. that there is no way to tell which distributors personally delivered, stocked and merchandised product in stores. Dkt. 112 at 9-10. These arguments fail for the reasons set forth in Plaintiffs' prior submissions. Dkt. 72 at 4-5; Dkt. 87. Pepperidge Farm cites the *Flowers* case, but that case is on appeal (*see* Exhibit 11), and several other cases cited previously by Plaintiffs disagree with it. Dkt. 72 at 4-5; Dkt. 87. It would be a simple matter for the approximately 291 class members here to attest whether they personally serviced stores or not, and Pepperidge Farm can verify whether such attestations are true from its own employees, given that its District Sales Managers regularly visit distributors' stores and conduct "route rides," such that they know who is providing personal service to stores and who is not. Dkt. 54-5-54-8. In any event, there is absolutely no evidence that there is anything more than a *de minimis* number of distributors who do *not* personally serve stores.

Pepperidge Farm also argues that it will be difficult to draw the line between former and current distributors, relying again on the improper new expert report from Dr. Slottje. Dkt. 112 at 10-11. There is no line-drawing problem; the proposed definitions are clear:

- Current Distributor Subclass: all signatories to Consignment Agreements that are in force in the State of California as of the time of final judgment in this action, who personally deliver, stock, and merchandise consigned product in retail stores in California.

- Former Distributor Subclass: all signatories to Consignment Agreements in the State of California that were in force on or after August 7, 2010 but are no longer in force as of the time of final judgment in this action, who personally delivered, stocked, and merchandised consigned product in retail stores in California.

Pepperidge Farm will be able to tell from its own records which Consignment Agreements are in force, and which are not. It is similar to closing on the sale of a

- 12 -

house. Until the closing, the seller remains the owner; after the closing, the buyer is the owner.[6] The proposed subclasses are ascertainable.

### 3. The Proposed Subclasses Satisfy Commonality, Predominance, and Superiority under Rule 23.

Pepperidge Farm again argues that the proposed subclasses do not satisfy the commonality, predominance, and superiority requirements of Rule 23, giving the same reasons offered in its original briefing (Dkt. 112 at 12), but Plaintiffs' opening briefs disposed of these arguments. Dkt. 54-1 at 12-25; Dkt. 72 at 5-10. The common evidence that Pepperidge Farm maintains the right to control the manner and means by which the distributors perform their jobs, in the form of uniform Consignment Agreements, Pepperidge Farm's corporate compliance manual, and other company policies applicable to all distributors, is extraordinarily powerful and plainly warrants the certification of the proposed subclasses, particularly in light of the recent Ninth Circuit decisions of *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981 (9th Cir. 2014) and *Ruiz v. Affinity Logistics*, 754 F.3d 1093 (9th Cir. 2014).

### C. Plaintiffs' Counsel's Proposed Representation of the Subclasses is Appropriate under Applicable Ethical Standards.

Pepperidge Farm argues Plaintiffs' counsel are automatically disqualified from representing the proposed subclasses because of their prior, simultaneous representation of current and former distributors (Dkt. 112 at 13), but the case it cites – *Radcliffe v. Hernandez*, 818 F.3d 537, 541 (9th Cir. 2016) – actually stands for the opposite proposition.[7] While the Ninth Circuit acknowledged that California courts

---

[6] Pepperidge Farm also faults Alves for testifying that her husband "ought to be able to participate in this lawsuit" because he is her "business partner." Dkt. 112 at 11 (citing 2nd Alves Dep. 77:2-24), but this is a red herring. Alves never testified, as Pepperidge Farm misleadingly argues, that her husband "should be part of the subclass." *Id.* He would not be, as he is not a signatory to a Consignment Agreement. That being said, because they are married and work together, it is up to them how to share any proceeds they ultimately obtain from this litigation.

[7] In the original briefing, Plaintiffs stated the Court "could appoint current Plaintiffs' counsel as counsel for the sub-classes, for example by appointing Shapiro Haber & Urmy as counsel for the current SDAs, while appointing Rukin Hyland Doria & Tindall and Rudolph Friedmann as counsel for the former SDAs." Dkt. 81 at 8. The Court in its August 5, 2016 Order thus requested briefing on "whether Plaintiffs' proposal to designate Shapiro Haber and Urmy LLP as counsel for current

---

- 13 -

apply the "automatic disqualification rule to lawsuits involving individual clients," it expressly adopted a *contrary* rule for class actions: "California does not apply a rule of automatic disqualification for conflicts of simultaneous representation in the class action context." *Id.* at 539, 543-47. The Court reasoned an automatic disqualification rule in the class context could adversely affect class actions because class counsel often simultaneously represent different members of a class who develop divergent interests regarding how to prevail on their shared claims, and the loss of class counsel and their familiarity with the case could damage the class's interests. *Id.*

Pepperidge Farm argues that Plaintiffs' counsel should be disqualified from representing either subclass because they have confidential information about the other subclass. Dkt. 112 at 14-15. There are two problems with this argument. <u>First</u>, it is based on the legal standard for individual actions, i.e. the case of *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994) and its progeny, which the Ninth Circuit rejected for class actions, instead adopting the "balance of interests" test:

> The court must weigh the combined effects of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.

*Radcliffe*, 818 F.3d at 541, 543-47 (citation omitted).

Pepperidge Farm does not even argue that Plaintiffs' counsel do not satisfy this standard. Nor could it. The clients have the right to counsel of their choice. Alfred and Barrish and the subclass of former distributors will benefit from representation by Rukin Hyland Doria & Tindall, and Alves and the subclass of

_____

Distributors, and Rukin Hyland Doria and Tindall LLP and Rudolph Friedman LLP as counsel for former Distributors is permitted under the operative ethical standards." Dkt. 105 at 4. As an initial matter, Plaintiffs' proposal in their original briefing was only intended to serve as an example of how Plaintiffs' counsel could be bifurcated between the subclasses. Upon further consideration, Plaintiffs' counsel are proposing that Shapiro Haber & Urmy and Rudolph Friedmann represent the current distributors, while Rukin Hyland represents the former distributors because there are more current distributors than former distributors, such that it makes sense to have two law firms represent current distributors and one law firm represent former distributors.

Supplemental Brief in Support of Plaintiffs' Motion for Class Certification
Case No.: 2:14-cv-7086-JAK-RZx

current distributors will benefit from representation by Shapiro Haber & Urmy and Rudolph Friedmann, given that all three firms have been involved with this litigation from the beginning. The firms also have an interest in going forward with this litigation on behalf of the subclasses. The financial burden on the clients of replacing counsel could be significant; in fact, they may not be able to find replacement counsel, particularly with the same level of class action experience and expertise, and it would be burdensome to try to do so at this late stage. No class member is urging disqualification; this is a tactical move by Pepperidge Farm to avoid class certification. Plaintiffs' counsel have vigorously represented the proposed class of all distributors and will continue to vigorously represent each of the proposed subclasses.[8] In short, all the relevant factors favor Plaintiffs' counsel's proposal.

Second, Pepperidge Farm has not even attempted to identify any specific confidential information that Plaintiffs' counsel may have obtained that would prejudice either subclass. Pepperidge Farm's argument is entirely theoretical. Plaintiffs' counsel's proposal to represent the subclasses comports with applicable ethical standards and Ninth Circuit jurisprudence.

## III. CONCLUSION

For the foregoing reasons and those set forth in their original briefing (Dkt. 54-1, 72, 81), Plaintiffs respectfully request that the Court grant their motion for class certification.[9]

---

[8] What Plaintiffs' counsel propose here is exactly what was done in a similar case in the District of Vermont. *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2012 U.S. Dist. LEXIS 164718 at *25-28 (D.Vt. Nov. 19, 2012). There, in the face of a potential conflict of interest between different subsets of the putative class, the Court divided the proposed class into two subclasses and appointed certain of plaintiffs' counsel to represent one subclass, while appointing other plaintiffs' counsel to represent the other subclass. *Id. See also id.* (Dkt. # 286 at 97; Dkt. # 440-1 at 6-7; Dkt. #441).

[9] Plaintiffs have submitted a new proposed Order granting their motion for class certification, which reflects their subclass proposal (Exhibit 12).

- 15 -

1

Dated:  October 21, 2016                    Respectfully submitted,

2

SHAPIRO HABER & URMY LLP

3

By: */s/ Ian J. McLoughlin*

4

Ian J. McLoughlin
Counsel for Plaintiffs

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 16 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 21, 2016.

*/s/ Ian J. McLoughlin*
Ian J. McLoughlin

- 17 -

Supplemental Brief in Support of Plaintiffs' Motion for Class Certification
Case No.: 2:14-cv-7086-JAK-RZx