THOMAS V. URMY, JR.
turmy@shulaw.com
IAN J. MCLOUGHLIN
imcloughlin@shulaw.com
SHAPIRO HABER & URMY LLP
Seaport East
Two Seaport Lane
Boston, MA 02210
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

(Additional counsel for Plaintiffs listed on the next page)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND ALFRED, ASHLEY ALVES and MARVIN BARRISH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PEPPERIDGE FARM, INC., a Connecticut Corporation, and DOES 1 – 100, inclusive,<br><br>Defendants. | Case No.  LA CV14-07086 JAK (RZx)<br><br>**THIRD AMENDED COMPLAINT**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1)  FAILURE TO PAY CALIFORNIA OVERTIME COMPENSATION;**<br>**(2)  REIMBURSEMENT FOR BUSINESS EXPENSES;**<br>**(3)  FAILURE TO PROVIDE MEAL AND REST PERIODS;**<br>**(4)  FAILURE TO FURNISH ACCURATE WAGE STATEMENTS;**<br>**(5)  WAITING TIME PENALTIES;**<br>**(6)  VIOLATIONS OF THE UNFAIR COMPETITION LAW (UCL); and**<br><br>**REPRESENTATIVE ACTION COMPLAINT FOR:**<br><br>**(7)  CIVIL PENALTIES UNDER LABOR CODE PRIVATE ATTORNEY GENERAL ACT**<br><br>**DEMAND FOR JURY TRIAL** |

ADAM SHAFRAN
ashafran@rflawyers.com
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
Telephone: (617) 723-7700
Facsimile: (617) 227-0313

WILMER J. HARRIS (SBN: 150407)
wharris@sdshhlaw.com
SCHONBRUN DESIMONE SEPLOW HARRIS & HOFFMAN LLP
715 Fremont Avenue, Suite A
S. Pasadena, CA 91030
Telephone: (626) 441-4129
Facsimile: (626) 283-5770

Attorneys for Plaintiff Alves and the Current Distributor Class

PETER RUKIN (SBN 178336)
prukin@rukinhyland.com
VALERIE BRENDER (SBN 298224)
vbrender@rukinhyland.com
RUKIN HYLAND LLP
100 Pine Street, Suite 2150
San Francisco, CA 94111
Telephone:   (415) 421-1800
Facsimile:   (415) 421-1700

Attorneys for Plaintiffs Alfred, Barrish and the Former Distributor Subclass

THIRD AMENDED COMPLAINT                    Case No.: LA CV14-07086 JAK (RZx)

1.      On information and belief, Plaintiffs Ashley Alves, Marvin Barrish and Raymond Alfred ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action as a class action under the provisions of California Code of Civil Procedure § 382 and a representative action under California Labor Code § 2699.  Plaintiffs' claims arise from Plaintiffs' employment with Defendant Pepperidge Farm, Inc. ("Defendant" or "Pepperidge Farm"), and Defendant's wrongful acts and/or omissions in violation of Plaintiffs' statutory and other rights.

## I.      JURISDICTION

2.      This Court has jurisdiction over this matter pursuant to California Business & Professions Code §§ 17200-17208, California Labor Code §§ 200 *et seq.*, 203, 226, 226.3, 226.7, 226.8, 510, 512, 2802, 2699 *et seq.*, the Code of Civil Procedure, the California Rules of Court, and other provisions.

3.      The amount in controversy herein, excluding interest, costs, penalties, and attorneys' fees, exceeds the minimum jurisdictional limit of this court.

## II.      VENUE

4.      Venue in Los Angeles County is proper under Business & Professions Code § 17203 and California Code of Civil Procedure § 395.5 because Defendant Pepperidge Farm, Inc., is doing business in Los Angeles County and Defendant's violations occurred in part in Los Angeles County.  In addition, Defendant conducted and continues to conduct substantial business in this County, a substantial part of the transactions at issue took place in this County, and Defendant's liability arose, in part, in this County.

## III.      INTRODUCTION

5.      Plaintiffs bring their claims under California law for unpaid minimum wage and overtime compensation, reimbursement of necessary, employment-related expenses and losses, meal and rest period pay, failure to furnish accurate wage statements, waiting time penalties, restitution, disgorgement, statutory penalties, interest, and attorneys' fees and costs.

6.      The above stated claims are brought pursuant to the California Code of Civil Procedure § 382 on behalf of a Class of Pepperidge Farm Distributors (referred to collectively as "Class Members" and "Distributors" and defined further in paragraph 40 below) employed at Defendant's business during the period commencing four years prior to the filing of this action (the "Class Period").

## IV.    PARTIES

### A. Plaintiffs

7.      Plaintiff Raymond Alfred was a Pepperidge Farm Distributor for Defendant Pepperidge Farm from September of 1997 until December 23, 2013. From approximately 1997 until 2005 Mr. Alfred worked throughout Palmdale, Lancaster, Tehachapi, Edwards/Edwards Air Force Base, and Rosamond.  In 2005 Mr. Alfred sold part of his territory.  Mr. Alfred continued to work as a Distributor in primarily Palmdale and Lancaster, where he worked until December 2013.

8.      Plaintiff Ashley Alves is a current Distributor for Pepperidge Farm. She has operated a distributorship that covers Orange County since August 2013.

9.      Marvin Barrish was a Pepperidge Farm Distributor for Defendant Pepperidge Farm from July of 1988 to April 4, 2014.  From approximately 1988 to 2005, Mr. Barrish worked in Ventura County.  In approximately February of 2005, Mr. Barrish sold part of his territory. Mr. Barrish continued to work as a Distributor in Camarillo and Oxnard, where he worked until April 2014.

### B. Defendants

10.     Defendant Pepperidge Farm, Inc. is a Connecticut corporation that also maintains an entity address in New Jersey.  Pepperidge Farm maintains a network of Distributors in California to distribute its biscuit and snack products throughout the state.

11.     Defendant Does 1-100 inclusive are sued herein under fictitious names. Their true names and capacities, whether corporate, individual, or otherwise, are

unknown to Plaintiffs. Plaintiffs will seek leave of this Court to amend this Complaint when their true names and capacities are ascertained.

## V.   STATEMENT OF FACTS

12.   Defendant manufactures, markets, sells, and distributes biscuit and snack products throughout the United States, including in California.

13.   Defendant sells its products to various retail stores such as grocery stores, mass merchandisers, and convenience stores and relies on its Distributors to deliver its products to market.  Distributors deliver, stock, merchandise, promote, and remove Pepperidge Farm products for stores in defined territories.

14.   Plaintiffs and Class Members performed delivery, stocking, merchandising, promotional, and removal services on behalf of Defendant in California.

15.   Upon information and belief, Defendant has employed hundreds of Distributors in California during the Class Period.

16.   In order to perform work for Defendant, Plaintiffs and similarly situated Distributors signed a Pepperidge Farm "Consignment Agreement," which detailed the terms of Distributors' work for Defendant and labels Distributors as "independent businessmen."  A copy of Plaintiff Marvin Barrish's Consignment Agreement is attached to this complaint as Exhibit A and is, upon information and belief, substantially similar in substance to the Consignment Agreements signed by Plaintiff Alfred and the putative Class Members that Plaintiffs seek to represent. While Distributors pay for the opportunity to enter into these agreements and to secure an assigned distribution territory, Defendant's unfettered right to control and extensive actual control over Plaintiffs and Class Members is such that the Distributors are actually employees under California law.

17.   Defendant retained the right to terminate Distributors' contracts at any time without cause.  The Consignment Agreement states, "[Defendant] shall have the

right in its discretion to terminate this Agreement at any time without cause upon written notice to the Consignee." Exhibit A at ¶ 24.

18.     Defendant also retained the right to terminate Distributors' contracts at its discretion for cause.  Exhibit A at ¶ 20.  Defendant's "for cause" grounds for termination, as stated in Distributors' consignment agreements, reserved the right for Defendant to exercise extensive control over the details of Distributors' work. Defendant retained the right to terminate Distributors' contracts for "failure of [Distributor] to use his/her best efforts to realize the full sales potential of the Territory for Consigned Products and the continuance of such failure for seven days after written notice thereof from [Defendant]."  Exhibit A at ¶ 20.  In order to use their best efforts to fully realize the sales potential of their routes, Distributors were required by the terms of the Consignment Agreement to:

a.  "actively solicit all retail stores in the Territory whose accounts can be profitably handled;"

b.  "maintain at all times an adequate and fresh supply of Consigned Products in all such retail stores;"

c.  "provide distribution service to all such retail stores on such days of the week (including weekends), at such intervals and with such frequency as is necessary to realize the full sales potential thereof and to maintain an adequate fresh supply of Consigned Products therein;"

d.  "make available to all such retail stores all varieties of authorized Consigned Products unless it is demonstrably unprofitable to do so;"

e.  "cooperate with [Defendant] in the effective utilization of [Defendant's] advertising, sales promotion, and space merchandising programs and;"

f.  "keep fully informed of [Defendant's] recommended policies and method for increasing sales and improving distribution service."  Exhibit A at ¶ 4.

19.   Distributors' contracts could also be terminated for cause for the following reasons, which gave Defendant great latitude in determining how Distributors carried out their duties:

a.   the "failure of [Distributor] to maintain efficient distribution service throughout the Territory in keeping the established reputation of [Defendant] and the high quality of its products and the continuance of such failure for seven days after written notice thereof from [Defendant];"

b.   the "failure of [Distributor] to maintain the general appearance and condition of his/her truck or other equipment or his/her own general appearance or deportment or that of his/her helper or helpers, if any, in accordance with standards in keeping with the established reputation of [Defendant] and the high quality of its products and the continuance of such failure for more than five days after written notice thereof from [Defendant];"

c.   the "failure of [Distributor] to remain actively and personally involved in the operation and management of the Distributorship….";

d.   "any actions, activities or practices of [Distributor] which either do, or in the reasonable opinion of [Defendant] are likely to, materially damage the reputation of [Defendant] and/or [Defendant's] relations or reputation with consumers, retail stores, or any other purchaser of Consigned Products."
Exhibit A at ¶ 20.

20.   Defendant employed sales managers who supervised Distributors' work. Through its sales managers and other agents, Defendant conducted regular evaluations of Distributors' sales and store performance, which included whether Distributors' stores were—in Defendant's view—underperforming.  If a Distributor's performance was deemed inadequate, Defendant retained the right to send the Distributor a letter requiring that he or she remedy performance within five days, or Defendant could make other arrangements to service the store and could even terminate the Distributor's contract.  *See* Exhibit A at ¶ 7.

21.     Defendant retained the right to "from time to time, establish reasonable sales and/or distribution goals for Consignee and this Distributorship" and required that Distributors "meet or exceed any such goals established by [Defendant]." Exhibit A at ¶ 4.  Defendant's sales managers often set such goals for Distributors throughout the year.  Under the terms of Defendant's Consignment Agreement, failure to meet or exceed Defendant's sales or distribution goals was "for cause" grounds for termination of a Distributor's contract.  *See* Exhibit A at ¶ 20.

22.     Defendant retained the right to exercise control over the manner and means of accomplishing the delivery of its products to market through its Distributors.  Defendant provided Distributors with schematics, or "plan-o-grams," which depicted precisely how Distributors should display the products that they delivered to stores.  Defendant, not Distributors, determined the wholesale price of Defendant's product for Defendant's clients.  Defendant directed the number of times that Distributors should visit their stores each week and monitored Distributors' activity through its sales managers and Defendant's billing and ticketing systems.  Defendant retained the right to require that Distributors attend quarterly sales meetings where sales managers informed Distributors of upcoming promotions and praised Distributors with the highest sales numbers.  Defendant also required that its Distributors purchase a specialized hand-held computer that transmitted detailed information about Distributors' deliveries, including when these deliveries occurred and to which stores.

23.     Despite being labeled "independent businessmen," Distributors were not permitted to sell their Distributorships without prior, written approval from Defendant.  *See* Exhibit A at ¶ 19.  Defendant required that any buyer of Plaintiffs' Distributorships meet Defendant's requirements as to "character, ability, financial responsibility, business acumen, and adequate facilities."  *Id.*  Defendant retained the right to interview prospective buyers and require that Plaintiffs' prospective buyers submit a business plan to Defendant, which Defendant would have to approve in

order for a sale to take place.  Defendant retained the right of first refusal for any sale of all or any portion of the Distributorship.

24.    Several other factors relating to Distributors' work evince that an employment relationship existed between Defendant and Plaintiffs.  Defendant's Distributors provided services that are part of the regular business of Defendant.  Defendant states on its website, for example, that its Distributors are "the secret to Pepperidge Farm's success."  Moreover, Defendant unilaterally negotiated the space for its products at the stores Distributors serviced and determined promotional activity at these stores.  If stores did not wish to receive deliveries from Defendant's Distributors, Defendant retained the right to make other arrangements with the store for the delivery of its products.  *See* Exhibit A at ¶ 9.  Distributors routinely worked a substantial number of overtime hours a week on contracts that lasted indefinitely.  Defendant's requirements of its Distributors made it difficult for Distributors to regularly service other accounts.

25.    Defendant has paid Plaintiffs and Class Members under a common compensation plan and policy where Distributors were paid a sales commission based on the items sold.

26.    Despite Defendant's extensive right of control over Distributors' work, Defendant has routinely classified Distributors as "independent contractors."

27.    Upon information and belief, Defendant misclassified Plaintiffs and similarly situated Distributors knowingly and willfully.

28.    Defendant has caused Plaintiffs and similarly situated Class Members to work hours in excess of 40 hours a week.

29.    As a result of Defendant's misclassification of Distributors as "independent contractors," Defendant has failed to pay overtime compensation to Plaintiffs and similarly situated Class Members for hours worked in excess of eight hours per day and/or 40 hours per week.

30.     As a result of Defendant's misclassification of Distributors as "independent contractors," Defendant has failed to indemnify Plaintiffs and similarly situated Class Members for employment-related expenses, including the cost of providing appropriate vehicles and vehicle expenses such as fuel, maintenance, repair; the cost and maintenance of a hand-held computer and printer; the cost of warehousing Defendant's products; pallet fees that Defendant charged Plaintiffs and similarly situated Class Members; expenses incurred as the result of stale products and inventory irregularities; and the cost of required business liability insurance.

31.     As a result of Defendant's misclassification of Distributors as "independent contractors," Defendant has unlawfully collected and withheld earned wages through deducting pallet fees, the cost and maintenance of a hand-held computer and printer, and charges incurred as the result of stale products and inventory irregularities.

32.     As a result of Defendant's misclassification of Distributors as "independent contractors," Defendant has failed to record the actual hours worked by Plaintiffs and similarly situated Class Members.

33.     As a result of Defendant's misclassification of Distributors as "independent contractors," Defendant has failed to provide a 30-minute off-duty meal period to Plaintiffs and similarly situated Class Members.

34.     As a result of Defendant's misclassification of Distributors as "independent contractors," Defendant has failed to provide a second 30-minute meal period to Plaintiffs and similarly situated Class Members who worked more than 10 hours a day.

35.     Defendant has failed to provide a ten minute rest period per four hours of work or major fraction thereof.

36.     As a result of Defendant's misclassification of Distributors as "independent contractors," Defendant has failed to itemize the total hours worked on wage statements furnished to Plaintiffs and similarly situated Class Members.

37.     Upon information and belief, as a result of Defendant's misclassification of Distributors as "independent contractors," Defendant has failed to properly maintain payroll records showing the actual hours worked by Plaintiffs and similarly situated Class Members.

38.     As a result of Defendant's misclassification of Distributors as "independent contractors," Defendant has willfully and knowingly failed to pay Plaintiffs and similarly situated Class Members upon termination of employment, all accrued compensation, including repayment of all unlawful charges, compensation for missed meal and rest periods, and payment of overtime compensation.

39.     As a result of Defendant's misclassification of Distributors as "independent contractors," Defendant has unlawfully charged fees and fines to Plaintiffs and similarly situated Class Members for goods and services such as pallets, product inventory irregularities, and returned product from stores; and equipment such as Defendant's hand-held computer and maintenance for this computer.

## VI.    CLASS ACTION ALLEGATIONS

40.     Plaintiffs bring this action on their own behalf and as a class action on behalf of all signatories to a Consignment Agreement with Pepperidge Farm in the State of California between August 7, 2010 and the present who personally delivered, stocked, and merchandised consigned Pepperidge Farm product in retail stores in California between August 7, 2010 and the present (the "Class"). Pursuant to the Court's Order dated April 11, 2017, the certified Class is divided into two subclasses, one of former distributors, and the other of current distributors.

41.     This action is brought as a class action under the California Code of Civil Procedure § 382. Class treatment is appropriate because there is a well-defined community of interest in the litigation and the Class is easily ascertainable.  This action satisfies the predominance, typicality, numerosity, superiority, and adequacy of representation requirements under § 382.

a.  Numerosity:  The size of the proposed plaintiff Class makes individual joinder of all members impractical.  While Plaintiffs do not presently know the exact number of Class Members, Plaintiffs are informed and believe, and thereon allege, that as many as 500-700 current and former Distributors have been subjected to the unlawful practices alleged herein within four years preceding the filing of this action.

b.  Commonality:  Common questions of law and fact exist as to all members of the Plaintiff Class and predominate over any questions that affect only individual members of the Class.  These common questions of law and fact include, without limitation:

i.  Whether Defendant retained sufficient right to control Class Members' work so as to render the Class Members employees under California law;

ii.  Whether Class Members have served Defendant as employees rather than independent contractors under California law;

iii.  Whether Defendant has employed Class Members in a position that is subject to, and not exempt from, California's overtime pay and other wage and hour requirements;

iv.  Whether Defendant knew or should have known that Class Members regularly worked over 40 hours per week and/or eight hours per day;

v.  Whether Defendant failed to pay Class Members overtime wages for time worked in excess of 40 hours per week or eight hours per day;

vi.  Whether Defendant has failed to provide Class Members with adequate off-duty meal periods and compensation for missed meal periods in violation of California Labor Code §§ 226.7 and 512 and IWC Wage Order No. 9;

vii.  Whether Defendant has failed to provide Class Members with adequate rest periods and compensation for missed rest periods in

THIRD AMENDED COMPLAINT          Case No.: LA CV14-07086 JAK (RZx)

violation of California Labor Code §§ 226.7 and IWC Wage Order No. 9;

viii.  Whether Defendant had a policy or practice of not paying meal and rest period premiums when meal and rest periods were not provided;

ix.  Whether Class Members have incurred employment-related expenses and losses in carrying out their duties for Defendant;

x.  Whether Defendant has failed to indemnify Class Members for their necessary employment-related expenses and losses in violation of California Labor Code § 2802 and IWC Wage Order 9;

xi.  Whether Defendant's collection and deduction of fees, including pallet fees, fees for stale products and inventory irregularities, and fees related to the handheld computer, violated  California Labor Code § 221 and IWC Wage Order 9;

xii.  Whether Defendant has unlawfully charged Class Members fees arising from their employment with Defendant in violation of California Labor Code § 226.8(a)(2);

xiii.  Whether Defendant has knowingly and intentionally failed to provide Class Members with accurate and itemized wage statements pursuant to California Labor Code § 226 and IWC Wage Order No. 9;

xiv.  Whether Defendant has violated California Labor Code § 1174 and IWC Wage Order No. 9 by failing to maintain documentation of the actual hours that Class Members worked each day;

xv.  Whether Defendant has violated California Labor Code §§ 201-203 by failing, upon termination, to timely pay Class Members wages that were due for overtime and missed meal periods;

xvi.  Whether Defendant's misclassification of Class Members was willful and in violation of California Labor Code § 226.8;

xvii.   Whether Defendant's failures (a) to pay Class Members for all hours worked, (b) to pay Class Members overtime compensation, (c) to indemnify Class Members for their necessary employment-related expenses, (d) to provide Class Members with adequate off-duty meal periods and meal period compensation, (e) to provide Class Members with rest periods and rest period compensation, (f) to provide Class Members with accurate itemized wage statements, (g) to maintain documentation of the actual hours worked each day, (h) to timely pay Class Members all wages that were due upon termination, along with Defendant's collection and deduction of fees and expenses from Class members' compensation and its willful misclassification of Class Members as independent contractors, and its charging fees and/or making deductions from Plaintiffs and Class Members' compensation constitute unlawful, unfair, and/or fraudulent business practices under Cal. Business & Professions Code §17200, *et seq.*

c.  Typicality:  Plaintiffs' claims are typical of the claims of the Class. Plaintiffs Alfred and Barrish's claims are typical of the former distributor subclass, and Plaintiff Alves' claims are typical of the current distributor subclass.  Plaintiffs and members of the Class sustained damages arising out of Defendant's aforementioned common practice of misclassifying Class Members as independent contractors.  Plaintiffs, like Class Members, were Distributors who were classified as independent contractors under Defendant's Consignment Agreement.

d.  Adequacy of Representation:  Plaintiffs are members of the Class, do not have any conflicts of interest with other Class Members, and will represent and protect the interests of the Class Members. Plaintiffs Alfred and Barrish, and their counsel, will adequately represent the former distributor subclass,

and Plaintiff Alves, and her counsel, will adequately represent the current distributor subclass.  Plaintiffs' counsel are competent and experienced in litigating employment class actions.

e.  Superiority:  A class action is superior to other available means of adjudicating this controversy.  Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense that numerous individual claims would entail.  Class treatment will also avoid the risk of inconsistent or contradictory judgments.

## VII.   DAMAGES

42.    As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiffs and similarly situated Class Members are owed overtime compensation, un-reimbursed necessary employment-related expenses, restitution of fees deducted from compensation, meal and rest period compensation, liquidated damages, interest, waiting time penalties, and available statutory penalties and damages, the precise amounts of which will be proven at trial.

## VIII.  FIRST CAUSE OF ACTION
### FAILURE TO PAY CALIFORNIA OVERTIME COMPENSATION
### (CALIFORNIA LABOR CODE §§ 510, 1194, IWC WAGE ORDER NO. 9)
### (ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS)

43.    The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief on behalf of themselves and all Class Members.

44.    During the Class Period, Plaintiffs and the Class Members worked on many occasions in excess of eight hours in a workday and/or 40 hours in a work week in violation of California Labor Code §§ 510, 1194 and IWC Wage Order No. 9, § 3, which require overtime compensation for non-exempt employees.  The precise number of overtime hours will be proven at trial.

45.     Defendant's actions were willful, in bad faith, and in knowing violation of the California Labor Code.

46.     As a direct and proximate result of Defendant's unlawful conduct as set forth herein, Plaintiffs and Class Members have sustained damages, including loss of earnings for hours of overtime work, in an amount to be determined at trial. Pursuant to California Labor Code § 1194(a), Plaintiffs and Class Members are entitled to recover their unpaid overtime and double time compensation, including interest thereon.  Plaintiffs and Class Members are also entitled to recover reasonable attorneys' fees and costs.

## IX.   SECOND CAUSE OF ACTION
### REIMBURSEMENT FOR BUSINESS EXPENSES
### (CALIFORNIA LABOR CODE § 2802 AND IWC WAGE ORDER NO. 9)
### (ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS)

47.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief on behalf of themselves and all Class Members.

48.     While discharging their duties for Defendant, Plaintiffs and Class Members have incurred and paid work-related expenses.  Such expenses include, but are not limited to, the leasing or purchase of vehicles; fuel, maintenance, and other vehicle operating costs; various forms of insurance; warehousing expenses for storing Defendant's products; pallet fees for Defendant's shipment of pallets to stores in Distributors' territories; a hand-held computer and other equipment necessary to conduct their work as Distributors; and expenses incurred as the result of stale products and inventory irregularities.

49.     Defendant failed to indemnify or reimburse Plaintiffs and Class Members for these expenses and losses.  In failing to indemnify or reimburse Plaintiffs and Class Members for necessary expenditures or losses that were incurred

1    as a direct consequence of their discharge of duties for Defendant and/or obedience
2    of Defendant's direction, Defendant violated California Labor Code § 2802.

3         50.   Defendants also failed to reimburse Plaintiffs and Class Members for
4    tools and equipment necessary for the performance of their jobs, including hand-held
5    computers and maintenance fees, as required by IWC Wage Order No. 9, § 9.

6         51.   Defendant's actions were willful, in bad faith, and in knowing violation
7    of the California Labor Code and applicable Wage Orders.

8         52.   By unlawfully failing to reimburse Plaintiffs and Class Members for
9    necessary expenditures or losses, Defendant has caused Plaintiffs and Class
10   Members to suffer losses in an amount to be determined at trial.

11        53.   Under California Labor Code §§ 2802 and 218.5, Defendant is also
12   liable to Plaintiffs and Class Members for reasonable attorney's fees.

### X.    THIRD CAUSE OF ACTION
**UNLAWFUL WITHHOLDING AND RECEIPT OF EARNED WAGES
(CALIFORNIA LABOR CODE § 221 AND WAGE ORDER NO. 9)
(ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS)**

16        54.    The allegations of each of the preceding paragraphs are re-alleged and
17   incorporated herein by reference, and Plaintiffs allege as follows a claim of relief on
18   behalf of themselves and all Class Members.

19        55.   California Labor Code § 221 makes it unlawful for an employer to
20   collect or receive from an employee any part of wages paid to the employee.

21        56.   IWC Wage Order No. 9, § 8 states that no employer shall make any
22   deduction from the wage or require any reimbursement from an employee for any
23   cash shortage, breakage, or loss of equipment, unless it can be show that the
24   shortage, breakage, or loss is caused by dishonest or willful act, or by the gross
25   negligence of the employee.

26        57.   IWC Wage Order No. 9, § 9 further states that "(B) When tools or
27   equipment are required by the employer or are necessary to the performance of a job,
28   such tools and equipment shall be provided and maintained by the employer, except

that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide an maintain hand tools and equipment customarily required by the trade or craft."

58.     Defendant's policy and practice of collecting fees and deducting from Plaintiffs and Class Members' compensation pallet fees, maintenance of the handheld computer, and fees for stale products and inventory irregularities, among any other fees and deductions charged, violates the above referenced sections of the California Labor Code and applicable wage order.

59.     As a result, Plaintiffs and Class Members are entitled to a return of the monies paid as well as interest that has accrued, reasonable attorneys' fees, and costs.

## XI.   FOURTH CAUSE OF ACTION
### FAILURE TO PROVIDE MEAL PERIODS
### (CALIFORNIA LABOR CODE §§ 226.7, 512, IWC WAGE ORDER NO. 9)
### (ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS)

60.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief on behalf of themselves and all Class Members.

61.     Plaintiffs and Class Members have regularly worked in excess of five hours a day without being afforded at least a half-hour meal period in which they were relived of all duties, as required by California Labor Code §§ 226.7 and 512 and IWC Wage Order No. 9, § 11.

62.     By failing to consistently provide Plaintiffs and Class Members an uninterrupted, thirty-minute meal period within the first five hours of work each day, Defendant violated the California Labor Code and applicable IWC Wage Order provisions.

63.     Plaintiffs are informed and believe, and on that basis allege, that Defendant has never paid the one hour of compensation as a premium payment to any Class Member pursuant to California Labor Code § 226.7 for not providing proper meal periods.

64.     As a direct and proximate result of Defendant's unlawful conduct as set forth herein, Plaintiffs and Class Members have sustained damages, including loss of compensation resulting from missed meal periods, in an amount to be determined at trial.

### XII.   FIFTH CAUSE OF ACTION
### FAILURE TO AUTHORIZE AND PERMIT REST BREAKS
### (CALIFORNIA LABOR CODE § 226.7 and IWC WAGE ORDER NO. 9)
### (ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS)

65.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief on behalf of themselves and all Class Members.

66.      California Labor Code § 226.7 states "no employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."

67.     IWC Wage Order No. 9, § 12 provides in relevant part that: "(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted, as hours worked, for which there shall be no deduction from wages.

68.     If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one

(1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

69.     Upon information and belief, Defendant did not promulgate a compliant rest break policy.

70.     Plaintiffs and Class Members have regularly worked in excess of four hours a day without Defendant authorizing and permitting them to take at least a 10 minute paid rest period or have failed to separately pay them for the rest periods taken, as required by Labor Code § 226.7 and IWC Wage Order 9.

71.     Plaintiffs and Class Members were not paid for all hours worked, and Defendant maintained no system for the recording of rest periods.

72.     Because Defendant failed to authorize and permit proper paid rest periods, they are liable to Plaintiffs and Class Members for one hour of additional pay at the regular rate of compensation for each workday that the proper rest periods were not authorized or permitted.

### XIII.  <u>SIXTH CAUSE OF ACTION</u>
### FAILURE TO FURNISH ACCURATE WAGE STATEMENTS
### (CALIFORNIA LABOR CODE § 226 & IWC WAGE ORDER NO. 9)
### (ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS)

73.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief on behalf of themselves and all Class Members.

74.     Pursuant to California Labor Code § 226(a) and IWC Wage Order No. 9, Defendant has at all relevant times been required, semimonthly or at the time of each payment of wages, to furnish Plaintiffs and Class Members accurate, itemized written statements containing all the information described in § 226 and Wage Order No. 9, § 7, including, but not limited to, the total hours worked by the employees.

75.     Defendant has knowingly and intentionally failed to comply with § 226 by knowingly and intentionally failing to furnish Plaintiffs and Class Members with accurate, itemized written statements showing their actual and total hours worked.

76.     Defendant also failed to accurately record meal periods as detailed above, to pay meal period premium wages for missed meal periods, and to report those meal period premium payments on wage statements.

77.     Under California Labor Code § 226(e), an employee suffering injury as a result of knowing and intentional failure of an employer to comply with § 226(a) is entitled to recover the greater of all actual damages or fifty ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) for each violation in a subsequent pay period, up to a maximum amount of $4,000.

78.     In addition, upon information and belief, and in violation of IWC Wage Order No. 9, Defendant failed to keep the required payroll records showing the actual hours worked each day by Plaintiffs and Class Members.  As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members have suffered economic harm as they have been precluded from accurately monitoring the number of hours worked and thus seeking all accrued overtime pay.

79.     As a direct and proximate result of Defendant's unlawful conduct as set forth herein, Plaintiffs and Class Members have been injured by not receiving the information required by California Labor Code § 226(a), not being paid their overtime hours, not having records showing their total hours worked, not being able to ascertain from their wage statements whether or how they have been lawfully compensated for all hours worked, among other things, in an amount to be determined at trial.

80.     Plaintiffs and Class Members may recover damages and penalties provided for under California Labor Code § 226(e), plus interest thereon, reasonable attorneys' fees, and costs.

## XIV.  SEVENTH CAUSE OF ACTION

**WAITING TIME PENALTIES**
**(CALIFORNIA LABOR CODE §§ 201, 202, 203)**
**(ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS)**

81.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief on behalf of themselves and all Class Members.

82.     California Labor Code § 201 states that an employer is required to provide an employee who is terminated all accrued wages and compensation at the time of termination.

83.     California Labor Code § 202 states that an employer is required to provide an employee who resigns all unpaid wages within 72 hours of their resignation, or upon resignation if the employee has provided at least 72 hours' notice.

84.     California Labor Code § 203 states that if an employer willfully fails to pay compensation promptly upon discharge, as required by § 201 and § 202, then the employer is liable for waiting time penalties equivalent to the employee's daily wage, for a maximum of 30 days.

85.     Plaintiffs and numerous Class Members who were employed by Defendant during the Class Period resigned or were terminated.  Upon resignation or termination, they were not paid all wages due within the statutory time period. Defendant willfully failed and refused to pay timely compensation and wages for, among other things, unpaid overtime, unpaid meal periods, and unlawful fees.

86.     As a direct and proximate result of Defendant's willful conduct in failing to pay Plaintiffs and former Distributor Class Members for all hours worked, Plaintiffs and affected members of the Class are entitled to recover "waiting time" penalties of up to thirty (30) days' wages pursuant to § 203, with interest thereon, and reasonable attorneys' fees and costs.

## XV.   EIGHTH CAUSE OF ACTION
**VIOLATIONS OF THE UNFAIR COMPETITION LAW (UCL)**

**(CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200-09)**
**(ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS)**

87.    The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief on behalf of themselves and all Class Members.

88.    California Business & Professions Code § 17200, *et seq.* ("UCL") prohibits "unfair competition" in the form of any unlawful, unfair, or fraudulent business act or practice.

89.    Beginning at an exact date unknown to Plaintiffs but within four years preceding the filing of this action, Defendant has engaged in unfair competition as defined by the UCL by, and as further described above: (1) failing to pay overtime compensation to Plaintiffs and similarly situated Class Members in violation of California Labor Code §§ 510, 1194 *et seq.*, and IWC Wage Order No. 9, § 3; (2) failing to indemnify Plaintiffs and similarly situated Class Members for employment-related business expenses and loses in violation of Labor Code § 2802 & and IWC Wage Order No. 9; (3) failing and refusing to provide meal and rest periods to Plaintiffs and similarly situated Class Members in violation of California Labor Code §§ 226.7 and 512 and IWC Wage Order No. 9; (4) failing to provide complete and accurate itemized wage statements in violation of California Labor Code §§ 226 & 1174 and IWC Wage Order No. 9; (5) failing to pay Plaintiffs and similarly situated former Distributor Class Members all due and unpaid overtime wages upon termination in violation of California Labor Code § 203; (6) willfully and unlawfully misclassifying Plaintiffs and similarly situated Class Members as independent contractors in violation of California Labor Code § 226.8 & and IWC Wage Order No. 9; (7) charging Plaintiffs and Class Members and/or making deductions from compensation for goods, materials, services, and equipment maintenance arising from their employment in violation of Labor Code § 226.8; and

(8) unlawfully collecting or receiving wages from Plaintiffs and Class Members in violation of Labor Code § 221 and IWC Wage Order No. 9.

90.    Defendant's knowing failure to adopt policies in accordance with and/or to adhere to these laws, all of which are binding upon and burdensome to its competitors, engenders an unfair competitive advantage to Defendant thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

91.    Plaintiffs and similarly-situated Class Members have suffered injury in fact and have lost money as a direct and proximate result of Defendant's unfair competition, including, but not limited to, money due to them as overtime compensation, necessary expenditures or losses, unlawful fees arising from their employment, compensation for missed meal periods, and waiting time penalties, which money has been acquired by Defendant by means of their unfair competition within the meaning of the UCL.

92.    Pursuant to California Business & Professions Code §§ 17200 *et seq.*, Plaintiffs and Class Members are entitled to (i) restitution of all wages and compensation alleged herein that Defendant withheld and retained during the period commencing four years preceding the filing of this action, (ii) an award of reasonable attorneys' fees pursuant to Cal. Civ. Proc. Code § 1021.5 and other applicable law, and (iii) costs.  All remedies are cumulative pursuant to California Business & Professions Code § 17205.

## XVI.  NINTH CAUSE OF ACTION
### CIVIL PENALTIES UNDER LABOR CODE PRIVATE ATTORNEY GENERAL ACT
### (CALIFORNIA LABOR CODE §2698 *ET SEQ.*)
### (ON BEHALF OF PLAINTIFFS AS A REPRESENTATIVE ACTION)

93.    The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief on behalf of themselves and all aggrieved employees.

94.     Plaintiffs Barrish and Alfred, as aggrieved employees, bring this claim under California Labor Code §§ 2698-2699 in a representative capacity on behalf of current and former Distributors of Defendant subjected to the unlawful wage and hour practices alleged herein.

95.     The California Labor Code Private Attorneys General Act of 2004 (PAGA), California Labor Code § 2698 *et seq.*, grants California employees the right to bring a civil action for the violation of any provision of the Labor Code on behalf of themselves and other current or former employees in order to recover civil penalties.  PAGA is intended to assist in the achievement of maximum compliance with state labor laws by empowering aggrieved employees to act as private attorneys general in order to recover civil penalties for Labor Code violations that would otherwise be prosecuted by the state.  *See Arias v. Super. Ct.* (2009) 46 Cal. 4th 969, 980.

96.     PAGA permits an aggrieved employee to collect the civil penalty authorized by law and normally collectible by the California Labor and Workforce Development Agency.  To address violations for which no penalty has been established, § 2699(f) creates a private right of action for aggrieved employees and a default penalty in the amount of $100 for each aggrieved employee per pay period for the initial violation, and $200 for each aggrieved employee per pay period for each subsequent violation.  *See* Cal. Lab. Code § 2699(f).

97.     Plaintiffs Barrish and Alfred hereby seek to collect these civil penalties for the above-described Labor Code violations, including:

98.     Under California Labor Code § 558, civil penalties of fifty dollars ($50) for each Plaintiff and each aggrieved employee per pay period for the initial violation of Labor Code § 558 where Plaintiffs and aggrieved employees were not paid appropriate overtime premiums under Labor Code § 510, as alleged in the First Cause of Action, in addition to an amount sufficient to recover underpaid wages; and for each subsequent violation, one hundred dollars ($100) for each underpaid

aggrieved employee for each pay period for which the employee was underpaid under Labor Code § 510.

99.    Under California Labor Code § 2699(f)(2), described above, a civil penalty of one hundred dollars ($100) for each Plaintiff and each aggrieved employee per pay period for the initial violation of Labor Code § 2802, for failure to indemnify employees for business expenses, and two hundred dollars ($200) for each Plaintiff and each aggrieved employee per pay period for each subsequent violation of Labor Code § 2802, as alleged in Plaintiffs' Second Cause of Action.

100.    Under California Labor Code § 2699(f)(2), a civil penalty of one hundred dollars ($100) for each Plaintiff and each aggrieved employee per pay period for the initial violation of Labor Code § 226.7 for failing to provide meal periods, and two hundred dollars ($200) for each Plaintiff and each aggrieved employee per pay period for each subsequent violation of Labor Code § 226.7 for failing to provide meal periods, as alleged in Plaintiffs' Fourth Cause of Action.

101.    Under California Labor Code § 226.3, which provides for civil penalties for violations of California Labor Code § 226(a), a civil penalty of two hundred fifty dollars ($250) for each Plaintiff and each aggrieved employee for the first violation, and one thousand dollars ($1,000) for each Plaintiff and each aggrieved employee for each subsequent violation of Labor Code § 226(a) for failure to provide timely, accurate, itemized wage statements, as alleged in the Sixth Cause of Action.

102.    Under California Labor Code § 2699(f)(2), a civil penalty of one hundred dollars ($100) for each Plaintiff and each aggrieved employee per pay period for the initial violation of Labor Code §§ 201, 202, and 203 for Defendant's failure to pay earned wages upon discharge, as alleged in the Seventh Cause of Action, and two hundred dollars ($200) for each Plaintiff and each aggrieved employee per pay period for each subsequent violation of Labor Code §§ 201 and 202.

103.   Under California Labor Code § 226.8, a civil penalty of not less than five thousand dollars ($5,000) and not more than fifteen thousand dollars ($15,000) for each violation against each Plaintiff and each aggrieved employee, and if the court finds that Defendant has engaged in a pattern or practice of violation of § 226.8(a), a civil penalty of not less than ten thousand dollars ($10,000) and not more than twenty-five thousand dollars ($25,000) for each violation.

104.   Additionally, as a result of violations under California Labor Code § 226.8(a), Plaintiffs request that the Court order Defendant to take certain steps to notify employees and the general public of the determination that they have violated § 226.8, pursuant to § 226.8(e).

105.   California Labor Code § 2699(g) further provides that any employee who prevails in an action for civil penalties is entitled to an award of reasonable attorneys' fees and costs.  Plaintiffs Barrish and Alfred hereby seek to recover their attorneys' fees and costs under this fee and cost shifting statute.

106.   On June 5, 2014, pursuant to California Labor Code § 2699.3, Plaintiffs sent notice by certified mail to the Labor and Workforce Development Agency (LWDA) and Defendant of the specific provisions of the Labor Code that have been violated, including the facts and theories to support the violations.  The LWDA received this notice on the same day, June 5, 2014.  The thirty-three day time limit for the agency to respond has expired, such that Plaintiffs have exhausted their administrative remedies.

## XVII. PRAYER FOR RELIEF

107.   WHEREFORE, Plaintiffs, on behalf of themselves and the above-described Class of similarly situated Distributor Class Members, requests relief as follows:

a.   Certification of the above-described Class as a class action, pursuant to California Code of Civil Procedure § 382;

b.   Appointment of Plaintiffs as Class and Subclass Representatives;

c.  Appointment of Plaintiffs' Counsel as Class and Subclass Counsel;

d.  Provision of class notice to all Class Members;

e.  A declaratory judgment that Defendant has knowingly and intentionally violated the following provisions of law, among others:

    i.  California Labor Code §§ 510, 1194 *et seq.*, 1197, and IWC Wage Order No. 9, by failure to pay overtime compensation to Plaintiffs and Class Members;

    ii.  California Labor Code § 2802 & IWC Wage Order No. 9, by failure to reimburse Plaintiffs and Class Members for necessary expenditures or losses;

    iii.  California Labor Code § 221 & IWC Wage Order No. 9 by unlawfully collecting and deducting wages from Plaintiffs and Class Members;

    iv.  California Labor Code §§ 226.7 and 512, and IWC Wage Order No. 9 for failure to provide off-duty meal and rest periods to Plaintiffs and Class Members;

    v.  California Labor Code §§ 201-203, by willful failure to pay all wages owed at the time of termination of employment;

    vi.  California Labor Code § 226(a) and 1174, by failure to provide itemized written statements semimonthly or at the time of payment of wages accurately showing all the information required by California law, including but not limited to total hours worked, and for failure to keep accurate payroll records;

    vii.  California Business and Professions Code §§ 17200 *et seq.*, by failure to pay unpaid overtime compensation due to Plaintiffs and Class Members under California law, by willfully failing to pay all compensation owed to Plaintiffs and Class Members upon termination of employment; by willfully failing to provide legally

compliant wage statements to Plaintiffs and Class Members; by requiring Plaintiffs and Class Members to work through their meal and rest periods without paying them proper compensation; by failing to reimburse Plaintiffs and Class Members for necessary expenditures or losses; by willfully and knowingly misclassifying Plaintiffs and Class Members as independent contractors for Defendant's financial gain under Labor Code Section 226.8; and by charging an Plaintiffs and Class Members fees and/or making deductions from compensation in violation of Labor Code Section 226.8.

viii.   A declaratory judgment that Defendant has knowingly and intentionally violated California Labor Code §§ 201, 202, 203, 226, 226.7, 510, 512, 2802, and 226.8, all of which give rise to civil penalties and other remedies under the PAGA.

f.   A declaratory judgment that Defendant's violations as described above were willful and/or knowing and intentional;

g.   An equitable accounting to identify, locate, and restore to all current and former Class Members the overtime wages due;

h.   An award to Plaintiffs and the Class Members of damages in the amount of unpaid overtime compensation, necessary business expenses, unlawful collection and deductions from wages, and meal and rest period compensation, including interest thereon subject to proof at trial;

i.   An award of penalties owed, pursuant to Labor Code § 203, to Plaintiffs and all Class Members who resigned or whose employment was terminated by Defendant without receiving all overtime compensation owed at the time of separation;

j.   An order requiring Defendant to pay restitution of all amounts owed to Plaintiffs and similarly situated Class Members for Defendant's failure to pay

legally required overtime pay, meal period pay, out-of-pocket employment-related necessary expenditures or losses, unlawful fees, and interest thereon, in an amount according to proof, pursuant to California Business & Professions Code § 17203 and other applicable law;

k.  An award to Plaintiffs and the Class Members of damages and/or statutory penalties as set forth in California Labor Code § 226(e);

l.  An award to Plaintiffs and the Class Members of premium wages for meal and rest periods, according to proof;

m. An award to Plaintiffs of PAGA civil penalties under Labor Code § 2699, *et seq.*, subject to proof;

n.  An award to Plaintiffs and the Class Members of reasonable attorneys' fees and costs, pursuant to California Code of Civil Procedure § 1021.5, California Labor Code §§ 226(e), 1194, 2802, 2699(g) and/or other applicable law;

o.  An award to Plaintiffs and the Class Members of such other and further relief as this Court deems just and proper.

## XVIII.      DEMAND FOR JURY TRIAL

108.   Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial of their claims by jury to the extent authorized by law.

DATED:  June 23, 2017                          SHAPIRO HABER & URMY, LLP

                                               By: */s/ Ian McLoughlin*
                                               IAN MCLOUGHLIN
                                               Attorney for Plaintiff Alves and the
                                               Current Distributor Subclass