1  PETER RUKIN (SBN 178336)
2  *prukin@rukinhyland.com*
   VALERIE BRENDER (SBN 298224)
3  *vbrender@ rukinhyland.com*
4  RUKIN HYLAND & RIGGIN LLP
   1939 Harrison Street, Suite 290
5  Oakland, CA 94612
6  Telephone:   (415) 421-1800
   Facsimile:    (415) 421-1700
7
8  (Additional counsel listed below)
9
10                **UNITED STATES DISTRICT COURT**
11                **CENTRAL DISTRICT OF CALIFORNIA**
12
   RAYMOND ALFRED, MARVIN          ) LEAD CASE NO.: LA CV14-07086-JAK
13 BARRISH, and ASHLEY ALVES,      ) (SKx)
   individually and on behalf of all others )
14 similarly situated,             ) Consolidated with Case Nos.:
                                   )   LA CV19-01660-JAK (SKx)
15                Plaintiffs,      )   LA CV19-01998-JAK (SKx)
                                   )
16      vs.                        )
                                   ) **MEMORANDUM OF POINT AND**
17 PEPPERIDGE FARM, INC., a        ) **AUTHORITIES IN SUPPORT OF**
   Connecticut Corporation, and DOES 1- ) **PLAINTIFFS' UNOPPOSED MOTION**
18 100, inclusive,                 ) **FOR PRELIMINARY APPROVAL OF**
                                   ) **CLASS ACTION SETTLEMENT**
19                Defendant.       )
                                   ) **Hearing date: June 17, 2019**
20                                 ) **Time: 8:30 a.m.**
21                                 ) **Courtroom: 10 B**
                                   ) **Judge: Hon. John A. Kronstadt**
22                                 )
23 ─────────────────────────────── )
24
25
26
27
28

1

2

3

4

WILMER J. HARRIS (SBN: 150407)
*wharris@sdshhlaw.com*
SCHONBRUN SEPLOW HARRIS &
HOFFMAN LLP
715 Fremont Avenue, Suite A
S. Pasadena, CA 91030
Telephone: (626) 441-4129
Facsimile: (626) 283-5770

THOMAS V. URMY, JR. (admitted pro hac vice)
*turmy@shulaw.com*
SHAPIRO HABER & URMY LLP
Seaport East
Two Seaport Lane
Boston, MA 02210
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

ADAM J. SHAFRAN (admitted pro hac vice)
*ashafran@rflawyers.com*
JONATHON D. FRIEDMANN (admitted pro hac vice)
*jfriedmann@rflawyers.com*
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
Telephone: (617) 723-7700
Facsimile: (617) 227-0313

ROBERT J. WOZNIAK, JR. (pro hac vice admission pending)
*Rwozniak@fklmlaw.com*
FREED KANNER LONDON & MILLEN, LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521

Attorneys for Plaintiffs

ii

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................. V

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL BACKGROUND & THE PARTIES' CONTENTIONS ........... 2

III.  PROCEDURAL BACKGROUND ............................................................... 2

  A.    The Litigation ................................................................................... 2

    1.    The *Abbott* Action .............................................................. 2

    2.    The *Alfred* Action ............................................................... 3

    3.    The *Mulhern* Action .......................................................... 4

  B.    Settlement ........................................................................................ 4

IV.   TERMS OF THE PROPOSED SETTLEMENT ......................................... 5

  A.    The Settlement Classes .................................................................... 5

  B.    Relief to the Settlement Classes ...................................................... 6

    1.    Monetary Relief .................................................................. 6

    2.    Programmatic Relief ........................................................... 8

  C.    Settlement Notice, Claim and Exclusion Procedures ...................... 10

  D.    Release of Claims ............................................................................ 10

  E.    Enhancement Payments, Attorneys' Fees and Costs, and Administration ................................................................................. 10

  F.    Payment to Qualified Class Members .............................................. 10

  G.    Blow-Up Clause ............................................................................... 10

V.    ARGUMENT ................................................................................................ 11

  A.    Preliminary Approval of the Settlement Is Appropriate ................. 11

    1.    The Settlement Is the Product of Informed, Non-Collusive Negotiation ........................................................ 12

    2.    The Settlement Falls Within the Range of Possible Approval ............................................................................. 12

      a. The Strength of Plaintiffs' Case and the Risk of Further Litigation Support Preliminary Approval ......... 13

iii

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

b. The Settlement Consideration and Allocation Are Fair ......14

3. The Attorneys' Fees and Costs Requests Are Reasonable ......15

4. The PAGA Settlement Is Reasonable and Should Be Approved...................................................................................16

5. The Proposed Service Awards Are Reasonable ....................16

6. The Court Should Appoint Rust Consulting as Claims Administrator ...........................................................................18

B. Class Action Certification for Settlement Purposes Is Proper ...........18

1. Standards Governing Approval of Settlement Classes............18

2. The Settlement Classes Satisfy the Requirements of Rule 23(a).................................................................................19

3. The Settlement Classes Meet the Requirements of Rule 23(b)(3) ....................................................................................22

C. The Proposed Notice Is Adequate......................................................23

D. The Court Should Set a Final Approval Hearing...............................24

VI. CONCLUSION.............................................................................................25

iv

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

# TABLE OF AUTHORITIES

**Federal Cases**                                                                 **Page(s)**

*Acosta v. Trans Union, L.L.C.*,
  243 F.R.D. 377 (C.D. Cal. 2007) ................................................. 11

*Chu v. Wells Fargo Investments, LLC*,
  2011 U.S. Dist. LEXIS 15821, 2011 WL 672645, at * 1 (N.D. Cal. Feb. 16, 2011).. 16

*Churchill Vill., L.L.C. v. GE*,
  361 F.3d 566 (9th Cir. 2004) ....................................................... 24

*Cicero v. DirectTV, Inc.*,
  2010 WL 2991486, at *5 (C.D. Cal. July 27, 2010) ................................. 15

*Costello v. BeavEx, Inc.*,
  810 F.3d 1045 (7th Cir. 2016) ...................................................... 23

*Cunningham v. Leslie's Poolmart, Inc.*,
  2013 U.S.Dist. Lexis 90256, pp. *1, *17 (C.D.Cal., June 25, 2013) ........................ 17

*De Giovanni v. Jani-King Int'l, Inc.*,
  262 F.R.D. 71 (D. Mass. 2009) ...................................................... 23

*EEOC v. Kovacevich "5" Farms*,
  2007 WL 1174444 (E.D. Cal. Apr. 19, 2007) ........................................ 19

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ....................................... 18, 20, 22, 23

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............................................. 12

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ........................................................ 14

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ........................................................ 20

*Misra v. Decision One Mortg. Co.*,
  2009 WL 4581276 (C.D. Cal. Apr. 13, 2009) ........................................ 24

*Morey v. Louis Vuitton N. Am., Inc.*,
  2014 WL 109194 (S.D. Cal. Jan. 9, 2014) .......................................... 19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ................................................... 12

*Officers for Justice v. Civil Serv. Com.*,
  688 F.2d 615 (9th Cir. 1982) .................................................. 11, 13

*Pederson v. Airport Terminal Servs.*,
  2018 U.S. Dist. LEXIS 93862 (C.D. Cal. Apr. 5, 2018) ............................. 12

*Ramirez v. Benito Valley Farms, L.L.C.*,
  2017 U.S. Dist. LEXIS 137272 (N.D. Cal. Aug. 25, 2017) ........................... 16

v

*Rankin v. Am. Greetings, Inc.*,
2011 U.S. Dist. LEXIS 72250 (E.D. Cal. July 5, 2011) ........................................... 17

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ............................................................................. 11, 16

*Rosenburg v. I.B.M.*,
2007 WL 128232, *3 (N.D. Cal. 2007) ..................................................................... 19

*Satchell v. Fed. Express Corp.*,
2007 U.S. Dist. LEXIS 99066, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ......... 12

*Shaffer v. Cont'l Cas. Co.*,
362 F. App'x 627 (9th Cir. 2010) ..................................................................... 15-16

*Singer v. Becton Dick. & Co.*,
2009 WL 4809646 (S.D. Cal. Dec. 9, 2009) ........................................................... 11

*Smith v. CRST Van Expedited, Inc.*,
2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ........................................................... 17

*Villegas v. J.P. Morgan Chase & Co.*,
2012 WL 5878390 ........................................................................................... 14, 24

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ....................................................................... 17

*Varsam v. Lab. Corp. of Am.*,
120 F. Supp. 3d 1173 (S.D. Cal. 2015) ................................................................. 17

*Vasquez v. Coast Valley Roofing, Inc.*,
670 F. Supp. 2d 1114 (E.D. Cal. 2009) ................................................................. 12

**State Cases**

*Ayala v. Antelope Valley Newspapers, Inc.*,
59 Cal. 4th 522 (2014) ........................................................................................... 22

*Coverall N. Am., Inc. v. Comm'r of the Div. of Unemployment Assistance*,
447 Mass. 852, 857 N.E.2d 1083 (2006) ............................................................... 23

*Dynamex Operations W. v. Superior Court*,
4 Cal. 5th 903 (2018) ......................................................................................... 7, 22

*S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*,
48 Cal. 3d 341 (1989) ........................................................................................... 22

**State Statutes**

820 Ill. Comp. Stat. 115/1 ................................................................................. 7, 15

Cal. Lab. Code § 226 (Deering) ............................................................................. 16

Cal. Lab. Code § 2699 ........................................................................................... 16

Mass. Gen. Laws ch. 149, § 148B ........................................................................ 23

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

**Rules**

Fed. R. Civ. P. 23 ............................................................................... *passim*

**Other**

Manual for Complex Litigation, Fourth §§ 21.632-33 ................................................. 18

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

## I.  **INTRODUCTION**

Plaintiffs seek preliminary approval of a settlement reached to end litigation in three district courts involving wage and hour claims on behalf of current and former distributors of defendant Pepperidge Farm, Incorporated ("Pepperidge Farm") in California, Massachusetts, and Illinois. The named Plaintiffs in each case worked or continue to work under Consignment Agreements as Pepperidge Farm distributors, responsible for delivering Pepperidge Farm products to retail stores in their territories. Plaintiffs allege that they and their fellow distributors were misclassified as independent contractors, and as a result are owed monies under their respective State's laws.

The Settlement—the result of years of hard-fought litigation and extensive arms-length negotiations—secures meaningful relief for the Class. The Settlement provides for a lump sum cash settlement of $22,500,000, the net of which will be paid to participating current and former distributors. It further provides substantial programmatic relief to Current Distributors by strengthening their control over the work they perform through revisions to the Consignment Agreements. In addition, the California Labor and Workforce Development Agency ("LWDA") will receive a payment of $100,000 in satisfaction of the *Alfred* Plaintiffs' claims under the California Labor Code Private Attorneys General Act ("PAGA").

The Net Settlement Amount will be allocated among Qualified Class Members based on several factors, including: (1) the amount of time spent as a distributor during the applicable liability period; (2) the rights and remedies available under their respective state's laws; and (3) the risks of litigation given the procedural posture of each case.

Plaintiffs submit that the proposed Settlement is fair and reasonable in light of the risks the Named Plaintiffs and Class Members face. Plaintiffs' counsel believe that the Settlement—negotiated at arms-length and with the assistance of an experienced, independent mediator—is a fair and reasonable resolution of the alleged claims. Accordingly, Plaintiffs respectfully request that the Court grant the motion for

1  preliminary approval and enter the Order requested.

2  ## II.   FACTUAL BACKGROUND & THE PARTIES' CONTENTIONS

3  As alleged in the operative complaints, Pepperidge Farm Incorporated

4  ("Pepperidge Farm") produces and markets baked goods throughout the United States.

5  To deliver its products to retail stores, the company enters into Consignment

6  Agreements with distributors ("distributors"). Distributors' responsibilities include

7  delivering Pepperidge Farm products to stores in their territory, ensuring that the shelves

8  are properly stocked and merchandized, and rotating out stale/out of code product.

9  Plaintiffs' common contention is that Pepperidge Farm misclassified them as

10  independent contractors in violation of their respective state's laws. As a result,

11  Plaintiffs claim that they are owed unpaid overtime wages, other restitutionary relief

12  (including unreimbursed business expenses and unauthorized deductions from wages),

13  and penalties as allowed under their respective state's laws.

14  Pepperidge Farm maintains that Plaintiffs' claims are without merit, that

15  distributors operate as bona fide independent contractors under Consignment

16  Agreements with the company, that they are not owed any damages, and that the

17  Plaintiffs' claims are inappropriate for class action treatment.

18  ## III.   PROCEDURAL BACKGROUND

19  ### A. The Litigation

20  #### 1. The *Abbott* Action

21  On October 2, 2013, Plaintiff Edmund Sayward Sr. and former Plaintiff Marc

22  Abbott filed an action in the Superior Court of the Commonwealth of Massachusetts,

23  Suffolk County, alleging that Pepperidge Farm misclassified Massachusetts distributors

24  as independent contractors and unlawfully denied them the statutory benefits of

25  employment under Massachusetts law. On November 1, 2013, Pepperidge Farm

26  removed the action to the in the United States District Court for the District of

27  Massachusetts.

28  On May 22, 2015, the parties jointly requested that all proceedings be stayed

2

pending resolution of a legal issue in an unrelated case before the First Circuit Court of Appeals that could potentially impact the *Abbott* case. The *Abbott* case was stayed until April 12, 2016, when the Court granted Plaintiffs' unopposed request to lift the stay. Thereafter, the parties conducted discovery, including production of documents and the depositions of Plaintiffs. Declaration of Thomas V. Urmy, Jr. in Support of Plaintiffs' Motion for Preliminary Approval ("Urmy Decl."), ¶¶ 5-6. On June 6, 2016, Plaintiffs filed a First Amended Complaint ("FAC") which added Plaintiff Provost as a named-Plaintiff. The FAC was subsequently amended to delineate proposed subclasses of former and current distributors, bifurcate counsels' representation of the Plaintiffs and proposed subclasses, and eliminate all references to Abbott.[1] *Id.*

### 2. The *Alfred* Action

On August 7, 2014, Plaintiffs Raymond Alfred and Marvin Barrish filed an action in the Superior Court of California in and for the County of Los Angeles, alleging that Pepperidge Farm misclassified California Distributors as independent contractors and unlawfully denied them the statutory benefits of employment under the California Labor Code and applicable Industrial Welfare Commission Wage Order. Plaintiffs sought unpaid overtime wages, missed meal and rest period premium wages, unreimbursed business expenses, and statutory penalties. Plaintiffs also asserted claims for civil penalties under PAGA. Defendant removed the case, and the parties proceeded with discovery. Plaintiffs requested and reviewed hundreds of thousands of pages of documents and produced thousands of pages of records to Defendant. Plaintiffs took six depositions of management personnel, including the corporate Rule 30(b)(6) deposition of Defendant, and Defendant's expert. Meanwhile, Defendant deposed the Named Plaintiffs, eight putative class members who provided declarations in support of Plaintiffs' motion for class certification, and Plaintiff's expert. Declaration of Peter Rukin in Support of Preliminary Approval ("Rukin Decl."), ¶ 7.

The parties fully briefed Plaintiffs' motion for class certification. On August 5,

---

[1] Abbott passed away on December 24, 2016.

3

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

2016, the Court ordered supplemental discovery and briefing regarding Plaintiffs' motion for class certification. (Dkt. 105). The parties conducted the additional discovery and filed supplemental briefs with the Court. On April 11, 2017, the Court issued an order granting in part Plaintiffs' motion for class certification. (Dkt. 121). On April 25, 2017, Defendant filed a petition with the Ninth Circuit seeking interlocutory review of the class certification order under Fed.R.Civ.P. 23(f). On September 5, 2017, the Ninth Circuit granted Defendant's request. Merits briefing before the Ninth Circuit has been stayed since November 20, 2017 pending the parties' settlement efforts.

### 3. The *Mulhern* Action

On February 12, 2016, Plaintiffs Daniel Mulhern and Matthew Jones filed suit in the U.S. District Court for the Northern District of Illinois, alleging that Pepperidge Farm misclassified Illinois Distributors as independent contractors and unlawfully denied them the statutory benefits of employment under Illinois law. Plaintiffs took eight depositions of management personnel (including the corporate Rule 30(b)(6) deposition of Defendant) and Pepperidge Farm took the deposition of Plaintiffs. Declaration of Adam Shafran in Support of Plaintiffs' Motion for Preliminary Approval ("Shafran Decl."), ¶¶ 6-7. In October 2017, Defendant moved for summary judgment. Briefing was stayed pending settlement negotiations.

### B. Settlement

In the Fall of 2015, the parties explored settlement of the California litigation with mediator Lisa Klerman. Rukin Decl., ¶ 8. Those settlement efforts were unsuccessful, and no serious settlement discussions occurred again until the Ninth Circuit granted Defendant's petition for review of this Court's class certification order in the *Alfred* case. Rukin Decl., ¶ 8. At that point, the parties agreed to a mediation with Mark Rudy, a respected and experienced employment mediator. The mediation was conducted on May 1, 2018 and addressed Plaintiffs' claims in all three cases now before this Court (*Alfred, Mulhern*, and *Abbott*). The parties agreed on certain terms at the mediation and continued their settlement discussions following mediation. Rukin Decl.,

Memorandum of Points and Authorities in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

¶ 9. On February 4, 2019, the parties executed a memorandum of understanding resolving the claims in the California, Massachusetts, and Illinois cases. Rukin Decl., ¶ 11. In April 2019, the parties executed a formal Settlement Agreement fully resolving these cases. Rukin Decl., ¶ 12; Exh. 1.

In recognition of this Court's Class Certification order in *Alfred* regarding separate representation (Dkt. 121 at 28-29), Former Distributors and Current Distributors were separately represented during settlement negotiations. Rukin Hyland & Riggin represented Former Distributors in the *Alfred*, *Mulhern* and *Abbott* cases, while the law firms of Shapiro Haber & Urmy LLP and Rudolph Friedmann LLP represented Current Distributors in those cases.

## IV.   TERMS OF THE PROPOSED SETTLEMENT

The complete details of the Settlement are contained in the Settlement Agreement signed by the Parties and attached as Exhibit 1 to the Declaration of Peter Rukin. The following summarizes the Settlement Agreement's key terms.

### A. The Settlement Classes

There are three Settlement Subclasses, as follows:

- The "California Subclass," comprised of "All persons and/or entities who or that were party to a Consignment Agreement with Pepperidge Farm in the State of California at any time between August 7, 2010 and the date of the Order Granting Preliminary Approval."

- The "Illinois Subclass," comprised of "All persons and/or entities who or that were party to a Consignment Agreement with Pepperidge Farm in the State of Illinois at any time between February 12, 2006 and the date of the Order Granting Preliminary Approval.

- The "Massachusetts Subclass," comprised of "All persons and/or entities who or that were party to a Consignment Agreement with Pepperidge Farm in the State of Massachusetts at any time between October 2, 2010 and the date of the Order Granting Preliminary Approval."

5

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

### B. Relief to the Settlement Classes

The Settlement provides for monetary and programmatic relief to the Settlement Subclasses.

### 1. Monetary Relief

Settlement provides that Pepperidge Farm will pay up to $22,500,000 (the "Maximum Settlement Amount") in full settlement of the alleged class action claims. Rukin Decl., Exh. 1 at p. 4 ¶ (l) and p. 5 ¶ 2. Payment for Court-approved attorneys' fees and costs, Court-approved Service Enhancement awards to the Named Plaintiffs, Court-approved Settlement Administration fees and costs, a payment to the LWDA in the *Alfred* case, and monies retained by Pepperidge Farm as a result of any opt-outs will be deducted from the Maximum Settlement Amount. *Id.* at p. 4 ¶ (n). The resulting "Net Settlement Amount" will be distributed to Qualified Class Members.

Each Class Member shall be assigned a Preliminary Individual Settlement Amount. These amounts have been calculated based on: (1) the state law subclass to which the Class Member belongs; and (2) the time each Class Member worked within their respective class liability period. The weighting between subclasses reflects differences as to available state law causes of action, available remedies, relative strength of claims, and the procedural posture of each case.

The settlement funds will be allocated as follows:

**California**. Approximately $12.52 million of the Settlement Fund is allocated to the California Subclass. Eligible distributors in the California Subclass will be entitled to receive approximately $6,000 (before deduction for fees and expenses) for each year they were a distributor between August 7, 2010 and the date of Preliminary Approval.[2] The *Alfred* case received the largest proportion of settlement funds because there are more members of the California Subclass than the other subclasses, as a certified class

---

[2] The per-distributor-year calculations set forth in this motion are based on distributor data shared in or about February 2018. *See* Rukin Decl., Exh. 1, Exh. A. Recently updated data reflects a small increase in the total number of distributors since February 2018, resulting in what counsel estimates to be a negligible (1.2 % or less) change in per-distributor-year payouts.

6

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

*Alfred* is the farthest along procedurally of the three cases, Plaintiffs contend that the case benefits from favorable law (particularly in light of the California Supreme Court's adoption of the "ABC Test" for employment status in *Dynamex Operations West, Inc.. v. Superior Court*, 4 Cal. 5th 903, which Plaintiffs believe is applicable here), and state law allows for a broad range of relief (including a four-year statute of limitation for restitution of unpaid overtime and unreimbursed business expenses, meal and rest break premium wages, statutory penalties, and PAGA civil penalties). Rukin Decl., ¶ 13.

**Massachusetts**. Approximately $6 million of the Settlement Fund is allocated to the Massachusetts Subclass. Eligible distributors in the Massachusetts Subclass will be entitled to receive approximately $4,000 (before deduction for fees and expenses) for each year they were a distributor between October 2, 2010 and the Present. Although the *Abbott* case has not yet been certified as a class action, Plaintiffs believe the claims in *Abbott* are relatively strong. The Massachusetts Subclass has a somewhat lower potential recovery than the California Subclass. Rukin Decl., ¶ 14.

**Illinois**. Approximately $3.97 million of the Settlement Fund is allocated to the Illinois Subclass. Eligible distributors in the Illinois Subclass are entitled to receive approximately $1,300 (before deduction for fees and expenses) for each year they were a distributor between February 12, 2006 and February 11, 2013, and approximately $3,900 (before deduction for fees and expenses) for each year they were a distributor between February 12, 2013 and the Present. The Settlement Funds were allocated within the Illinois Subclass in the manner described above because Pepperidge Farm has additional, unique defenses that are only applicable to the claims for the period of February 12, 2006 through February 11, 2013.[3] Moreover, the *Mulhern* case is not as advanced

---

[3] Illinois law does not require employers to reimburse employees for expenses incurred during the course of employment. Instead, the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 et seq., prohibits *unauthorized* deductions from employee pay. In *Mulhern*, Pepperidge Farm contends Plaintiffs do not have viable deduction claims because the Consignment Agreements authorize the deductions. Distributors' claims under the IWPCA are governed by a ten-year statute of limitation, while distributors' claims for unpaid overtime under the Illinois Minimum Wage Law

7

procedurally as *Alfred*, and the Illinois Subclass faced defenses that Defendant has asserted that are unique to that subclass, and the Illinois Subclass has lower potential aggregate recovery compared to the *Alfred* and *Abbott* subclasses. Rukin Decl., ¶ 15.

After the opt-out period, fifty percent of the money attributable to the Preliminary Individual Settlement Amounts of any Class Members who opt out of the Settlement shall be allocated pro rata to those Settlement Class Members who do not opt out with the other 50% being retained by Pepperidge Farm. The settlement amounts will then be recalculated, and a Final Individual Settlement Amount shall be distributed to Qualified Class Members.

The Settlement also resolves the PAGA claim asserted in the *Alfred* case. In settlement of that claim, and in exchange for a release, the California Labor and Workforce Development Agency ("LWDA") shall receive payment of $100,000 for its 75% share of civil penalties and aggrieved Class Members within the PAGA limitations period shall receive a pro rata share of $33,000. A copy of the Settlement Agreement and this motion have been served on the LWDA. Rukin Decl., ¶ 16.

## 2. Programmatic Relief

Qualified Class Members who are Current Distributors for Pepperidge Farm will also receive additional programmatic benefits. Specifically, the Class Notice to Current Distributors shall attach a Revised Consignment Agreement. Any Current Distributor who endorses and deposits a settlement check and does not opt out of the settlement shall be deemed to have executed and agreed to be bound by the Revised Consignment Agreement. Rukin Decl., Exh. 1 at p. 14 ¶ 15.

The Revised Consignment Agreement provides Current Distributors with new rights with respect to their territories, and, in Plaintiffs' view, substantially decreases Pepperidge Farm's control over Current Distributors through the addition or subtraction of numerous contractual provisions, including but not limited to:

are governed by a three-year statute of limitation. Distributors who did not work under a Consignment Agreement after February 11, 2013 (and who thus only have claims under the IWPCA) are at a substantial risk of recovering nothing in this litigation.

- A provision requiring Pepperidge Farm to provide Current Distributors with advance notice of any product it wishes to allocate to Current Distributors beyond what they have ordered, and the right for distributors to reject product;
- A reduction in Current Distributor's recording-keeping requirements;
- Express clarification that Pepperidge Farm does not impose mandatory service frequency standards;
- Clarification that Current Distributors have the right in their sole discretion to accept or reject Pepperidge Farm's provision of new-distributor onboarding assistance, sales and promotional information, service frequency standards, sales goals, business planning guides and assistance, "route rides," or "route consults," and recommendations regarding territory splits, sales and truck additions;
- A provision that authorizes Current Distributors to negotiate planograms directly with the local stores in their respective territories, subject only to the store's approval and not Pepperidge Farm's;
- A provision expressly prohibiting Pepperidge Farm from interviewing, approving or disapproving any individual a Current Distributor wishes to hire;
- Significant new rights for Current Distributor who wish to sell their territories;
- Elimination of certain language that potentially authorized Pepperidge Farm to terminate its agreement with a Current Distributor;
- A provision requiring Pepperidge Farm to pay Current Distributors additional commissions when they assist with the removal of recalled product; and
- A provision allowing Current Distributors to seek financial relief from Pepperidge Farm when product is damaged through no fault of their own.
- A new alternative dispute process resolution process, including mandatory arbitration at Pepperidge Farm's expense. In any such arbitration, Pepperidge Farm will pay all arbitration filing fees (this does not include the distributor's own attorneys' fees, if he or she chooses to retain an attorney), except for an amount equal to the filing fee in state court in the jurisdiction where the arbitration is filed (i.e. the distributor will not

9

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

have to pay more to file for arbitration than the amount he or she would have to pay to file a case in state court).

### C. Settlement Notice, Claim and Exclusion Procedures

The parties have agreed to a notice plan that will provide Class Members with sufficient information to make an informed decision about how and whether to participate in the proposed Settlement, object to the proposed Settlement, or to exclude themselves from the Settlement Class. *See* Rukin Decl., Exh. 1 at p. 3 ¶ (f) and pp. 8-11 ¶¶ 7-11.

### D. Release of Claims

Class Members who do not opt out of the Settlement will release all wage and hour claims based on the alleged existence of an employment relationship between Class Members and Pepperidge Farm that were asserted or could have been asserted based on the facts alleged. *Id.* at p. 12-13 ¶ 13. Class Members who cash a settlement check will release their claims under the federal Fair Labor Standards Act. The Named Plaintiffs agree to a general release of claims. *Id.* at p. 10 ¶ 12.

### E. Enhancement Payments, Attorneys' Fees and Costs, and Administration

The following sums will be deducted from the Settlement Amount: (1) Service Enhancement payments to the Named Plaintiffs; (2) the fees and expenses of the Claims Administrator; (3) Class Counsel's attorneys' fees up to 25% of the Maximum Settlement Amount plus litigation costs; and (4) payment of $100,000 to the LWDA in connection with the *Alfred* Plaintiffs' PAGA claim. Rukin Decl., Exh. 1 at p. 5-7 ¶ 2 (a)-(d).

### F. Payment to Qualified Class Members

The Claims Administrator will calculate the amounts due each Qualified Class Member, issue payments, and handle unclaimed property/*cy pres* distribution.

### G. Blow-Up Clause

Among other provisions, if ten percent or more of the Settlement Class Members in California, Illinois or Massachusetts opt out of the Settlement, Pepperidge Farm has

10

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

the right to withdraw from the Agreement. Rukin Decl., Exh. 1. at p. 15 ¶ 18.

## V.    **ARGUMENT**

### A. Preliminary Approval of the Settlement Is Appropriate

In class action litigation, a court must approve the dismissal or compromise of the action. Fed. R. Civ. P. 23(e). This involves a two-step process in which the Court first determines whether a proposed class action settlement has the potential to be fair, adequate and reasonable, and, second, after notice is sent to proposed Class Members, whether the settlement merits final approval. *Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). A full fairness analysis is unnecessary at the preliminary approval stage. *Singer v. Becton Dickinson Co.*, 2009 WL 4809646, at *7 (S.D. Cal. 2009). "Rather, at the preliminary approval stage, the Court need only review the parties' proposed settlement to determine whether it is with the 'permissible range of possible judicial approval' and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate." *Id.* (citations omitted).

The Ninth Circuit has identified eight, non-exclusive factors that may be considered during both the preliminary and final approval processes. Each factor does not necessarily apply to every class action settlement, and other factors may be considered. For example, courts often consider whether the settlement is the product of arms-length negotiations. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). Approval of a class action settlement rests in the sound discretion of the court, which should apply its discretion in light of the judicial policy favoring settlement of complex class action litigation. *See, e.g., Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

As discussed below, application of the relevant factors supports preliminary approval.

//

//

11

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement                    Case No. 2:14-cv-07086-JAK-SK

### 1. The Settlement Is the Product of Informed, Non-Collusive Negotiation

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citations omitted). "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Pederson v. Airport Terminal Servs.*, 2018 U.S. Dist. LEXIS 93862, at *18 (C.D. Cal. April 5, 2018) quoting *Satchell v. Fed. Express Corp., Nos.* C03-2659 SI, C 03-2878 SI, 2007 U.S. Dist. LEXIS 99066, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

In this case, the Settlement Agreement is the result of arm's-length negotiations involving experienced employment counsel who are well-versed in the applicable substantive law, class action litigation procedures, and the legal and factual issues of this particular case. Rukin Decl., ¶¶ 2-7; Urmy Decl., ¶¶ 2-13; Shafran Decl., ¶¶ 2-20. The parties attended a full day of mediation with an experienced mediator and conducted follow-up negotiations over the course of several months. The Settlement followed extensive document production, depositions of Plaintiffs, Class Members, and Pepperidge Farm representatives, and briefing of a Rule 23(f) petition to the Ninth Circuit. *Id.* "[S]uch negotiations are highly indicative of [the] fairness" of the proposed Settlement. *See In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).

### 2. The Settlement Falls Within the Range of Possible Approval

In deciding whether the proposed settlement is adequate and falls within the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer," taking into account the risks of continuing litigation. *See Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal.2009) (internal quotations and citations omitted). Courts should recognize that "the agreement reached normally embodies a compromise; in exchange for the saving of cost

12

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

and elimination of risk, the parties each gave up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624 (internal quotations and citation omitted). Here, the Settlement is fair, adequate and well within the range of possible approval.

### a. *The Strength of Plaintiffs' Case and the Risk of Further Litigation Support Preliminary Approval*

Plaintiffs' primary contention is that Pepperidge Farm classified its distributors as independent contractors while reserving and exercising levels of control consistent with an employment rather than independent contractor relationship. Plaintiffs further allege that, as a result of this misclassification, Plaintiffs and Class Members are owed compensation for various benefits of employment that Pepperidge Farm neglected to pay them.

Although Plaintiffs believe that the documents produced in discovery and information revealed during depositions support Plaintiffs' allegations, a finder of fact could conclude that distributors were properly classified as independent contractors. Indeed, a motion for summary judgment is currently pending in *Mulhern* seeking judgment against Plaintiffs on their misclassification claims. A trier of fact could also decide against Plaintiffs on their underlying substantive wage and hour claims. For example, Pepperidge Farm contends that in addition to being independent contractors, distributors are exempt from overtime wages under the outside sales and motor carrier exemptions. While Plaintiffs disagree, and contend that they are not exempt from overtime, a jury could find otherwise. Without conceding that any adverse conclusions would be correct or appropriate, the Named Plaintiffs recognize the risk of possible negative outcomes.

There is also a risk that the Class will not reach a trial on the merits. While the Massachusetts and Illinois Plaintiffs contend that the claims in their cases are appropriate for class certification, it is possible that Plaintiffs would not prevail. The *Abbott* and *Mulhern* courts could find, for example, that issues common to the Class are

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

overwhelmed by issues that relate to Class Members' particular circumstances. Likewise, this Court's class certification order in *Alfred* is currently on appeal to the Ninth Circuit under Fed. R. Civ. P. 23(f). While Plaintiffs contend that they will prevail on that appeal, there is a risk of reversal. This Settlement avoids that uncertainty, while ensuring that Class Members receive substantial consideration now for a release of their claims. *See* Rukin Decl., ¶ 19.

### b. *The Settlement Consideration and Allocation Are Fair*

The Settlement is fair and reasonable sum in light of the risks of further litigation. Class members are recovering, before deduction for attorneys' fees and costs, an average of approximately 20 percent of their maximum potential damages (using overtime hours assumptions based on counsel's investigation). Rukin Decl., ¶¶ 20-24.[4]

This is a significant recovery. If all Class Members participate in the Settlement, California Class Members who have worked throughout the entire class period will receive gross awards (before deduction for fees and expenses) as least as high as $45,000, Illinois Class Members who have worked throughout the entire class period will receive average gross awards as least as high as $32,500, and Massachusetts Class Members who have worked throughout the entire class period will receive gross awards as least as high as $30,000. *Id.* at ¶ 24. Under the circumstances, the amounts of the settlement payments are fair, adequate and reasonable. *See In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000) (finding a recovery of one sixth (16.67%) of the potential recovery adequate in light of the plaintiff's risks); *Villegas v. J.P. Morgan Chase & Co.,* 2012 WL 5878390, at *6 (preliminarily approving a settlement representing 15% of the potential recovery).

The Settlement also provides substantial non-monetary relief to Current Distributors in the form of revised Consignment Agreements. Rukin Decl., Exh. 1 at p. 3 ¶ (g). These new agreements provide distributors with additional contractual rights and Plaintiffs believe that they substantially decrease Pepperidge Farm's alleged control over

---

[4] Exposure calculation is based on distributors' self-reported estimates.

14

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

the relationship. Shafran Decl., ¶¶ 17-21.

Finally, the plan of allocation of the Settlement to Class Members is fair and reasonable. The Settlement has been allocated based on: (1) the state law subclass to which the Class Member belongs; and (2) the time each Class Member worked within their respective class liability period. The weighting between subclasses reflects differences as to available state law causes of action, available remedies, relative strength of claims, and the procedural posture of each case. Rukin Decl., ¶ 24; *supra* at Section IV(B)1. Within the California and Massachusetts subclasses, funds shall be allocated based on time worked by subclass members, a standard allocation methodology in wage-and-hour cases. *See, e.g., Cicero v. DirectTV, Inc.*, 2010 WL 2991486, at *5. Payments to Illinois subclass members will be weighted toward the three years preceding the February 2016 filing of the Mulhern *complaint*, since the only claims asserted for the period prior to February 2013 are the unauthorized deduction claims under the IWPCA, 820 Ill. Comp. Stat. 115/1 et seq, for which Pepperidge Farm has asserted unique defenses. *See Supra*, n. 2. Indeed, Pepperidge Farm's pending motions for summary judgment in *Mulhern* argue that Plaintiffs' unlawful deduction claims fail because the Consignment Agreements expressly authorize the deductions. *Mulhern*, Dkt. Nos. 77, 81. As a result, there is a very substantial chance that Illinois distributors will recover nothing for time worked prior to February 2013.

### 3. The Attorneys' Fees and Costs Requests Are Reasonable

The Settlement provides that, prior to the final approval hearing, Class Counsel may petition the Court for an award of fees in an amount not to exceed $5,625,000 (25% of the Settlement Amount) and an award of litigation expenses. Rukin Decl., Exh. 1 at p. 5 ¶ 2(b)(i). This provision is fair and reasonable, given the significant time and expense that Class Counsel have devoted to this case over the last five years and the result that they have achieved for the Class. Rukin Decl., ¶ 25; Shafran Decl., ¶ 15; Urmy Decl., ¶ 13. Class Counsel's fees will be tied directly to the amount that is actually paid out to the Class, and the request is within the range of reasonableness under Ninth Circuit

15

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

authority. *See, e.g., Shaffer v. Cont'l Cas. Co.,* 362 Fed. Appx. 627, 631 (9th Cir. 2010) (in common fund settlement "[t]wenty-five percent is the benchmark").

### 4.  The PAGA Settlement Is Reasonable and Should Be Approved.

PAGA provides that 75% of civil penalties recovered under the statute shall be paid to the California Workforce and Development Agency ("LWDA") and 25% to aggrieved employees. Here, the Settlement allocates $133,000 to the PAGA claims brought by Plaintiffs Barrish and Alfred. Of that amount, $100,000 will be paid to the LWDA, and $33,000 will be paid to aggrieved employees in California. Because a settlement of PAGA claims settles claims that could otherwise be brought by the state, the trial court must "review and approve" any settlement of PAGA claims. Cal. Lab. Code § 2699(l)(2).

The $133,000 PAGA settlement is reasonable. A single PAGA penalty for Pepperidge Farm's alleged failure to provide distributors with wage statements under Labor Code § 226, assessed on behalf of each California distributor for every pay period in the PAGA liability period, would amount to approximately $1.3 million. Rukin Decl., ¶ 26. Given that Plaintiffs might fail to prevail on the merits of their misclassification claim, in which case no PAGA penalties would be recoverable, a PAGA payment of $133,000 ($100,000 to the LWDA and $33,000 to Class Members) is a reasonable compromise. *See, e.g., Chu v. Wells Fargo Investments,* LLC, No. C 05-4526 MHP, C 06-7924 MHP, 2011 U.S. Dist. LEXIS 15821, 2011 WL 672645, at * 1 (N.D. Cal. Feb. 16, 2011) (approving PAGA settlement payment of $7,500 to the LWDA out of $6.9 million common-fund settlement); *Ramirez v. Benito Valley Farms,* LLC, 2017 U.S. Dist. LEXIS 137272, at *18 (N.D. Cal. Aug. 27, 2017) (settlement of PAGA claim for 4.5% of exposure reasonable).

### 5.  The Proposed Service Awards Are Reasonable

"Incentive [or service] awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). In evaluating service awards, courts may consider "1) the risk to the class representative in commencing suit, both

financial and otherwise; 2) the notoriety and personal difficulties encountered by the
class representative; 3) the amount of time and effort spent by the class representative; 4)
the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the
class representative as a result of the litigation." *Smith v. CRST Van Expedited, Inc.*, 10-
CV-1116- IEG WMC, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) (quoting *Van Vranken
v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D.Cal.1995)).

Here, awarding service payments to the Named Plaintiffs is consistent with a fair,
just and adequate settlement. Rukin Decl., ¶ 27. First, the Named Plaintiffs played a very
active role in the prosecution of the case. They each spent up to many hundreds of hours
over five years actively assisting Class Counsel, including attending regular meetings
and calls with counsel, traveling long distances for mediation sessions, sitting for their
depositions, and gathering and producing documents. Second, the Named Plaintiffs
undertook a substantial risk in agreeing to serve as class representatives. Pepperidge
Farm has argued that by litigating the misclassification issue, the Current Distributors
undermined the value of their existing territories, and the former distributors opened
themselves up to being sued by the individuals who purchased their routes. Dkt. 61 at
16. Third, in taking on the role of class representatives, Plaintiffs gave up the right to
individually control their own valuable claims in favor of the interests of the Class. The
service awards they seek are modest when compared to the individual payouts Class
Members will be receiving. *See Rankin v. Am. Greetings, Inc*., 2011 U.S. Dist. LEXIS
72250, at *5 (E.D. Cal. July 6, 2011) (approving incentive award that "is reasonably
close to the average per class member amount to be received"). Finally, although
California Named Plaintiffs Ray Alfred and Marvin Barrish arguably have the right to
receive 25 percent of the $133,000 PAGA penalty,[5] they are not making any claim for

---

[5] *See, e.g.*, *Varsam v. Laboratory Corp. of America*, 120 F.Supp.3d 1173, 1181 (S.D.Cal.
2015) (25 percent of civil penalties goes "to the aggrieved employees 'who initiated the
claim under PAGA, not to the group of aggrieved employees on whose behalf the claim
was prosecuted'"); *Cunningham v. Leslie's Poolmart, Inc*. No. CV 13-2122 CAS
(CWx)) 2013 U.S.Dist. Lexis 90256, pp. *1, *17 (C.D.Cal., June 25, 2013) (25 percent
of the penalties recovered in a PAGA action are paid to the named plaintiff).

those funds, but instead have agreed that the bounty portion will be distributed to the
California Subclass on a *pro rata* basis. Rukin Decl., ¶¶ 26-27.

At final approval, Plaintiffs will submit declarations documenting the time and
effort they put into litigating these cases and the risk they undertook. For now, Plaintiffs
merely ask that the Court permit dissemination of Notice to the Class identifying the
service awards that Plaintiffs will be requesting at final approval.

### 6. The Court Should Appoint Rust Consulting as Claims Administrator

To ensure the fair and efficient administration of the Settlement, the Court should
appoint Rust Consulting ("Rust"), an experienced claims administrator, to distribute the
Notice and administer claims under the Settlement Agreement. *See* Rukin Decl., ¶ 28.
Plaintiffs anticipate that Rust will be paid approximately $20,000 to perform all of the
functions of the Claims Administrator under the terms of the Settlement Agreement. *Id.*

### B. Class Action Certification for Settlement Purposes Is Proper

The Named Plaintiffs respectfully request that the Court provisionally certify the
proposed Settlement Class and Subclasses for settlement purposes. The purpose of
provisional class certification is to facilitate distribution, to all proposed Settlement
Class Members, of notice of the terms of a proposed settlement and the date and time of
the final approval hearing. *See Manual for Complex Litigation, Fourth* §§ 21.632-33.

### 1. Standards Governing Approval of Settlement Classes

In the context of granting preliminary approval of the Settlement, the Court must
make a threshold determination as to whether the proposed settlement subclasses meet
Rule 23 requirements. Namely, the Court must determine whether each proposed
settlement subclass satisfies the requirements that: (1) the class is so numerous that
joinder would be impracticable; (2) there are questions of law or fact common to the
class; (3) the named plaintiffs' claims are typical of the claims of the proposed class; and
(4) plaintiffs and their counsel will adequately and fairly represented the interests of the
class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998). Additionally,
the action must be maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3). *Id.* at 1022.

18

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

However, courts need not consider the Rule 23(b)(3) issues regarding manageability of the class action, as settlement obviates the need for a manageable trial. *See Morey v. Louis Vuitton N. Am., Inc.*, 2014 WL 109194, *12 (S.D. Cal 2014 ("[B]ecause this certification of the Class is in connection with the Settlement rather than litigation, the Court need not address any issues of manageability that may be presented by certification of the class proposed in the Settlement Agreement.") *Rosenburg v. I.B.M.*, 2007 WL 128232, *3 (N.D. Cal. 2007) (discussing "the elimination of the need, on account of the Settlement, for the Court to consider any potential trial manageability issues that might otherwise bear on the propriety of class certification.").

Based on the applicable standards, as further discussed below, the Court should certify the California,[6] Illinois and Massachusetts subclasses for settlement purposes. Plaintiffs understand that, if the case ultimately is not resolved though settlement, Pepperidge Farm would dispute Plaintiffs' factual allegations and oppose class certification.

## 2. The Settlement Classes Satisfy the Requirements of Rule 23(a)

The proposed California, Illinois and Massachusetts subclasses each satisfy all the requirements of Rule 23(a). First, these settlement subclasses are sufficiently numerous to satisfy the requirements of Rule 23(a)(1), as courts have generally found the numerosity requirement satisfied when a class includes at least 40 members. *See, e.g., EEOC v. Kovacevich "5" Farms*, No. CV-F-06-165 OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007). Here, the California subclass consists of approximately 376 distributors, the Massachusetts subclass consists of approximately 226 distributors, and the Illinois subclass consists of approximately 274 distributors.

---

[6] On April 11, 2017, this Court granted in part the *Alfred* Plaintiffs' motion for class certification. The Order certified Plaintiffs' misclassification, overtime, expense reimbursement, UCL 17200, and statutory penalty claims, but provisionally denied class treatment of Plaintiffs' meal and rest break claims. The Court's Order is now on Rule 23(f) (appeal). This motion seeks conditional certification for settlement purposes only of all claims asserted in the *Alfred* case, without prejudice to the already-certified claims proceeding as the Court originally envisioned in the event the Settlement does not become final for any reason.

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

Second, Plaintiffs maintain that Rule 23(a)(2) is satisfied because there are questions of law or fact common to each settlement subclass. *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) ("Commonality only requires a single significant question of law or fact."). Here, Plaintiffs believe that the overarching common question for each subclass is whether Class Members were misclassified as independent contractors. *See Alfred*, Dkt. 121 ("There is a common question presented in this action. It is whether the SDAs are independent contractors or employees of Defendant").

Third, Plaintiffs assert that the typicality requirement of Rule 23(a)(3) is satisfied because the claims raised by the Named Plaintiffs are typical of the claims asserted on behalf of the class. They arise out of the same factual and legal circumstances as the claims of other Class Members in their respective settlement subclasses. Like all other Class Members, the Named Plaintiffs were subject to the same misclassification policies and practices. Rukin Decl.*, ¶ 27. Thus, the Named Plaintiffs are members of, and allege the same injuries as, the settlement subclasses they seek to represent, and their claims are reasonably co-extensive with those of the proposed settlement classes. *Hanlon*, 150 F.3d at 1020.

Fourth, Plaintiffs and counsel believe they satisfy the adequacy requirement of Rule 23(a)(4), as well as the requirements of Rule 23(g). Rule 23(a)(4) requires that the parties fairly and adequately protect the interests of the class. The adequacy requirement is met where the named plaintiffs and their counsel do not have conflicts of interest with other class members, and the named plaintiffs and their counsel will vigorously prosecute the interests of the class. *Hanlon*, 150 F.3d at 1020. Rule 23(g)(1) requires courts, when appointing class counsel, to consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation and the type of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to its representation.

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

Here, the interests of the Named Plaintiffs and absent Class Members are not antagonistic, and the Named Plaintiffs have the same claims to expense reimbursement, unpaid overtime and related penalties as do the other members of the settlement subclasses. They have suffered the same alleged injury and are entitled to the same remedy. Plaintiffs' counsel are not aware of any conflicts between the Named Plaintiffs and other settlement Class Members that would render them inadequate class representatives.

Further, to the extent the Court were to conclude that the interests of Current Distributors and Former Distributors are not aligned for settlement purposes, each settlement subclass contains both a Current Distributor and a Former Distributor as Named Plaintiffs. Current Distributor Named Plaintiffs were involved in and agreed to the settlement on behalf of the California, Massachusetts, and Illinois subclasses. Rukin Decl., Exh. 1 at pp. 18-26 (settlement approved by Plaintiff Jones on behalf of Illinois Current Distributors, Plaintiff Alves on behalf of California Current Distributors, and Plaintiff Provost on behalf of Massachusetts Current Distributors). Moreover, the Current Distributors and Former Distributors had separate legal representation during the negotiations. Rukin Decl., ¶ 6.

Finally, Plaintiffs' counsel have actively identified, investigated and prosecuted the claims that are the subject of this Settlement; have extensive experience in class action litigation, including wage-and-hour claims of the type asserted here; have been appointed Class Counsel in other cases on numerous occasions; and have demonstrated that they have the ability and resources to vigorously pursue the claims asserted in this litigation. Rukin Decl., ¶¶ 2-17; Shafran Decl., ¶¶ 2-13; Urmy Decl., ¶¶ 2-11; Declaration of Wilmer Harris in Support of Plaintiffs' Motion for Preliminary Approval ("Harris Decl."), ¶¶ 2-14; Declaration of Robert Wozniak in Support of Plaintiffs' Motion for Preliminary Approval ("Wozniak Decl."), ¶¶ 2-7. For these reasons, Plaintiffs' counsel and the Named Plaintiffs meet the adequacy requirement of Rule 23(a)(4), and Plaintiffs' counsel should be appointed as Class Counsel pursuant to Rule

21

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

23(g).

### 3.  The Settlement Classes Meet the Requirements of Rule 23(b)(3)

Plaintiffs assert the settlement classes meet the requirements of Rule 23(b)(3), because common questions "predominate over any questions affecting only individual members," and class resolution "is superior to other available methods for the fair and efficient adjudication of the controversy."

First, the settlement classes satisfy the predominance requirement, which examines whether the proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id*.

Here, all Pepperidge Farm distributors in each state are subject to Pepperidge Farm's policy of classifying distributors as independent contractors. Rukin Decl., ¶ 18. Further, Plaintiffs assert that in each state, the operative test for employment status turns on common factual issues. For example, in California, the "ABC test" for employment status asks whether the distributors are performing work within Pepperidge Farm's usual course of business. *Dynamex*, 4 Cal. 5th at 917. That question, Plaintiffs maintain, can be answered in a single stroke for all subclass members. Similarly, as this Court has already determined, to the extent the California's subclass members' claims are governed by the right to control test set forth in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal. 3d 341 (1989), Plaintiffs contend that those claims can also be determined at once for all subclass members. *Alfred*, Dkt. 121, p. 33 ("Because the scope of the right to control is governed by the Agreements, which are common, and evidence of actual operational control or independence can be presented at a trial, this factor weighs in favor of finding predominance as to this claim"); *see also Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 533 (2014) ("[W]hat matters under the common law is not how much control a hirer exercises, but how much control the

22

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

hirer retains the right to exercise.").

Similar analyses apply to the Illinois and Massachusetts claims, as both states utilize the ABC test in determining employment status. *De Giovanni v. Jani-King Int'l, Inc.*, 262 F.R.D. 71, 84-85 (D. Mass. 2009) (certifying misclassification claims under ABC test.);[7] *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) (reversing district court's denial of class certification on predominance grounds; "There is no doubt that common evidence will satisfy the second prong of the test—whether the individuals "perform[ed] work which is ... outside the usual course of business ... of the employer.").[8]

Second, Rule 23(b)(3) is satisfied because resolution of the issues in this case on a class wide basis is "superior to other available methods for the fair and efficient adjudication of the controversy." *See Hanlon*, 150 F.3d at 1023. The alternative to a single class action—numerous individual actions—would be inefficient and unfair. *Id.* ("many claims [that] could not be successfully asserted individually. . . would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs."). Plaintiffs assert that class adjudication is particularly appropriate here given the core claim that that Pepperidge Farm has uniform classification policies, practices and procedures, and it would be particularly inefficient to require individual adjudications in the face of such common evidence and legal questions.

## C. The Proposed Notice Is Adequate

---

[7] Under Massachusetts law, an individual is an employee unless the services at issue are performed (a) free from control of the employing enterprise; (b) outside of the usual course of business; and (c) as part of an independently established trade, occupation, profession, or business of the worker. Massachusetts General Laws ch. 149, § 148B; If an employer fails to establish any one of the three prongs, the services in question will constitute "employment." *Coverall N.A., Inc. v. Com'r of Div. of Unemployment Assistance*, 44 Mass. 852, 857, 857 N.E.2d 1083 (2006).

[8] Under Illinois law, all individuals are considered to be employees of an employer, unless the employer can prove: (1) the worker has been and will continue to be free from control and direction over the performance of his work, both under his contract ... and in fact; and (2) the worker performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer ...; and (3) the worker is in an independently established trade, occupation, profession or business. *Id.*

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

Under Rule 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by a propos[ed settlement]." Fed. R. Civ. P. 23(e)(1). Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted).

The proposed Class Notice and notice plan satisfy the requirements of Rule 23(e) and due process. The proposed Class Notice clearly explains the nature of the action and the terms of the Settlement (including the Settlement Amount, individual Class Members' estimated minimum recovery, the attorneys' fees to be paid, how settlement payments will be calculated, the claims that will be released); and how the Class Member may participate in or opt-out of the Settlement. *See* Rukin Decl., Exh. 1, Exh. B. This information is more than sufficient to satisfy Rule 23(e). *See, e.g., Villegas,* 2012 WL 5878390, at *8 (approving a notice containing the same categories of information).

As described above in Section IV (C), the proposed Class Notice plan also ensures that Class Members receive the best notice possible. In addition to running a National Change of Address search upon receiving the Class List from Pepperidge Farm, the Settlement Administrator will set up and maintain an informational website through which Class Members can view the Settlement Agreement and Class Notice. This is the best notice practicable. *See Misra v. Decision One Mortgage Company*, No. SA CV 07-0994, 2009 WL 4581276 at *9 (C.D. Cal. April 13, 2009)(use of NCOA database and appropriate skip tracing followed by mailed notice is the 'best notice that is practicable under the circumstances.'").

### D. The Court Should Set a Final Approval Hearing

Finally, the Court should set a hearing for final approval of the Settlement on a date appropriately scheduled to follow the date by which Class Members must file objections to the Settlement and Plaintiffs' counsel's request for attorneys' fees and

Memorandum of Points and Authorities in Support of Plaintiffs'
Unopposed Motion for Preliminary Approval of Class Action Settlement

Case No. 2:14-cv-07086-JAK-SK

costs.

## VI.   **CONCLUSION**

Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the proposed Settlement; (2) conditionally certify for settlement purposes only California, Massachusetts, and Illinois subclasses; (3) approve the form, content and method of distribution of the Notice of Class Action Settlement; (4) appoint Rust Consulting as the Settlement Administrator subject to the completion and execution of an agreement between the Parties and Rust; (5) appoint Rukin Hyland & Riggin LLP, Shapiro Haber & Urmy LLP, and Rudolph Friedmann LLP as Class Counsel for the California, Illinois, and Massachusetts subclasses; (6) appoint Schonbrun Seplow Harris & Hoffman as co-Class Counsel for the California subclass; (7) appoint Freed Kanner London & Millen as co-Class Counsel for the Illinois subclass; (8) appoint Raymond Alfred, Marvin Barrish, Ashley Alves, Daniel Mulhern, Matthew Jones, Edmund Sayward Sr., and John Provost as class representatives; (9) approve the PAGA settlement and $100,000 PAGA payment to the California Labor and Workforce Development Agency; and (10) schedule a hearing regarding final approval of the proposed Settlement and Class Counsel's request for attorneys' fees, costs, and enhancement award payments.


Dated:  April 24, 2019             RUKIN HYLAND & RIGGIN LLP


                                   By:  /s/ Peter Rukin
                                   _____

                                      Peter Rukin

                                   PETER RUKIN (SBN 178336)
                                   *prukin@rukinhyland.com*
                                   VALERIE BRENDER (SBN 298224)
                                   *vbrender@ rukinhyland.com*
                                   RUKIN HYLAND & RIGGIN LLP
                                   1939 Harrison Street, Suite 290
                                   Oakland, CA 94612
                                   Telephone:  (415) 421-1800
                                   Facsimile:   (415) 421-1700

WILMER J. HARRIS (SBN: 150407)
*wharris@sdshhlaw.com*
SCHONBRUN SEPLOW HARRIS &
HOFFMAN LLP
715 Fremont Avenue, Suite A
S. Pasadena, CA 91030
Telephone: (626) 441-4129
Facsimile: (626) 283-5770

THOMAS V. URMY, JR. (admitted pro hac vice)
turmy@shulaw.com
SHAPIRO HABER & URMY LLP
Seaport East
Two Seaport Lane
Boston, MA 02210
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

ADAM J. SHAFRAN (admitted pro hac vice)
ashafran@rflawyers.com
JONATHON D. FRIEDMANN (admitted pro hac vice)
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
Telephone: (617) 723-7700
Facsimile: (617) 227-0313

ROBERT J. WOZNIAK, JR. (admitted pro hac vice)
*Rwozniak@fklmlaw.com*
FREED KANNER LONDON & MILLEN, LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521

Attorneys for Plaintiffs

26