UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | Date | October 10, 2019 |
|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Joseph Remigio | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
| Not Present | Not Present |

Proceedings:     (IN CHAMBERS) ORDER RE PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (DKT. 178)

I.     **Introduction**

On August 7, 2014, Raymond Alfred and Marvin Barrish ("Plaintiffs") filed this putative class action (the "Alfred Action") against Pepperidge Farm, Inc. ("PF" or "Defendant") in the Los Angeles Superior Court. Complaint. Dkt. 1-1. Defendant removed the action on September 10, 2014. Dkt. 1.

On April 11, 2017, two subclasses were certified. Dkt. 121. On April 25, 2017, Defendant sought interlocutory appeal of the class certification order. *See* Dkt. 124 at 2. The Ninth Circuit granted the request on September 5, 2017. Dkt. 147. The appeal had been stayed since November 20, 2017, while the parties discussed a potential settlement of the action. *See* Dkt. 156 at 3; Dkt. 157. On April 8, 2019, the parties filed a notice that they had reached a settlement, and that for settlement purposes, two other actions would be consolidated with this one. Dkt. 174. Thereafter, on April 22, 2019, the Alfred Action was consolidated with *Abbott v. Pepperidge Farm, Inc.*, No. 19-1998 (the "Abbott Action") and *Mulhern v. Pepperidge Farm, Inc.*, No. 19-1660 (the "Mulhern Action"). Dkt. 177. The Abbott Action was filed in a Massachusetts Superior Court on October 2, 2013, and was removed to the District of Massachusetts on November 1, 2013, before being transferred to this District on March 19, 2019. No. 19-1998, Dkts. 1, 104. The Mulhern Action, which was filed in the Northern District of Illinois on February 12, 2016, was transferred to this District on March 7, 2019. No. 19-1660, Dkts. 1, 113. Upon consolidation of the three actions, the Alfred Action was deemed the Lead Case. Dkt. 177.

The operative complaint is the Third Amended Complaint ("TAC"), which was filed in the Alfred Action on June 23, 2017. Dkt. 132. It advances seven causes of action relating to the alleged miscategorization of PF Distributors ("Distributors") as independent contractors. *Id.* The TAC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | Date | October 10, 2019 |
|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | |

advances the following causes of action: (i) failure to pay California overtime compensation; (ii) reimbursement for business expenses; (iii) failure to provide meal and rest periods; (iv) failure to furnish accurate wage statements; (v) waiting time penalties; (vi) violations of the Unfair Competition Law; and (vii) civil penalties under the Labor Code Private Attorney General Act. *Id.* at 1.

On April 30, 2019, Plaintiffs filed an unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion"). Dkt. 178. The Motion seeks the following:

- Provisional certification of three Subclasses, as defined in the Settlement and including
  - A California Subclass
  - An Illinois Subclass
  - A Massachusetts Subclass
- Preliminary approval of the Settlement (Dkt. 178-3, Ex. 1)
- Appointment of Class Counsel
  - California Subclass: Rukin Hyland & Riggin, LLP; Schonbrun Seplow Harris & Hoffman LLP
  - Illinois Subclass: Shapiro Haber & Urmy LLP; Freed Kanner London & Millen
  - Massachusetts Subclass: Rudolph Friedman LLP
- Appointment of Class Representatives
  - California Subclass: Ashley Alves, Raymond Alfred, and Marvin Barrish
  - Illinois Subclass: Matthew Jones and Daniel Mulhern
  - Massachusetts Subclass: John Provost and Edmund Sayward, Sr.
- Appointment of Rust Consulting as Claims Administrator
- Approval of the Notice procedures set forth in the Settlement
- The setting of a hearing on final approval of the Settlement

Dkt. 178-10.

A hearing on the Motion was held on June 17, 2019. Dkt. 179. At the hearing, Plaintiffs' counsel were directed to submit a supplemental brief addressing certain issues that were raised during the hearing as to the following matters: (i) the estimated hours each Named Plaintiff spent assisting with this litigation; (ii) an estimate of the lodestar amount for the work performed by each law firm that has represented Plaintiffs in the litigation; and (iii) evidence to support the reasonableness of each attorney's hourly rates. *Id.* On July 1, 2019, Plaintiffs filed a supplemental brief, declarations of counsel and supporting evidence. Dkt. 180.

On July 23, 2019, the parties filed a notice that an issue had arisen regarding the Class List and requested that the Court defer any decision on the Motion. Dkt. 185. On August 30, 2019, the parties filed a supplemental notice that the issue related to 38 previously-unidentified Class Members, which required certain changes to the terms of the Settlement. Dkt. 190. Those changes have been identified.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | Date | October 10, 2019 |
|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | |

For the reasons stated in this Order, the Motion is **GRANTED**; provided, however, this determination is based on the changes that were adopted at the June 17, 2019 hearing, which include providing for a PAGA allocation of $190,000.

## II.     Factual Background

### A.     The Parties

PF produces biscuit and snack products that are distributed throughout the United States. TAC, Dkt. 132 ¶ 12. Its Distributors of these products are assigned to territories, and deliver, stock, merchandise and promote PF products with respect to their sale in retail stores in those territories. *Id.* ¶ 13. Plaintiffs and similarly situated Distributors signed Consignment Agreements with PF, which set forth the terms of the work to be performed by the Distributors. *Id.* ¶ 16. Each Distributor paid PF to secure an assigned distribution territory. *Id.*

### B.     Allegations Against Defendant

The Consignment Agreements state that the Distributors are "independent businessmen." *See id.* However, Plaintiffs contend that PF's "unfettered right to control and extensive actual control over Plaintiffs and Class Members is such that the Distributors are actually employees." *Id.* ¶¶ 16-25. Plaintiffs claim that they and other Distributors suffered harm as a result of this misclassification, including underpayment, denial of rest and meal periods, and unlawful recharging of expenses. *Id.* ¶¶ 28-39.

## III.     Summary of the Terms of the Settlement

The Motion is supported by a detailed summary of the terms of the Settlement, a copy of which was filed with the Motion. *See* Dkt. 178-3, Ex. 1. The Settlement was subsequently amended, as noted above. Dkt. 190-1, Ex. C. A brief summary of the relevant Settlement provisions follows.

### A.     Class Definition and Period

The Settlement provides for three Subclasses:

- The "California Subclass," comprised of "All persons and/or entities who or that were party to a Consignment Agreement with Pepperidge Farm in the State of California at any time between August 7, 2010 and the date of the Order Granting Preliminary Approval." There were originally 376 California Subclass members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | Date | October 10, 2019 |
|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | |

- The "Illinois Subclass," comprised of "All persons and/or entities who or that were party to a Consignment Agreement with Pepperidge Farm in the State of Illinois at any time between February 12, 2006 and the date of the Order Granting Preliminary Approval." There were originally 264 Illinois Subclass Members.
- The "Massachusetts Subclass," comprised of "All persons and/or entities who or that were party to a Consignment Agreement with Pepperidge Farm in the State of Massachusetts at any time between October 2, 2010 and the date of the Order Granting Preliminary Approval." There were originally 247 Massachusetts Subclass Members.

The original Settlement identified 887 Class Members. Dkt. 178-1 at 12; Dkt. 178-3 at 29. As amended, 38 additional Class Members have been added, which increases the number to 925, but the subclasses of which the new Class Members would be members are not stated. Dkt. 190 at 3.

**B.    Benefits to the Settlement Class Members**

1.    Monetary Relief

The Settlement provides for a Maximum Settlement Amount ("MSA") of $22,760,001.12, which Defendant will pay to resolve all pending claims. Dkt. 178-1 at 13; Dkt. 190-1, Ex. C ¶ 1(l). The Settlement provides that certain costs -- including attorney's fees and costs, incentive awards to the Named Plaintiffs, administration expenses, a PAGA payment, and monies retained by Defendant as a result of any opt-outs -- will be deducted from the MSA. Dkt. 178-1 at 13; Dkt. 190-1, Ex. C ¶ 2. The remaining Net Settlement Amount ("NSA") will be distributed to the Class Members who do not opt out of the Settlement. Dkt. 178-1 at 13; Dkt. 190-1, Ex. C ¶ 1(n).

The amounts available to the respective Subclasses have been weighted based on applicable state law causes of action, available remedies, strength of claims, and the procedural status of each of the actions. Dkt. 178-1 at 13. The settlement amount payable to each Class Member has been calculated based on the Subclass of which that person is a member and the time that person worked within the relevant time period. *Id.* The respective distributions are as follows:

- The California Subclass is allocated $12,520,362.04 of the MSA.[1] Each eligible Distributor is entitled to $5984.88 per year worked between August 7, 2010 and the date of Preliminary Approval, subject to deductions.
- The Illinois Subclass is allocated $3,971,993.02 of the MSA.[2] Each eligible Distributor is entitled to $1284.35 per year worked between February 12, 2006 and February 11,

---

[1] As amended, this distribution will increase to approximately $12.55 million. Dkt. 190-1, Ex. B at 15.
[2] As amended, this distribution will increase to approximately $4.10 million. *Id.* at 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | | Date | October 10, 2019 |
|---|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | | |

2013, and a maximum of $3853.05 per year worked between February 12, 2013 and the present, subject to deductions.
- The Massachusetts Subclass is allocated $6,007,644.95 of the MSA.[3] Each eligible Distributor is entitled to $4195.28 per year worked between October 2, 2010 and the present, subject to deductions.

Dkt. 178-1 at 13-14; Dkt. 178-3 at 29.

The initial terms of the Settlement provided that 50% of the allocation attributable to Class Members who opt out of their respective Subclasses would be reallocated, pro-rata, to those Class Members who do not opt out. The other 50% would have reverted to the Defendant. Dkt. 178-1 at 15; Dkt. 178-3, Ex. 1 ¶ 2(b)(iv). In the amended Settlement, in light of the additional $520,000 required to compensate the 38 new Class Members, Defendant has agreed to forgo any retention. Instead, all of the amount attributable to the claims of those Class Members who opt out will be used to fund the additional liability. Dkt. 190 at 4; Dkt. 190-1, Ex. A at 5-6. To the extent that this does not fully fund the payment obligations to the Class Members who do not opt out, Defendant will contribute 50% of the shortfall, and 50% will be paid from the amount of fees awarded to Plaintiffs' counsel. Dkt. 190 at 4; Dkt. 190-1, Ex. A at 5-6.

      2.    <u>Incentive Awards</u>

The Settlement permits the payment of up to $25,000 to each Named Plaintiff, subject to the approval of such an amount by the Court. Dkt. 190-1, Ex. C ¶ 2(b)(ii). Because there are seven Named Plaintiffs, their maximum Incentive Awards would total $175,000. *See id.* ¶ 1(m).

      3.    <u>PAGA Payment</u>

The Settlement resolves the PAGA claim in the Alfred Action. The California Labor and Workforce Development Agency ("LWDA") had originally been allocated $100,000 with respect to "its 75% share of civil penalties," while "Aggrieved Class Members within the PAGA limitations period shall receive a pro rata share of $33,000," for a total of $133,000. Dkt. 178-1 at 15; Dkt. 178-2 ¶¶ 26-27; Dkt. 178-3, Ex. 1 ¶ 2(b)(iii). As amended, $190,000 is allocated to the LWDA, which would lead to a total PAGA payment of $253,333.33. Dkt. 190-1, Ex. A at 5.[4]

      4.    <u>Programmatic Relief</u>

---

[3] As amended, this distribution will increase to approximately $6.08 million. *Id.* at 15.

[4] The parties have made this amendment in response to the Order of June 17, 2019. *See* Dkt. 179 at 1 ("The Court directs that the PAGA allocation be increased from $133,000 to $190,000."). The June 17 Order was premised on the assumption that the LWDA would receive $142,500 of this amount. This Order assumes that amount will be paid upon a final approval. Therefore, the Settlement and Notice shall be amended, as necessary, to state this term. *See also* Section IV.D *infra*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | | Date | October 10, 2019 |
|----------|--------------------------|--|------|------------------|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | | |

Class Members who remain Distributors, do not opt out of the Settlement, and endorse and deposit the Settlement payments will receive a Revised Consignment Agreement. Dkt. 190-1, Ex. C ¶ 8. The Revised Consignment Agreement provides additional rights and "substantially decreases [Defendant]'s control over Current Distributors." *Id.* at 15-17.

        5.    <u>Attorney's Fees and Costs</u>

The Settlement permits Class Counsel to apply for an award of attorney's fees of up to $5,625,000, which is 24.7% of the MSA. Dkt. 190-1, Ex. A at 5; Dkt. 190-1, Ex. C ¶ 2(b)(i).

        6.    <u>Notice Plan</u>

Within 10 days of the entry of an order granting preliminary approval, Defendant will provide the Claims Administrator with a list of all Class Members. Dkt. 190-1, Ex. C ¶ 7. The list will identify each Class Member, along with his or her last known address, telephone number, and the dates he or she was party to a Consignment Agreement. *Id.* Within 30 days of receipt of this information from Defendant, the Claims Administrator will mail to each Class Member the Class Notice and, for Current Distributors, a Revised Consignment Agreement. *Id.* ¶¶ 8, 15. The Settlement also sets forth the process for the Claims Administrator to update addresses and to post information about the Settlement online. *Id.* ¶ 8.

The Settlement sets a deadline of 45 days from the initial mailing of the Class Notice for Class Members to submit an opt-out request. *Id.* ¶ 9. Following this period, once there is a final approval, the Claims Administrator will calculate amounts due, issue payments, and handle unclaimed property and cy pres distributions. Dkt. 178-1 at 17; Dkt. 190-1, Ex. C ¶ 16.

        7.    <u>Release of Claims</u>

The Settlement provides that participating Class Members release the following claims:

> [A]ny and all wage and hour claims . . . that were asserted in the Actions or could have been asserted based on the facts alleged, including: statutory or common law claims under California, Illinois, Massachusetts, the law of any state in which any Qualified Class Member performed services pursuant to a Consignment Agreement with Pepperidge Farm, or any local law, that accrued or accrue prior to the date of the Order Granting Preliminary Approval, including claims under any legal theory for failure to pay minimum wage, failure to pay overtime compensation, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay wages or compensation or final wages or compensation, failure to reimburse or pay for business expenses, making illegal deductions from wages or compensation, failure to furnish accurate wage statements or other notices, failure to keep accurate records, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | Date | October 10, 2019 |
|----------|--------------------------|------|------------------|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | |

pay, employment benefits, out-of-pocket expenses, and/or penalties, claims under [ERISA] that are related or derivative of the[se] claims . . . other penalties; related tort and punitive, treble, and liquidated damages/claims; claims for interest and/or prejudgment interest; and/or violations of any other state or local statutory and common law.

Dkt. 190-1, Ex. C ¶ 13.

Additionally, Class Members who negotiate a Settlement Check:

[S]hall (a) fully release and discharge [Defendant] from any and all FLSA claims through the date of the Order Granting Final Approval, including claims under any legal theory for failure to pay minimum wage, failure to pay overtime compensation, and/or failure to pay for all hours worked; and (b) if a Current Distributor, be deemed to have executed and agreed to be bound by the terms of the Revised Consignment Agreement.

*Id.*

Named Plaintiffs are subject to the following additional release as to:

[A]ll claims, actions, causes of action, lawsuits, debts, dues, sums or money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, claims, charges, complaints and demands whatsoever . . . against the Settling Defendants, that the Named Plaintiffs [and their heirs and assigns] may now have or hereafter later determine that they have or had . . . relating to their contractual and/or alleged employment relationship with Pepperidge Farm . . . .

*Id.* ¶ 12.

        8.    Blow-Up Clause

Should 10% or more of the Settlement Class Members in any of the three Subclasses opt out, Defendant has the right to cancel the Settlement. Dkt. 178-1 at 17-18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | | Date | October 10, 2019 |
|---|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | | |

IV. **Analysis**

A. **Class Certification**

1. Legal Standard

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks omitted). Under Fed. R. Civ. P. 23, a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). That "rigorous analysis" will "frequently" include "some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351. "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160.

The first step in establishing the propriety of class certification requires that a putative class representative show that the proposed class meets each of the prerequisites of Rule 23(a). *Dukes*, 564 U.S. at 350; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). These are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4). Further, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (emphasis in original).

If these four prerequisites are met, the analysis proceeds to a consideration of whether the proposed class meets an applicable requirement of Rule 23(b). *See, e.g.*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Here, Plaintiffs rely on Rule 23(b)(3), which provides, in relevant part, that a class proceeding "may be maintained . . . if . . . questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

2. Application

a) Requirements of Fed. R. Civ. P. 23(a) Have Been Met

(1) Numerosity

Fed. R. Civ. P. 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable." "Impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | Date | October 10, 2019 |
|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | |

329 F.2d 909, 913-14 (9th Cir. 1964) (internal quotation marks omitted). Although there is no specific numeric requirement, courts generally have found that a class of at least 40 members is sufficient. *See Rannis v. Recchia*, 380 Fed. App'x. 646, 651 (9th Cir. 2010); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

There are a total of 925 Class Members in the three Subclasses. The minimum size of each subclass ranges from 247 to 376. Dkt. 178-3 at 29; *see also* Dkt. 190 at 3. Therefore, the numerosity requirement is met.

(2)     Commonality

Fed. R. Civ. P. 23(a)(2) provides that a class may be certified only if "there are questions of law or fact common to the class." Commonality requires a showing that the "class members have suffered the same injury" and "does not mean merely that they have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 350 (internal quotation marks omitted). The class claims must "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In measuring commonality, "even a single common question will do." *Dukes*, 564 U.S. at 359 (internal quotation marks omitted).

In general, the commonality element is satisfied where the action challenges "a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005). Here, Plaintiffs argue that "the overarching common question for each subclass is whether Class Members were misclassified as independent contractors" by Defendant, or whether they were instead employees. Dkt. 178-1 at 27. "[W]hether putative class members were misclassified under [state] law as independent contractors . . . . is a common question that is capable of a common resolution." *Bowerman v. Field Asset Servs., Inc.*, No. 13-CV-00057-WHO, 2015 WL 1321883, at *14 (N.D. Cal. Mar. 24, 2015).

Although there may be some differences among the terms in the agreements entered by members of the Subclasses, each Class Member was a party to a Consignment Agreement issued by PF, and each allegedly sustained common and similar injuries. Any variations in their injuries are not material for purposes of considering the standards that apply to the Motion. Therefore, the commonality requirement is satisfied.

(3)     Typicality

The typicality requirement is met if the "representative claims are 'typical,'" i.e., "if they are reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | Date | October 10, 2019 |
|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | |

Representative claims "need not be substantially identical." *Id*. The test of typicality is whether "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508.

The commonality and typicality requirements of Rule 23(a) tend to merge. *See Dukes*, 564 U.S. at 349 n.5. Accordingly, whether the Class is sufficiently typical presents issues like those discussed above. Plaintiffs further contend that claims advanced by the Named Plaintiffs arise out of their having been subject to "the same misclassification policies and practices" as the other Class Members. Dkt. 178-1 at 27; Dkt. 178-2 ¶ 27. Thus, all Class Members, including the Named Plaintiffs, are or were "Distributors who were classified as independent contractors under Defendant's Consignment Agreement." Dkt. 132 ¶ 41(c).

Because the claims of the Named Plaintiffs are based on policies and practices that applied to other Class Members in their respective Subclasses, their claims are representative. Therefore, the typicality requirement is satisfied.

(4)     Adequacy of Representation

Fed. R. Civ. P. 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

"[E]ach settlement subclass contains both a Current Distributor and a Former Distributor as Named Plaintiffs." Dkt. 178-1 at 28. Thus, "the Named Plaintiffs have the same claims to expense reimbursement, unpaid overtime and related penalties as do the other members of the settlement subclasses. They have suffered the same alleged injury and are entitled to the same remedy." *Id*. Plaintiffs are unaware of any conflicts or antagonism between the Named Plaintiffs and other Class Members.[5] *Id*. Moreover, the risk of any conflict among counsel has been addressed through the separate representation for Current and Former Distributors during the settlement process. Further, Plaintiffs' counsel represent that they are unaware of any conflicts between Named Plaintiffs and other Class Members. *Id*. Plaintiffs' counsel also declare that they have vigorously prosecuted this action, as they have done in several similar employment class actions. *See, e.g.*, Dkt. 178-2 ¶ 3 (providing examples).

---

[5] That certain interested parties plan to file objections is discussed in note 9 *infra*. *See also* Dkts. 182, 191, 192.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | Date | October 10, 2019 |
|----------|--------------------------|------|------------------|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | |

As noted above, the amended Settlement provides for an MSA of $22,760,001.12. Excluding the 38 Class Members for whom a Subclass has not been specified, as well as the portion of the MSA allocated to them, Subclass members would receive (before deductions), pro rata, the following amounts: $33,298.84 for those in the California Subclass; $15,045.43 for those in the Illinois Subclass; and $24,322.45 for those in the Massachusetts Subclass. Dkt. 178-3 at 29; *see also* Dkt. 190 at 3.

Certain aspects of the monetary relief provided for by the Settlement raise concerns. These are discussed in the later analysis as to fairness. However, the proposed fee and incentive awards are not so disproportionate to the relief provided to the Class Members to warrant a finding that Plaintiffs and counsel are not adequate representatives of the Class. *Cf. Staton v. Boeing Co.*, 327 F.3d 938, 975-78 (9th Cir. 2003) (rejecting incentive awards to 29 class representatives of up to $50,000 each). Instead, these issues are more appropriately addressed with respect to the fairness of the Settlement. *See id.* at 958 ("Although we later question whether the settlement agreement . . . was the result of disinterested representation, that question is better dealt with as part of the substantive review of the settlement than under the Rule 23[] inquiry. Otherwise, the preliminary class certification issue can subsume the substantive review of the class action settlement.").

For the foregoing reasons, the adequacy of representation requirement for purposes of conditional class certification has been met.

      3.    <u>Requirements of Fed. R. Civ. P. 23(b)(3)</u>

          a)    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance analysis assumes that the Rule 23(a)(2) commonality requirement has already been established. See *Hanlon*, 150 F.3d at 1022 ("[T]he presence of commonality alone is not sufficient to fulfill Rule 23(b)(3) . . . [which instead] focuses on the relationship between the common and individual issues."). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted). Where the issues of a case "require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001).

Common questions are presented here as to whether, under each of the Subclasses' respective state laws, Distributors should have been classified as employees or as independent contractors. Dkt. 178-1 at 29. "That question, Plaintiffs maintain, can be answered in a single

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | Date | October 10, 2019 |
|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | |

stroke for all subclass members." *Id.* All three states utilize the "ABC" test for determining employment status. *Id.* at 29-30 (citing *Dynamex Operations W. v. Super. Court,* 4 Cal. 5th 903, 917 (2018); *De Giovanni v. Jani-King Int'l, Inc.,* 262 F.R.D. 71, 84-85 (D. Mass. 2009); *Costello v. BeavEx, Inc.,* 810 F.3d 1045, 1059 (7th Cir. 2016)). Independent contractor status requires a determination:

> (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (B) that the worker performs work that is outside the usual course of the hiring entity's business; *and* (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed.

*Dynamex,* 4 Cal. 5th at 957.

Resolving one or more elements of this test with respect to the Distributors' working conditions under the Consignment Agreements, will resolve the claims of all Class Members. Thus, the questions necessary to evaluate employment status pursuant to those Consignment Agreements predominate over any individual issues that have been presented. Although individual awards will be calculated separately based on the unique facts as to each Class Member, including the number of years each Class Member was subject to a Consignment Agreement, "damage calculations alone cannot defeat certification," even if individual issues predominate therein. *Levya v. Medline Indus. Inc.,* 716 F.3d 510, 513 (9th Cir. 2013); *see also Jimenez v. Allstate Ins. Co.,* 765 F.3d 1161, 1167-68 (9th Cir. 2014). "[A]s long as an efficient mechanism exists to calculate damages on a class-wide basis, the existence of potential individualized damages will not defeat the predominance requirement." *Aichele v. City of L.A.,* 314 F.R.D. 478, 496 (C.D. Cal. 2013). Such a mechanism has been proposed here. See Settlement, Dkt. 178-3, Ex. 1 ¶ 2(b)(iv).

For the foregoing reasons, the predominance requirement has been met.

b)      Superiority

The final requirement for class certification under Fed. R. Civ. P. 23(b)(3) is a showing that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Matters pertinent to this issue include "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

Here, the class action process is superior to individual actions. There is no showing that the individual members of the Class would have brought separate actions. Defendant's "uniform

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | Date | October 10, 2019 |
|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | |

classification policies, practices and procedures" applied widely to the nearly 900 individual Class Members, yet any individual could claim only a relatively modest amount. Dkt. 178-1 at 30; *see also Amchem Prods.*, 521 U.S. at 617 (internal quotation marks and citation omitted) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action . . . . A class action solves this problem . . . ."). Under the Settlement, the calculation of damages will be straightforward; it will be based on years worked in the respective states. Consequently, judicial economy will be served by class certification. The alternative -- hundreds of individual actions -- would be neither practical nor efficient. Further, there will be no difficulties in managing the class action because, by requesting approval of a settlement, the parties are proposing "that there be no trial." *Amchem Prods.*, 521 U.S. at 620.

Because the factors listed in Rule 23(b)(3) support certification of a class as the superior means to resolve the matters at issue, this requirement has been met.

*          *          *

For the foregoing reasons, the Motion to certify the California, Massachusetts and Illinois Subclasses, for purposes of settlement only, is **GRANTED**.

      **B.**    **Preliminary Approval of the Settlement**

            1.    <u>Legal Standards</u>

Fed. R. Civ. P. 23(e) requires a two-step process in considering whether to approve the settlement of a class action. First, in the preliminary approval process, a court must make a preliminary determination whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (quoting *Staton*, 327 F.3d at 952). In the second step, which occurs after preliminary approval, notification to class members, and the compilation of information as to any objections by class members, a court determines whether final approval of the settlement should be granted by applying several criteria.

At the preliminary stage, "the settlement need only be potentially fair." *Id.* This is due, in part, to the policy preference for settlement, particularly in the context of complex class action litigation. *See Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . .").

As the Ninth Circuit has explained:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | Date | October 10, 2019 |
|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | |

> necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Id.*

In evaluating this issue, a court must consider "the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012). A court is to consider and evaluate several factors as part of its assessment of a proposed settlement. The following non-exclusive factors are among those that may be considered during both the preliminary and final approval processes:

> (1) the strength of the plaintiff's case;
> (2) the risk, expense, complexity, and likely duration of further litigation;
> (3) the amount offered in settlement;
> (4) the extent of discovery completed and the stage of the proceedings;
> (5) the experience and views of counsel;
> (6) any evidence of collusion between the parties; and
> (7) the reaction of the class members to the proposed settlement.

*See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458-60 (9th Cir. 2000).

Each factor does not necessarily apply to every class action settlement, and other factors may be considered. For example, courts often consider whether the settlement is the product of arms-length negotiations. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). As noted, in determining whether preliminary approval is warranted, a court is to decide whether the proposed settlement has the potential to be deemed fair, reasonable and adequate in the final approval process.

As recently amended, Fed. R. Civ. P. 23(e) provides further direction as to the considerations that apply in evaluating whether a proposed settlement is fair, reasonable and adequate. Thus, a court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | Date | October 10, 2019 |
|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | |

     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
     (iv) any agreement required to be identified under Rule 23(e)(3);[6] and
  (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The factors set forth in the revised Rule 23(e) are very similar to the considerations historically used by federal courts to evaluate class action settlements. As the comments of the Advisory Committee explain, "[t]he goal of [the] amendment [was] not to displace any factor" that would have been relevant prior to the amendment, but rather to address inconsistent "vocabulary" that had arisen among the circuits and "to focus the court and the lawyers on the core concerns" of the fairness inquiry. Advisory Committee Comments to 2018 Amendments to Rule 23.

    2.    <u>Application</u>

         a)    Whether the Class Representatives and Class Counsel Have Adequately Represented the Class

For the reasons stated above with respect to certification of the three Subclasses, the Named Plaintiffs and Class Counsel have adequately represented the Subclasses and are well-suited to do so after preliminary approval.

The progress of this action since the time of filing provides support for the adequacy of representation. This matter has been actively litigated for more than five years,[7] and there has been extensive discovery as well as significant motions practice. Dkt. 178-1 at 9-11. "The extent of the discovery conducted to date and the stage of the litigation are both indicators of [Class] Counsel's familiarity with the case and of Plaintiffs having enough information to make informed decisions." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.").

In the Abbott and Alfred Actions, the parties have exchanged discovery, including the production of documents -- "hundreds of thousands of pages of documents" in the Alfred Action, for example -- and have taken depositions. Dkt. 178-1 at 10. Motions practice included: the briefing and appeal of a motion for class certification in the Alfred Action (Dkts. 54, 61, 72, 112, 113,

---

[6] Fed. R. Civ. P. 23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."
[7] The Alfred Action was filed on August 7, 2014, but the Abbott Action preceded it, on October 2, 2013. Dkt. 178-1 at 9-10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | Date | October 10, 2019 |
|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | |

146, 147); the answering and amending of the complaint in the Abbott Action (No. 19-1998, Dkts. 63, 64); and the filing of a motion for summary judgment in the Mulhern Action (No. 19-1660, Dkts. 77, 81). Accordingly, the parties have sufficient information to make informed decisions about this action and their settlement positions.

For the foregoing reasons, this factor weighs in favor of preliminary approval of the Settlement.

        b)      Whether the Proposal Was Negotiated at Arm's Length

Courts in the Ninth Circuit "ha[ve] long deferred to the private consensual decision of the parties." *Rodriguez*, 563 F.3d at 965. However, courts will intercede to determine that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.* The Ninth Circuit has identified three factors that may raise concerns of collusion: (1) "when counsel receive[s] a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation marks omitted).

No evidence has been presented that there was any fraud, overreaching or collusion by the parties. They have engaged in several years of litigation, including extensive motions practice. They also engaged in active settlement negotiations that included a full-day mediation session with Mark Rudy, an experienced private neutral. Dkt. 172 at 4. The Settlement ensures that the bulk of the MSA will be allocated toward payment of Class members. Although the requested attorney's fees equal to 25% of the MSA are substantial, and will be discussed below, they are not so disproportionate to the total recovery as to indicate collusion. Further, none of the MSA will revert to Defendant unless certain Class Members opt out of the Settlement, unless there are surplus funds allocated for Notice and Claims Administration. Dkt. 178-3, Ex. 1 ¶¶ 2(b)(iv), 7; Dkt. 190-1, Ex. A at 5-6. Any reduction to the award of attorney's fees and costs, or to Named Plaintiff incentives, that is lower than that requested is not grounds to terminate the settlement, but instead would be distributed to Class Members pro rata as part of the NSA. *Id.* ¶ 2(b)(v).

For the foregoing reasons, this factor weighs in favor of preliminary approval of the Settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | Date | October 10, 2019 |
|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | |

c)      Whether the Relief Provided for the Class is Adequate

As noted, the MSA is $22,760,001.12, from which the following deductions will be made that will result in a NSA payable to Class Members of $16,797,501.12:

| | Amount | Percent of MSA |
|---|---|---|
| **Maximum Settlement Amount ("MSA")** | **$22,760,001.12** | **100%** |
| Attorneys' Fees | ($5,625,000) | 24.7% |
| Litigation Costs | (TBD) | (TBD) |
| Enhancement Awards (7) | ($175,000) | 0.77% |
| Settlement Administration Costs | ($20,000) | 0.08% |
| PAGA Payment to the LWDA (75% of $190,000) | ($142,500) | 0.63% |
| **Net Settlement Amount ("NSA")[8]** | **$16,797,501.12** | **73.80%** |

Current Distributors who participate in the Settlement are also entitled to programmatic relief in the form of a revised consignment agreement. Dkt. 178-1 at 15.

(1)      Strength of Plaintiffs' Claims, and the Costs, Risks and Delay of Trial and Appeal

Plaintiffs have advanced theories of liability based on Defendant's alleged misclassification of Distributors as independent contractors. Dkt. 178-1 at 20. Plaintiffs have sought corresponding compensation under the laws of California, Illinois and Massachusetts. *See id.* Defendant is potentially liable for reimbursement of business expenses and unlawful deductions, overtime, rest break and minimum wage violations, statutory penalties and interest. Dkt. 178-2 at 10-11. In the Abbott Action, Plaintiffs have also considered an alternative damages calculation that would more than double Defendant's potential exposure in that action. *See id.* at 11 n.4. Therefore, total potential liability thus ranges from approximately $98,000,000 to $135,313,500. *Id.* at 9.

Defendant has vigorously contested liability and class certification. This raised significant issues as to whether Plaintiffs will ultimately prevail as to class certification, liability or damages. *Id.* Accordingly, the parties contend the proposed Settlement, which would provide Plaintiffs with about 20% of the maximum potential damages, represents a "fair and reasonable sum in light of the risks of further litigation." Dkt. 178-1 at 21.

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628. "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. "Estimates of a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the

---

[8] Inclusive of $47,500 in respect of the PAGA Payment, payable within the California Subclass only. *See* Dkt. 178-1 at 23; Dkt. 179.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | Date | October 10, 2019 |
|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | |

case, and the expected delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc. -- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014); *see also Rodriguez*, 563 F.3d at 965 ("In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value.").

Plaintiffs have provided a sufficient basis to find that the MSA represents an adequate consideration. Although the Settlement provides Plaintiffs with only a portion of the potential damages that could be awarded, there is no assurance of such a recovery if this matter proceeded to trial. There are significant questions presented as to both certification, liability and damages. Thus, a jury could decide that Distributors were properly classified as independent contractors. In the Mulhern Action, Defendant's Motion for Summary Judgment on this ground is pending. Dkt. 178-1 at 20.

Furthermore, the respective actions have been ongoing since 2013, 2014 and 2016, and each has been stayed for a substantial period. Dkt. 178-1 at 9-11. Appellate issues are pending as to the class certification order in the Alfred Action, while no determination as to class certification has been made in the Abbott and Mulhern Actions. Dkt. 178-1 at 20-21; *see also* Dkts. 146, 147. Moreover, because the outcome of trial and appellate proceedings is uncertain, there is a benefit to the certainty of applying the terms of the Settlement. Dkt. 178-1 at 21.

Viewed collectively, these considerations support the conclusion that the overall amount offered in the Settlement is reasonable.

(2)    The Effectiveness of Any Proposed Method of Distributing Relief to the Class

Class Counsel represents that the parties have engaged Rust Consulting, "an experienced claims administrator," to oversee the process of distributing relief. Dkt. 178-1 at 25. Defendant has agreed to provide the Settlement Administrator with contact information for each Class Member and information about the periods each was a party to a Consignment Agreement. Dkt. 178-3, Ex. 1 ¶ 7. This is the information necessary for the Settlement Administrator to allocate awards according to the number of years worked within each Subclass. *See id.* ¶¶ 7, 8, 16. Settlement payments would be made promptly upon final approval of a settlement; i.e., within 21 days of the effective date of the judgment. *Id.* ¶ 16.

(3)    The Terms of Any Proposed Award of Attorney's Fees

The reasonableness of the proposed attorney's fees and litigation costs is addressed separately below. The terms of the Settlement that any fees and costs not awarded will instead be included in the NSA supports approval of the Settlement, subject to this separate assessment. *See* Dkt.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | Date | October 10, 2019 |
|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | |

178-3, Ex. 1 ¶ 2(b)(v) ("[A]ny amount disallowed by the Court shall be added to the Net Settlement Amount and paid, pro rata, to Qualified Class Members.").

     (4)  Any Other Agreements Made in Connection with the Proposed Settlement

Current Distributors who do not opt out of the Settlement will become bound by a revised consignment agreement upon the endorsement and deposit of their awards. Dkt. 178-1 at 15. The revised consignment agreement "substantially decreases [Defendant]'s control over Current Distributors" and provides, *inter alia*, that Distributors may reject products and sales assistance, reduce their record-keeping requirements, retain authority over hiring and sales negotiations, gain rights regarding the sale of distribution territories, and engage in dispute resolution. *Id.* at 15-16. At this stage, there is no indication that such terms affect the fairness of the overall settlement.[9]

       *   *   *

For the foregoing reasons, the relief provided to the Class is adequate.

     d)  Whether the Proposal Treats Class Members Equitably Relative to Each Other

The Settlement provides that the NSA will be allocated among the Class Members on the basis of "the time each Class Member worked within their respective class liability period," and "the state law subclass to which the Class Member belongs." Dkt. 178-1 at 13. For members of the California and Massachusetts Subclasses, the payments will be "pro rata based on the number of years . . . worked" pursuant to the respective consignment agreements, through the date of preliminary approval. Dkt. 178-3 at 29. For members of the Illinois Subclass, "years worked under consignment agreements between February 2013 and preliminary approval will be weighted at 3x the value of years worked prior to February 2013." *Id.* The pre-amendment

---

[9] On July 10, 2019, interested parties Tony Sherman, Tom Dudal and Art Balser filed Notice of Intent to File Objections. Dkt. 182. Each is a member of one of the proposed Subclasses, and each intends to object to the revised consignment agreement subsequent to the resolution of this Motion, on the grounds that the changes "detrimentally alter current distributors' relationships with PF by granting PF even more leverage and undue control over the distributors, which in turn will devalue their businesses." *Id.* at 2. Plaintiffs have a filed a response, noting that such an objection is premature in advance of notice of what the terms of the final agreement, pursuant to the Settlement, will be. Dkt. 192 at 3. "[It] is premature under Rule 24 for objectors to intervene at the preliminary approval stage, as all objections to the settlement agreement are contemplated to be lodged after preliminary approval and before final approval." *Chi v. Univ. of S. Cal.*, No. 2-18-CV-04258-SVW, 2019 WL 3064457, at *6 (C.D. Cal. Apr. 18, 2019). The merits of the interested parties' objections will be considered in conjunction with the motion for final approval, in the context of the evidence as to the reactions from other members of each Subclass.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | | Date | October 10, 2019 |
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | | |

distribution, based on the original MSA and before deductions for attorney's fees, costs, Named Plaintiffs and the PAGA Payment, is summarized in the following table:

| State | MSA Allocation | Average Per Class Member | Amount Per Year Per Distributor | Total Distributor Years | Class Members | Multiplier |
|---|---|---|---|---|---|---|
| California | $12,520,362.04 | $33,298.84 | $5984.88 | 2092 | 376 | 2.5 |
| Massachusetts | $6,007,644.95 | $24,322.45 | $4195.28 | 1432 | 247 | 1.75 |
| Illinois | $3,971,993.02 | $15,045.43 | $2246.60 | 1768 | 264 | 1 |
| **TOTAL**[10] | **$ 22,500,000.01** | **$25,366.40** | **$3794.91** | **5929** | **887** | **-** |

*Id.*

This system is meant to ensure that the NSA is distributed in a way that fairly corresponds to each Class Member's proportionate share, weighted to reflect "differences as to available state law causes of action, available remedies, relative strength of claims, and the procedural posture of each case." Dkt. 178-1 at 13. Thus, the California Subclass receives the largest proportion of the NSA "because there are more members of the California Subclass than the other subclasses, as a certified class *Alfred* is the farthest along procedurally of the three cases, Plaintiffs contend that the case benefits from favorable law . . . and state law allows for a broad range of relief." *Id.* at 13-14. By contrast, the Massachusetts Subclass has "relatively strong" claims but "a somewhat lower potential recovery than the California Subclass," and the Illinois Subclass "faced defenses that . . . are unique . . . and . . . has lower potential aggregate recovery." *Id.* at 14-15. Some Illinois claims are also subject to a shorter statute of limitations that would place certain Distributors "at a substantial risk of recovering nothing in this litigation." *Id.* at 14 n.3.

Although objections to the Settlement could raise concerns of equitable distribution, at present there is no showing that the weighting by Subclass is unfair and not supported by the underlying arm's-length negotiation process. Accordingly, this factor weighs in favor of preliminary approval; provided, however, that the share of the settlement funds available to the Named Plaintiffs as incentive awards is addressed below.

### C.    PAGA Payment

The Alfred Action included PAGA claims based upon Defendant's alleged violation of Cal. Lab. Code § 226, which requires the distribution of wage statements, among other alleged Labor Code violations. *See* Dkt. 178-1 at 23; Dkt. 132 at 29. The LWDA has explained that:

---

[10] The increased MSA and increased Class Member totals are not reflected here, due to uncertainty as to which Subclasses the 38 new Class Members will be allocated. *See* Dkt. 190 at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | | Date | October 10, 2019 |
|----------|-------------------------|---|------|------------------|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | | |

> [W]hen a PAGA claim is settled, the relief provided for under the PAGA [must] be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being 'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA.

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing comments submitted by LWDA).

At the hearing on this Motion, the parties were directed to increase the PAGA payment to $190,000, allocated between the LWDA (75%, or $142,500) and the NSA distributed to the California Subclass (25%, or $47,500). *See* Dkt. 178-3, Ex. 1 ¶ 2(b)(iii); Dkt. 179.[11] As amended, the parties allocated $190,000 the LWDA. Dkt. 190-1, Ex. C ¶ 2(b)(iii). The parties are directed to amend the Settlement to reflect the distribution stated above. Although it is modest in light of the overall amount of the MSA, it adequately values the risk presented to Defendants regarding continued litigation of this claim.

The allocation of $190,000 to the PAGA claims represents 14.6% of the estimated amount of the PAGA penalties that could potentially be "assessed on behalf of each California distributor for every pay period in the PAGA liability period" pursuant to Cal. Lab. Code § 226. *See* Dkt. 178-1 at 23. This is appropriate in light of the allocation of the balance of the settlement funds, as to which the NSA corresponds to 20% of the estimate of likely maximum liability. Such a modest disparity is reasonable in light of the discretion to reduce PAGA penalties in certain circumstances, as well as the possibility that Plaintiffs might be unable to prove all elements of the PAGA claims.

There is also a significant recovery for the Class Members, and greater PAGA penalties would require a reduction in those amounts. *See Viceral v. Mistras Group, Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016) ("[S]ettlement of the PAGA claim may be substantially reduced below its standalone settlement value without sacrificing its statutory purposes because the non-PAGA settlement is relatively substantial.").

For these reasons, the PAGA allocation strikes an appropriate balance between the leverage the plaintiffs in the Alfred Action gained by pursuing a PAGA claim, and the amount that is designated by this Order.

### D.    Named Plaintiff Incentives

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. To determine the reasonableness of incentive awards, the following factors may be considered:

---

[11] The original settlement terms provided for a PAGA award of $133,000. Dkt. 178-3, Ex. 1 ¶ 2(b)(iii).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | Date | October 10, 2019 |
|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | |

1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiffs seek preliminary approval of Incentive Awards of $25,000 to each Named Plaintiff, i.e., a total not to exceed $175,000 because there are seven of them. Dkt. 178-3, Ex. 1 ¶ 2(b)(iii).

Counsel for the Plaintiffs have declared that the Named Plaintiffs "played a very active role in the prosecution of the case," and "each spent up to many hundreds of hours over five years actively assisting Class Counsel" through attendance at meetings and teleconferences, travel for mediation, participation in depositions and the production of documents. Dkt. 178-1 at 24. Each also "undertook a substantial risk." *Id.* Because Defendant has argued that this litigation reduced the value of distribution territories, certain Named Plaintiffs have been exposed to the risk that those to whom they sold their routes may make claims against them, which could lead to litigation. *Id.* Further, the Named Plaintiffs in the Alfred Action have agreed not to seek the 25% of the PAGA award -- i.e., $47,500 -- to which they may be entitled, but to distribute it to the California Subclass. *Id.* at 24-25 & n.5.

As stated above, $25,366.40 is the average allocation per Class Member under the Settlement, without regard to Subclass and before any of the agreed upon deductions *See also* Dkt. 178-3 at 29. Assuming that the NSA is 73.8% of the total, this average allocation would be $18,720. The incentive payments proposed represent approximately 134% of that figure. This premium is not per se unreasonable, but it is high. *See Rankin v. Am. Greetings, Inc.*, No. 2:10-CV-01831-GGH, 2011 WL 13239039, at *2 (E.D. Cal. July 6, 2011) (approving an incentive award equal to an amount "reasonably close to the average per class member amount to be received").

Determining the reasonableness of the proposed individual awards to each Named Plaintiff requires an assessment of the amount of time that each spent, as well as whether this limited the ability of the Named Plaintiff to perform other work. Accordingly, at the hearing on the Motion, Plaintiffs' counsel were directed to provide this information. Dkt. 179. In response, the following table was provided:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | | Date | October 10, 2019 |
|---|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | | |

| Plaintiff | Estimated Hours |
|---|---|
| Raymond Alfred | 375-400 |
| Marvin Barrish | 350-375 |
| Ashley Alves | 200-225 |
| Matthew Jones | 350-375 |
| Daniel Mulhern | 47.4 |
| Edmund Sayward, Sr. | 67 |
| John Provost | 100-125 |
| **Total** | **1489.4-1614.4** |

Dkt. 180 at 4.

If each Named Plaintiff were awarded $25,000, these hourly estimates would result in an hourly rate ranging from $62.50 for Alfred ($25,000 / 400 hours) to $527 for Mulhern ($25,000 / 47.4 hours). The contributions made by the Named Plaintiffs to the prosecution and settlement of this action are significant, but the comparative contributions of any one Named Plaintiff are unlikely to justify such significant disparities. Nor are hourly rates at the high end of this range per se reasonable. When the proposed total incentive award of $175,000 is divided by the estimated range of the total number of hours spent by all Named Plaintiffs, the result is an hourly rate between $117.50 and $108.40, i.e., $175,000/1489.4 = $117.50; $175,000/1614.4 = $108.40. If such hourly rates were applied to a 40-hour work week, they would result in annual compensation of approximately $225,000. Even if some adjustment is made for the risk that some of the Named Plaintiffs may face if they have sold their businesses, and the future values of those businesses that have not been sold, this is a very substantial amount. Moreover, it is layered on top of the additional amount that each will receive as a member of one of the Subclasses.

For these reasons, preliminary approval is granted as to a total incentive award pool of up to $150,000, with the award to any individual Named Plaintiff not to exceed $25,000. However, in connection with a motion for final approval of the Settlement, a de novo determination will be made as to the amount of each incentive award. Consistent with the terms of the Settlement, any portion of the $150,000 in potential incentive awards that is ultimately disallowed will be allocated to the NSA and distributed to the Class Members under the controlling formula. *See* Dkt. 178-3, Ex. 1 ¶ 2(b)(v).

      **E.**    **Attorney's Fees**

          1.    <u>Legal Standards</u>

Attorney's fees and costs "may be awarded in a certified class action where so authorized by law or the parties' agreement;" however, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | Date | October 10, 2019 |
|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | |

amount." *Bluetooth*, 654 F.3d at 941; *see also* Fed. R. Civ. P. 23(h). "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have [been] obtained." *Staton*, 327 F.3d at 964.

A district court must "assure itself that the fees awarded in the agreement [are] not unreasonably high, so as to ensure that the class members' interests [are] not compromised in favor of those of class counsel" or class representatives. *Id.* at 965. Among the factors that may be considered in assessing the reasonableness of a requested fee award are the following: (i) whether the results achieved were exceptional; (ii) risks of continued litigation; (iii) non-monetary benefits conferred by the litigation; (iv) customary fees for similar cases; (v) the contingent nature of the fee and financial burden imposed on counsel; and (vi) the reasonable expectations of counsel, based on the circumstances of the case and the range of fee awards based on common funds of comparable size. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

"In 'common fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method." *Hanlon*, 150 F.3d at 1029. "As its name suggests, under the percentage method, 'the court simply awards the attorneys a percentage of the fund . . . .' 'This circuit has established 25% of the common fund as a benchmark award for attorney fees.'" *Staton*, 327 F.3d at 968 (quoting *Hanlon*, 150 F.3d at 1029).

2.    Application

Under the Settlement, Class Counsel may apply for an award of attorney's fees in an amount up to approximately 24.7% of the MSA, i.e., $5,625,000. *See* Dkt. 178-3, Ex. 1 ¶ 2(b)(i); Dkt. 190-1, Ex. A at 5. Any award will be paid from the fund. If less than the maximum amount is awarded, the difference will not cause an increase in the MSA and will be allocated among Class Members. *See* Dkt. 178-3, Ex. 1 ¶ 2(b)(v) (if a lower amount is awarded, "the Settlement shall remain binding"). As noted above, the award may also be reduced to satisfy up to 50% of any shortfall resulting from the addition of the 38 new Class Members. Dkt. 190 at 4; Dkt. 190-1, Ex. A at 5-6. Plaintiffs have not yet submitted a motion for an award of attorney's fees, which will be part of the process associated with the final fairness hearing. *See* Dkt. 178-1 at 22. However, an initial assessment of the issue is appropriate in connection with the present Motion, because Class Members will be advised about it as part of the notification and right to object and/or opt out processes.

An award of 25% of the MSA is the "benchmark award" in this Circuit, *Hanlon*, 150 F.3d at 1029, and Class Counsel have requested an award that is less than that amount. Counsel have filed declarations stating that "[t]his provision is fair and reasonable, given the significant time and expense that Class Counsel have devoted to this case over the last [three to five] years and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | | Date | October 10, 2019 |
|---|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | | |

result that they have achieved for the Class." Dkt. 178-2 ¶ 25; Dkt. 178-5 ¶ 13; Dkt. 178-7 ¶ 15. Following the hearing on the Motion, counsel also filed declarations supporting a total lodestar amount of $5,215,676.25. That information is summarized in the following table:

| Firm | Location | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Rukin Hyland & Riggin (Dkt. 180-1 at 3-4) | Oakland, CA | 2408.85 | $200-$825 | $1,275,996.75 |
| Rudolph Friedmann (Dkt. 180-3 at 3-4) | Boston, MA | 2185.70 | $185-$700 | $1,189,012.00 |
| Shapiro Haber & Urmy (Dkt. 180-4 at 4) | Boston, MA | 3996.50 | $225-$925 | $2,412,413.00 |
| Freed Kanner London & Millen (Dkt. 180-7 at 4) | Bannockburn, IL | 482.40 | $195-$940 | $319,809.50 |
| Schonbrun Seplow Harris & Hoffman (Dkt. 180-1 at 5) | South Pasadena, CA | 21.7 | $850 | $18,445.00 |
| **Total** | | **9095.15** | **$185-$940** | **$5,215,676.25** |

The supporting declarations included representations that the hourly rates that have been used for each of the attorneys are "at or below the hourly rates ordinarily charged by legal professionals of comparable experience." Dkt. 180-3 at 4 (re Rudolph Friedmann); *see also* Dkt. 180-4 at 4 (re Shapiro Haber & Urmy); Dkt. 180-7 at 3 (re Freed Kanner London & Millen).

The maximum Settlement award of $5,625,000 represents a 1.08 performance multiplier over the lodestar, but it is slightly less than the 25% benchmark of the MSA. An award greater than the lodestar may be warranted. Counsel have substantial experience in similar litigation, represented the Class Members on a contingency basis, and advanced litigation costs. There was no assurance of a recovery and more than 9000 hours were invested. Settlement also provides a substantial benefit to Class Members, both with respect to immediate monetary relief and policy changes.

Preliminary approval is granted, but the final review of this issue is deferred. It will be made de novo in connection with the final approval process and based on an assessment of the corresponding motion; another lodestar analysis; the responses, if any, by Class Members; and a review of the work performed and results achieved in this action.

       **F.**    **Litigation Costs**

The Settlement also provides for an award to Class Counsel of their "actual litigation costs." Dkt. 178-3, Ex. 1 ¶ 2(b)(i). No request for costs has yet been made. Any such request in connection with the final approval process shall be supported by evidence as to the actual costs incurred and why those amounts were necessary and reasonable. However, preliminary approval is provided as to the reimbursement of reasonable and necessary costs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | | Date | October 10, 2019 |
|---|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | | |

**G.    Class Representatives and Class Counsel**

The Motion seeks the appointment of Ashley Alves, Raymond Alfred, and Marvin Barrish as representatives of the California Subclass; Matthew Jones and Daniel Mulhern as representatives of the Illinois Subclass; and John Provost and Edmund Sayward, Sr. as representatives of the Massachusetts Subclass. Dkt. 178-1 at 32.

Each of the Subclasses has at least one Current Distributor and one Former Distributor. *Id.* at 28. As stated above, these Named Plaintiffs can fairly and adequately represent the interests of their respective Subclasses Classes. Accordingly, they are approved as representatives.

The Motion also seeks designation of Rukin Hyland & Riggin LLP, Shapiro Haber & Urmy LLP, and Rudolph Friedmann LLP as Class Counsel for the California, Illinois, and Massachusetts Subclasses; Schonbrun Seplow Harris & Hoffman LLP as Class Counsel for the California Subclass; and Freed Kanner London & Millen as Class Counsel for the Illinois Subclass. *Id.* at 32. The proposed Class Counsel have declared that they have "extensive experience in class action litigation, including wage-and-hour claims of the type asserted here; have been appointed Class Counsel in other cases on numerous occasions; and have demonstrated that they have the ability and resources to vigorously pursue the claims asserted in this litigation." *Id.* at 28. For these reasons, and as discussed above in conjunction with the discussion of attorney's fees, there are sufficient grounds to merit the appointment as requested. Therefore, the firms are appointed as Class Counsel of their respective Subclasses.

**H.    Class Notice**

**1.    Legal Standards**

Rule 23(e) requires that a court "direct notice in a reasonable manner to all class members who would be bound by" a proposed class settlement. Fed. R. Civ. P. 23(e). Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

**2.    Application**

The proposed Notice, which is to be sent to all Class Members following the preliminary approval of the Settlement, was submitted with the Settlement. *See* Dkt. 178-3, Ex. B; Dkt. 190-1, Ex. B (as amended). The Notice provides Class Members with information about the litigation and the terms of the Settlement. Dkt. 190-1, Ex. B at 13-20. It explains that they will receive a pro rata award under the Settlement unless they choose to opt out, and it explains the method of calculating that award. *Id.* at 18. It also explains the process by which a Class Member may

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV14-07086 JAK (RZx) | | Date | October 10, 2019 |
|---|---|---|---|---|
| Title | Raymond Alfred, et al. v. Pepperidge Farm, Inc., et al. | | | |

opt out of or object to the Settlement, and it provides Class Members with the identities of and contact information for Class Counsel. *Id.* at 19-20.

This Notice is sufficient; provided, however, that it shall be amended to reflect the changes to the PAGA payment and to the incentive awards, as stated in this Order.

**V.     Conclusion**

For the foregoing reasons, the Motion is **GRANTED**, subject to the limitations and amendments discussed herein. The parties should provide notice of the Settlement, and the opportunity to object or opt out, to the Class, consistent with the terms of this Order and of the Settlement and Notice plan. The final fairness hearing is set for February 24, 2020, with the motion for final approval and any motion for attorney's fees and costs to be filed no later than January 21, 2020. The parties shall include with these submissions supplemental factual information pertaining to the Named Plaintiff incentive awards and to attorney's fees and costs, consistent with the terms of this Order.

**IT IS SO ORDERED.**

                                                    _____ :  _____

                              Initials of Preparer    jre
                                                    _____