1  PETER RUKIN (SBN 178336)
2  *prukin@rukinhyland.com*
3  VALERIE BRENDER (SBN 298224)
   *vbrender@rukinhyland.com*
4  RUKIN HYLAND & RIGGIN LLP
5  1939 Harrison St., Suite 290
   Oakland, California 94612
6  Telephone: (415) 421-1800
7  Facsimile: (415) 421-1700

8
   (Additional counsel listed below)
9

10            **UNITED STATES DISTRICT COURT**

11            **CENTRAL DISTRICT OF CALIFORNIA**

12

13  RAYMOND ALFRED, MARVIN          ) LEAD CASE NO.: LA CV14-07086-JAK
    BARRISH, and ASHLEY ALVES,      ) (SKx)
14  individually and on behalf of all others )
    similarly situated,             ) Consolidated with Case Nos.:
15                                  )   LA CV19-01660-JAK (SKx)
                                    )   LA CV19-01998-JAK (SKx)
16              Plaintiffs,         )
                                    )
17      vs.                         ) **MEMORANDUM OF POINTS AND**
18  PEPPERIDGE FARM, INC., a        ) **AUTHORITIES IN SUPPORT OF**
    Connecticut Corporation, and DOES 1- ) **PLAINTIFFS' MOTION FOR**
19  100, inclusive,                 ) **CORRECTIVE NOTICE**
                                    )
20              Defendant.          ) Hearing date: February 24, 2020
21                                  ) Time: 8:30 a.m.
                                    ) Courtroom: 10 B
22                                  ) Judge: Hon. John A. Kronstadt
23                                  )
                                    )
24                                  )
                                    )
25                                  )

26

27

28

WILMER J. HARRIS (SBN: 150407)
*wharris@sdshhlaw.com*
SCHONBRUN SEPLOW HARRIS &
HOFFMAN LLP
715 Fremont Avenue, Suite A
S. Pasadena, CA 91030
Telephone: (626) 441-4129
Facsimile: (626) 283-5770

THOMAS V. URMY, JR. (admitted pro hac vice)
*turmy@shulaw.com*
SHAPIRO HABER & URMY LLP
Seaport East
Two Seaport Lane
Boston, MA 02210
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

ADAM J. SHAFRAN (admitted pro hac vice)
*ashafran@rflawyers.com*
JONATHON D. FRIEDMANN (admitted pro hac vice)
*jfriedmann@rflawyers.com*
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
Telephone: (617) 723-7700
Facsimile: (617) 227-0313

ROBERT J. WOZNIAK, JR. (admitted pro hac vice)
*Rwozniak@fklmlaw.com*
FREED KANNER LONDON & MILLEN, LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521

Attorneys for Plaintiffs and the Class

# <u>TABLE OF CONTENTS</u>

Page

I.   INTRODUCTION ....................................................................................... 1

II.   LOCAL RULE 7-3 MEET AND CONFER ......................................................... 5

III.   STATEMENT OF FACTS ............................................................................... 5

   A.   The Objection Campaign Begins. ...................................................... 6

   B.   Improper Solicitation of Class Members for Fox Rothschild Via a Pressure
      Campaign. .......................................................................................... 6

   C.   The POAA Distributes False and Deceptive Information to the Class. ............ 7

   D.   Fox Rothschild's Unauthorized Appearance on Behalf of Class Members
      and Its Misrepresentations to this Court. ........................................... 13

IV.   Argument .................................................................................................. 14

   A.   This Court Has a Duty to Safeguard the Class Against Deceptive
      Communications by Third Parties and Counsel. ............................... 14

   B.   The Conduct and Misrepresentations of the POAA and Fox Rothschild
      Warrant Corrective Notice. .............................................................. 15

V.   CONCLUSION ......................................................................................... 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                                                         **Page(s)**

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) ................................................................. 5

*Georgine v. Amchem Prods.*,
   160 F.R.D. 478 (E.D. Pa. 1995) ........................................................... 18

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) ............................................................................... 14

*Hickman v. Taylor*,
   329 U.S. 495 (1947) ............................................................................. 14

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*,
   418 F.3d 277 (3d Cir. 2005) ................................................................. 14

*In re McKesson HBOC, Inc. Secs. Litig.*,
   126 F. Supp. 2d 1239 (N.D. Cal. 2000) ................................. 4, 15, 18, 19

*In re Williams-Sonoma, Inc.*,
   No. 19-70522, 2020 WL 131360 (9th Cir. Jan. 13, 2020) ................... 14

*O'Connor v. Uber Techs., Inc.*,
   No. C-13-3826 EMC, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) .................. 17

*Priddy v. Health Care Serv. Corp.*,
   No. 14-cv-3360, 2016 WL 6237800 (C.D. Ill. Oct. 25, 2016) ........................... 14

*Retiree Support Grp. of Contra Costa Cty. v. Contra Costa County*,
   No. 12-cv-00944-JST, 2016 WL 4080294 (N.D. Cal. July 29, 2016) ..... 15, 16, 17

*Superior Bev. Co. v. Owens-Ill., Inc.*,
   No. 83 C 512, 1988 WL 87038 (N.D. Ill. Aug. 14, 1988) .................................. 14

**State Cases**

*Masonek v. Wells Fargo Bank*,
   No. SACV091048DOCRNBX, 2009 WL 10672345 (C.D. Cal. Dec. 21, 2009)  5, 17

**State Statutes**

Cal. Bus. & Prof. Code § 6147-6148 ....................................................... 1

Cal. Bus. & Prof. Code § 6104 ................................................................. 3

Cal. Rule of Professional Conduct 1.7 .............................................. 1, 2, 18

Cal. Rule of Professional Conduct 1.8.6 .................................................. 2

Cal. Rule of Professional Conduct 1-400(D)(3) ..................................... 18

Mass. Gen. Laws ch. 149, § 148B ............................................................................. 12

**Other**

William B. Rubenstein, 3 Newberg on Class Actions § 9:2 (5th ed.)................. 14, 15

# I.    INTRODUCTION

The Pepperidge Farm Owners Association of America ("POAA"), in concert with its counsel Fox Rothschild LLP, has for the past six months targeted Class Members with a deceptive parallel notice campaign that used false and/or misleading information, omissions, and ethically questionable solicitation practices to create the impression of largescale opposition to the settlement reached by the parties in this litigation. The campaign was improper and misleading in multiple respects and has resulted in, among other things, a false representation by Fox Rothschild to the Court regarding a fact relevant to this Court's final approval decision: the identity and number of Class Members objecting to the Settlement.

The POAA campaign was pushed by certain officers of the POAA (including a Pennsylvania distributor, Gary Waxman), despite the apparent initial reluctance of POAA Class Member distributors who supported the Settlement. Beginning in July 2019, the POAA began soliciting Class Members to retain Fox Rothschild as counsel. The POAA sent mass emails to Class Members with a link to the POAA website, through which Class Members could fill out and download an "affidavit" to sign. The affidavit was prepopulated with a statement that the Class Member elected to have Fox Rothschild represent them "in this case." The affidavit did not reference any objection to the settlement and set forth no information regarding the scope of the representation in apparent violation of California Business and Professions Code Sections 6147-6148, and potentially misled Class Members into believing that Fox Rothschild was the law firm litigating the underlying claims against Pepperidge Farm. The affidavits also contained no disclosure of any potential conflict in Fox Rothschild's joint representation of the POAA entity and individual Class Members (even though POAA officers admit there was a conflict between Class Member and non-Class Member distributors in their organization), or any disclosure that the POAA was paying Fox Rothschild's fees with respect to the individual Class Member's representation. *See* California Rule of Professional Conduct 1.7 (Conflict

of Interest: Current Clients) and 1.8.6 (Compensation from One Other Than Client).

Through the POAA, Fox Rothschild began collecting—and Class Members began signing—these affidavits long before this Court had preliminarily approved the settlement and ordered the mailing of Class Notice. Remarkably, however, it appears that Fox Rothschild never directly communicated with many if not most of the Class Members who signed the affidavits at any point before the close of the exclusion and objection period on January 3, 2020. To this day, Fox Rothschild is unable to identify every Class Member it allegedly represents.

Meanwhile, beginning in July 2019, and continuing through January 3, 2020, the POAA distributed weekly mass emails to Class Members containing false and/or misleading information about the settlement and directing Class Members to the POAA website to view POAA-created videos[1] containing more deceptive information about the settlement. The false statements of fact include misrepresentations about both the terms of the Settlement (including stating that the Settlement eliminates distributors' existing commission schedule) and the Settlement process (for example, stating that a non-opt out Class Member would be bound by the amended Consignment Agreement even if he did not deposit his settlement check). POAA personnel also provided Class members with false information about the Settlement through text messages. For example, a POAA board member told several Class Members that if they objected to the Settlement, the Court could strike the amendments to the Consignment Agreement but still allow the Class Members to collect their shares of the monetary settlement. And one or more Class Members who signed Fox Rothschild's "representation" affidavit before receiving Class Notice but later communicated their support of the settlement after reviewing the Notice were

---

[1] The POAA has posted 27 videos on YouTube concerning the Settlement, almost all of which contain at least some of the misrepresentations described in this motion, and which collectively have received nearly 14,000 views. *See* Video Index, available at <https://www.youtube.com/channel/UCm-5EuoQfgh7I96nuH6uimg/videos>.

told by the POAA that it was "too late" to pull their name off the "objection list."

The fruits of the misinformation campaign run by the POAA and Fox Rothschild were tendered to the Court on January 3, 2020. Fox Rothschild's January 3, 2020 court filing states that the firm represents 167 Class Members who object to the Settlement. Dkt. No. 199; *see also* Declaration of Adam Shafran ("Shafran Decl.") submitted herewith at ¶ 2, Exhibit 1 ("Our firm represents the 167 class member . . . .").

The falsity of this representation is indisputable. Over the last several weeks, a number of Class Members have contacted Class Counsel, angered after learning that Fox Rothschild had entered an appearance in this case on their behalf and indicated their opposition to the Settlement, when in fact the Class Member (1) never had any communication whatsoever with any attorney at Fox Rothschild; (2) never authorized Fox Rothschild to object to the Settlement on their behalf; and (3) actually supports the Settlement. Dkt. Nos. 202-4; 202-5; 202-6; 202-7; 202-8. This conduct is gravely concerning. *See, e.g.,* Bus. & Prof. C. § 6104 (willfully and without authority appearing as an attorney for a party to an action or proceeding constitutes cause for disbarment or suspension).

The activities of POAA and Fox Rothschild—commandeering the Court's notice program, soliciting legal representation of Class Members through misleading and ethically problematic communications, materially misrepresenting terms of the Settlement, impugning the integrity of officers of the court, appearing without authorization on behalf of Class Members and misrepresenting their position regarding the Settlement—have seriously tainted the settlement approval process. Fox Rothschild has misidentified as objectors an undetermined number of Class Members who in fact support the Settlement. It appears that other Class Members have objected or opted out of the Settlement in reliance on the false information disseminated by the POAA.

Plaintiffs and Class Counsel believe the Settlement—the product of six years

of litigation, mediation sessions with two different mediators, and many months of follow on negotiations—is fair, adequate and reasonable. While most Class Members appear to agree, it is likely that some disagree, and the Court should hear from them. However, at this point, the misconduct and misrepresentations of the POAA and its counsel prevent the Court from assessing, as it must, the actual level of support for the Settlement within the Class.

Accordingly, Plaintiffs request the following relief:

- The court void the existing exclusion requests and objections and re-open the objection and exclusion period for the 167 Class Members who appear on Fox Rothschild's "objection list," as well as the 44 Class Members who submitted opt out forms after being exposed to the POAA misinformation campaign. *See* Declaration of Jennifer Mills ("Mills Decl.") submitted herewith at ¶ 3.

- Plaintiffs' proposed corrective notice (Shafran Decl., Ex. 23) be sent to Class Members identified as objectors by Fox Rothschild as well as Class Members who opted out of the Settlement (collectively approximately 200 Class Members). The proposed notice corrects the POAA's misrepresentations about the Settlement and provides a new deadline of by which the approximately 200 Class Members may exercise their right to participate in, object to, or opt out of the Settlement.

- Fox Rothschild and the POAA be ordered to pay the cost of such corrective notice.

- Any solicitation of representation by or on behalf of Fox Rothschild comply with all applicable Rules of Professional Conduct, including that it include a prominent designation that the solicitation is an "Attorney Advertisement—Not An Official Notice—No Obligation To Respond." *In re McKesson HBOC, Inc*., 126 F. Supp. 2d 1239, 1241

(N.D. Cal. 2000).

- The Court set a new final approval hearing date in June 2020, at which time final approval of the Settlement may be adjudicated.

The relief sought by this motion is modest and narrowly tailored. Plaintiffs do not seek the disqualification of Fox Rothschild (though grounds for such a request exist) or an order barring communication about the Settlement by POAA officials (though some courts have entered protective orders against third parties under similar circumstances). *Masonek v. Wells Fargo Bank*, No. SACV091048DOCRNBX, 2009 WL 10672345 (C.D. Cal. Dec. 21, 2009). The proposed corrective notice will unfortunately delay the fairness hearing by several months, to the prejudice of the at least 800 Class Members who, by Fox Rothschild's own incorrect count, have elected to support the Settlement. Nonetheless, Plaintiffs and Class Counsel believe the delay is warranted so that the Court has a more accurate picture of the actual views of the Class with respect to the Settlement and can fulfill its "fiduciary duty to look after the interests of [] absent class members." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015).

## II.   LOCAL RULE 7-3 MEET AND CONFER

On January 15, 2020, Class Counsel and counsel for the POAA met and conferred by telephone regarding this motion. On the call for the Class were Adam Shafran, Peter Rukin, and Patrick Vallely. On the call for the purported objectors and POAA were Jordann Conaboy and Colin D. Dougherty. Class Counsel discussed the basis for the motion, and the relief Plaintiffs planned to request. Counsel were unable to reach an agreement regarding the requested relief, necessitating this motion. Shafran Decl. at ¶ 3.

## III.   STATEMENT OF FACTS

On April 30, 2019, Plaintiffs filed a motion for preliminary approval of class action settlement. Dkt. No. 178. Hearing on the motion was held on June 17, 2019, at

which time the Court took the motion under submission. Dkt. No. 179.

**A.     The Objection Campaign Begins.**

The POAA is an entity that purports to advocate for the interest of Pepperidge Farm Distributors. According to its website, the POAA considers "everyone who is a Pepperidge Farm business owner [to be] a member of the POAA." *See* www.teampoaa.org.

In May 2019, the POAA leadership internally debated the merits of the Settlement, which had just been filed with the Court in connection with Plaintiffs' preliminary approval motion. Certain non-Class Member officers, including Gary Waxman (a Pennsylvania distributor) were opposed to the Settlement and insisted that Class Members on the leadership team who had a personal interest in the Settlement "from CA, IL and MA should abstain from voting on how the POAA should proceed with respect to the proposed class settlement." Shafran Decl. at ¶ 4, Ex. 2.

On July 10, 2019, the law firm of Fox Rothschild filed a "Notice of Appearance of Interested Parties" on behalf of three officers of the POAA: Tom Dudal, Tony Sherman, and Art Balser. Dkt. No. 181.

**B.     Improper Solicitation of Class Members for Fox Rothschild Via a Pressure Campaign.**

Beginning in or about July 2019, the POAA began soliciting Class Members to retain Fox Rothschild as counsel. Shafran Decl. at ¶ 5, Ex. 3. Mass emails that the POAA sent to Class Members provided a link to the POAA website, through which Class Members could fill out and download an "affidavit" ("representation affidavit") to sign. *Id.*, at ¶¶ 5-12 Ex. 3-10. The representation affidavit was prepopulated with a statement that the Class Member elected to have Fox Rothschild represent them "in this case." *Id.*, at ¶ 13, Ex. 11. The representation affidavit did not reference any objection to the settlement and set forth no information regarding the scope of the representation. *Id*. The representation affidavit also contained no disclosure of any potential conflict in Fox Rothschild's joint representation of the

POAA and individual Class Members. *Id*. Nor did the representation affidavit disclose that the POAA was paying Fox Rothschild's fees with respect to the Class Member's individual representation. *Id*.

The POAA's stated goal—as articulated by Gary Waxman—was to "derail the proposed class settlement." *Id.*, at ¶ 14 Ex. 12. By September 18, 2019, the POAA had collected 119 representation affidavits, which non-Class Member Waxman said was "great but not enough." *Id.*, at ¶ 15 Ex. 13. Class Members were pressured in telephone calls and in person meetings to sign the representation affidavits. POAA leadership internally discussed Class Members' apparent reluctance to sign the representation affidavits and the need to work the phones to make an extra effort to "close" with Class Members (i.e., pressure them to sign representation affidavits). *Id.*, at ¶ 16 Ex. 14.

Fox Rothschild began collecting—and Class Members began signing—these representation affidavits even before this Court had preliminarily approved the terms of the settlement and ordered the mailing of Class Notice. *Id.*, at ¶ 17 Ex. 15. However, it appears that Fox Rothschild never communicated with many of the Class Members who signed the affidavits at any point before the close of the exclusion and objection period on January 3, 2020. *See* Dkt. Nos. 202-3; 202-4; 202-5; 202-6; 202-7; 202-8.

**C.   The POAA Distributes False and Deceptive Information to the Class.**

Meanwhile, beginning in July 2019, and continuing through January 3, 2020, the POAA distributed weekly mass emails to Class Members about the Settlement and directed Class Members to the POAA website to view POAA-created videos. The videos and emails were inflammatory rather than balanced, did not discuss the benefits of the Settlement, and included false and/or misleading information about it. For example:

- The POAA falsely represented that the amendments eliminated the so-called "Schedule B" from the Consignment Agreement, which sets forth each Class Member's commission schedule. *See* POAA,

"Settlement Contract Introduction" ("This proposed contract omits several items that are covered in our videos. But most important, the new contract doesn't state how distributors are paid and the percentage [graphic shown with Schedule B with a large red X through it, suggesting Schedule B has been deleted]. There is no Schedule B."))[2] In fact, the amended Consignment Agreements do not change the incorporation of Schedule B by reference as set forth in all existing Consignment Agreements and make no change to it. *See, e.g.,* Dkt. No. 178-3 Ex. E, second attachment (2001 Redlined Blue Consignment Agreement) at 1 (ECF page 93) (referring to Schedule B in definition of "Consigned Products," with no modifications to definition or reference to Schedule B).

- In direct contravention of the terms of the Settlement and the court-authorized Class Notice, the POAA misrepresented to Class Members that the Settlement will "replace the Yellow, Green, Blue 1987, Blue 1996 and even the Blue 2001" contracts between Pepperidge Farm and the Class Members. Shafran Decl. at ¶ 18, Ex. 16; *see also id.* at ¶ 19, Ex. 17 ("granting PF final approval to replace the Yellow, Green and all versions of the Blue contracts"). In fact, as the Court-authorized Notice states, the amendments to the Consignment Agreement "do not alter the form of the Consignment Agreement you have with Pepperidge Farm except for the specific amendments contained therein (i.e. if you have Green Agreement with Pepperidge Farm, you will continue to have a Green Agreement subject only to the amendments, if you have a Yellow Consignment Agreement with Pepperidge Farm, you will continue to have a Yellow Agreement subject only to the amendments, and if you have a Blue Consignment Agreement with

---

[2] <https://www.youtube.com/watch?v=7VLhAS6SKJI> at 4:33.

1    Pepperidge Farm, you will continue to have a Blue Agreement subject

2    only to the amendments)." Dkt. No. 190-1 at p. 11.

3    • The POAA represented to Class Members that under the revised

4       contracts, Pepperidge Farm is given a new right to send distributors

5       more product than was ordered ("to plus any additional product to

6       distributors' orders"). *See* POAA, "Settlement Plus-Out" at 0:56.[3]

7       However the POAA and Class Members are all aware that it has been

8       Pepperidge Farm's longstanding interpretation that existing

9       Consignment Agreements[4] give it the right to deliver more product to

10      distributors than was ordered, and that Pepperidge Farm has been doing

11      so for the better part of at least the last 40 years. Shafran Decl. at ¶ 20,

12      Ex. 18, Dudal Answer to Interrogatory no. 4. The proposed amended

13      Consignment Agreements place *restrictions* on any such rights,

14      inserting language that Pepperidge Farm can only deliver "the amount

15      of Consigned Products ordered by" distributors and requiring

16      Pepperidge Farm to give distributors 7 days advance notice of any

17      additional product and authorize distributors to reject any additional

18      product if Pepperidge Farm fails to provide the requisite notice. *Id*.

19   • The POAA made material misrepresentations about the Settlement

20      process and Class Members' options under the Notice program. For

21      example, the POAA told Class Members that (1) if "an owner fails to

22      opt out or simply does nothing, they're still bound by the terms of the

23      settlement including the new contract even if an owner refuses to

24      deposit the settlement check," and (2) Class Members could choose "to

25

26   [3] Available at <https://www.youtube.com/watch?v=h9X_aqkYx6g>.
     [4] *See, e.g.,* Dkt. No. 178-3 Ex. E, second attachment (2001 Redlined Blue

27   Consignment Agreement) at 2 (ECF page 94) ("Bakery will consign and deliver to
     Consignee . . . and Consignee will accept sufficient quantities of Consigned Product

28   to maintain at all times, an adequate and fresh supply thereof in retail stores in the
     Territory which request such products and whose accounts are not demonstrably
     unprofitable. . .").

have your contracts altered OR receive relief without having your contract amended."; POAA, "CONTEXT-Full Length" at 9:53 (Sept. 4, 2019)[5]; Shafran Decl. at ¶ 21, Ex. 19. In fact: (1) if the Settlement is approved, a Class Member who does not object or opt out but does not endorse and deposit his Settlement check will not be bound by the amended Consignment Agreement; and (2) Class Members have no opportunity under the Settlement to obtain its financial benefits unless they have accepted the amendments described in the Class Notice. Dkt. No. 178-3 Ex. 1 ¶ 15 ("Any Current Distributor who or that cashes a settlement check and does not opt out shall be deemed to have executed and agreed to be bound by the corresponding Revised Consignment Agreement.").

- The POAA falsely represented to Class Members that Pepperidge Farm had "invited Class Counsel to visit corporate depots in Illinois to sell class members on the proposed new contract," suggesting some improper collusion had transpired. Shafran Decl. at ¶ 18, Ex. 16.

- The POAA lied to Class Members about Class Counsel's court filings in this case. For example, the POAA told Class Members that Plaintiffs' motion for preliminary approval "expressly states that the monetary relief is only the nuisance value to Pepperidge Farm, which is the bare minimum payment to settle a case for a release of the pending claims." *Id*. at ¶ 21, Ex. 19. Class Counsel obviously made no such representation anywhere in the record, either in their papers or in open court.

- The POAA deceived Class Members about other terms of the amended Consignment Agreements. For example, the POAA told Class Members that the amended Consignment Agreement continues to

---

[5] Available at <https://www.youtube.com/watch?v=fA2SsuETtqc&t=2s>.

impose "Mandatory Service Frequency and Day of Week Standards despite what the notice says," *See* POAA, "Class Action Settlement Contract Point 7 Examined" at 18:03[6], when in fact that is not the case. Dkt. No. 178-3 Ex. E, second attachment (2001 Redlined Blue Consignment Agreement) at 4 (ECF page 96). POAA also stated that the amended Consignment Agreement creates a new right for Pepperidge Farm to automatically deduct "any amounts" from sales commissions, Shafran Decl. at ¶ 18, Ex. 16], when in fact the Amended Consignment Agreements do not authorize any new charges by Pepperidge Farm. Pursuant to existing addenda or side agreements to the current contracts Pepperidge Farm may in some circumstances charge distributors for certain product delivered to them. The Amended Consignment Agreements do not allow Pepperidge Farm to impose any new such charges unless they have been agreed to by both Pepperidge Farm and the distributor. Thus, if a distributor is not subject to such charges today, the Amended Consignment Agreements will not change that in any way. Dkt. No. 178-3 Ex. E, second attachment (2001 Redlined Blue Consignment Agreement) at 2 (ECF page 94).

- The POAA also tried to stoke fear among Class Members with wholly speculative and unsupported claims about the impact that the amended Consignment Agreements would have on the value of Class Members' routes. For example, the POAA told Class Members that any change to their contract would mean that "your route would be worth less money than it is today," and that "Twenty years from now - you may have to explain to your kids why you sold a $400,000 contract for the price of a new delivery truck." Shafran Decl. at ¶ 9, Ex. 7. The POAA made no attempt to articulate any basis for this wholly speculative statement.

---

[6] Available at <https://www.youtube.com/watch?v=2H_UAzMM2d0&t=4s>.

The emails and videos also contained inflammatory statements and made material omissions regarding the settlement terms. For example, the POAA told Class Members that there was "no valid reason for a change in the contract when the entire scope of the lawsuit dealt with employee misclassification," *id.* at ¶ 5, Ex. 3, without explaining that there may be good reasons why a company such as Pepperidge Farm might wish to limit the likelihood of future misclassification claims by strengthening or clarifying the worker's control in the context of a settlement such as this one. *See, e.g.*, Mass. Gen. Laws ch. 149 § 148B(1) (to be an independent contractor, worker must be "free from control and direction in connection with the performance of the service, both under his contract and in fact"). The POAA further misrepresented the scope of changes to the Consignment Agreement, by describing it as a "radically different new form of contract" and "a really awful, drastically new form of contractual relationship." POAA, "CONTEXT-Full Length" at 6:08 (Sept. 4, 2019).[7] And the POAA told Class Members that the financial settlement was a "pittance", Shafran Decl. at ¶ 19, Ex. 16, when in fact its own President, Mr. Sherman (a California Class Member), described the individual settlement payments in this case as "large sum[s] of money" and his own settlement payment as "substantial." *Id.* at ¶ 22, Ex. 20.

The POAA also impugned the motivations of Class Counsel in negotiating the Settlement, claiming that the Class Counsel were "misleading the court into the belief that the proposed settlement is the outcome of "hard-fought litigation and extensive arms-length (good faith) negotiations that secure meaningful relief for the Class'" when in fact they just "want a quick settlement for less than pennies on the dollar and will collect $5.625M . . . without any further work." *Id.* at ¶ 21, Ex. 19.

POAA personnel also provided Class Members with false information about the Settlement through text messages. In one such message, Tom Dudal, the POAA's Treasurer, told several Class Members that by objecting to the Settlement, the Court

---

[7] Available at <https://www.youtube.com/watch?v=fA2SsuETtqc&t=2s>.

would strike the amendments to the Consignment Agreement while allowing the Class Members to collect their share of the monetary settlement Dkt. No. 202-6 ¶¶ 17-19 & Ex. 3 thereto. One or more Class Members who initially signed Fox Rothschild's "representation" affidavit but later communicated to POAA their support of the settlement were told by the POAA that it was "too late" to pull their name off the "objection list." Dkt. No. 202-6 ¶¶ 10-13 & Ex. 2 thereto.

## D. Fox Rothschild's Unauthorized Appearance on Behalf of Class Members and Its Misrepresentations to this Court.

Fox Rothschild's January 3, 2020 court filing states that the firm represents 167 Class Members who object to the Settlement. Dkt. No. 199; *see also* Shafran Decl. at ¶ 2, Ex. 1 ("Our firm represents the 167 class member . . . ."). This is untrue. Over the last several weeks, a number of Class Members have contacted Class Counsel upset after learning that Fox Rothschild has entered an appearance in this case on their behalf and indicating their opposition to the Settlement, when in fact the Class Member (1) never had any communication whatsoever with any attorney at Fox Rothschild and (2) never authorized Fox Rothschild to appear, or object to the Settlement, on their behalf. These Class Members actually support the Settlement. Dkt. Nos. 202-4; 202-5; 202-6; 202-7; 202-8.

On January 10, 2020, Class Counsel wrote to Fox Rothschild, raising several potential ethical concerns with the firm's effort to solicit clients and its false representations to the Court, in order to provide Fox Rothschild with an opportunity to clarify the facts and explain its conduct before Class Counsel alerted the Court. Shafran Decl. at ¶ 23, Ex. 21. In its response, Fox Rothschild engaged in an *ad hominem* attack on Class Counsel without responding to Class Counsel's specific concerns. *Id*. at ¶ 24, Ex. 22. Despite numerous requests, Fox Rothschild has repeatedly refused to identify which (or even how many) of the supposed 167 objectors the firm communicated with before January 3, 2020.[8]

---

[8] For example, on Thursday, January 9, 2020, Magistrate Judge Kim gave Plaintiffs leave to propound interrogatories on Objector Tom Dudal and ordered Fox

## IV.   ARGUMENT

### A.   This Court Has a Duty to Safeguard the Class Against Deceptive Communications by Third Parties and Counsel.

"Class action law encompasses a formal means for communicating with absent class members—the notice process." William B. Rubenstein, 3 Newberg on Class Actions § 9:2 (5th ed.). The district court is responsible for overseeing this formal process and ensuring that parties, non-parties, and counsel do not engage in improper conduct that undermines it. *See, e.g., Superior Beverage Co., Inc. v. Owens-Illinois, Inc.*, 1988 WL 87038, at *1 (N.D. Ill. 1988), citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) ("Rule 23(d) of the Federal Rules of Civil Procedure gives the Court substantial discretion to regulate the conduct of parties and their counsel in class actions."); *see also In Re Williams-Sonoma, Inc.*, No. 19-70522, 2020 WL 131360, at *6 (9th Cir. Jan. 13, 2020), quoting Newberg, § 9:2 ("Rule 23(d) provides district courts with 'substantial residual powers' to regulate communications with absent class members outside of formal notice requirements"); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 310 (3d Cir. 2005) ("district courts must closely monitor the notice process and take steps to safeguard class members from 'unauthorized [and] misleading communications from the parties or their counsel'").

In addition, the conduct of attorneys in class litigation is constrained by numerous ethical restrictions which the Court has the power to enforce. "Professional ethics rules regulate the manner in which attorneys may communicate

---

Rothschild to respond by January 14, 2020. Dkt. No. 204. One of the interrogatories requested that Dudal identify by name every individual on the "objectors list" with whom Fox Rothschild communicated before January 3, 2020. On January 14, 2020, Dudal responded that he "lacks sufficient knowledge to answer Interrogatory No. 1 one way or the other with respect to others on the OBJECTOR LIST, as defined in Plaintiffs' Interrogatories." Shafran Decl. at ¶ 20, Ex. 18, Dudal Answer to Interrogatory no. 1. This was a flatly improper response. It is settled law that a party cannot refuse to answer interrogatories on the ground that the information properly sought is solely within the knowledge of his attorney. *Hickman v. Taylor*, 329 U.S. 495, 504, (1947). "[A] party cannot refuse to answer an interrogatory merely on the ground that the information sought is solely within the knowledge of his attorney." *Priddy v. Health Care Serv. Corp.*, No. 14-cv-3360, 2016 WL 6237800, at *4 (C.D. Ill. Oct. 25, 2016). ("A party must disclose in answers to interrogatories information in his attorney's possession, even though it may not have been transmitted to a party").

with absent class members; for example, they restrict attorneys from soliciting

clients in certain circumstances and manners, prohibit *ex parte* communications with

represented parties, and forbid misleading or deceptive communications." Newberg,

§ 9:2. *In re McKesson HBOC,* 126 F. Supp. 2d at 1241.

Finally, the Court has the power under both Rule 23 and the All Writs Act to

control and remedy deceptive and misleading communications by third parties with

the Class that interfere with the Court's Notice process. *See, e.g.*, *Retiree Support

Group of Contra Costa County v. Contra Costa County*, No. 12-cv-00944-JST, 2016

WL 4080294, at * 1, 10-11 (N.D. Cal. July 29, 2016) (ordering corrective notice to

remedy misleading communication from labor union which instructed class members

how they could object to the settlement "and in so doing agree to be represented by

[labor union's counsel]"; discussing cases).

**B.    The Conduct and Misrepresentations of the POAA and Fox Rothschild
Warrant Corrective Notice.**

As discussed above, the POAA has disseminated false, misleading, and

incomplete information about the Settlement to Class members via mass emails and

videos on its website. *Supra* at 7-13. The misrepresentations concern key terms of

the Settlement, including whether the Settlement eliminates Schedule B to the

Consignment Agreement and replaces Class Members' yellow/green/blue contracts.

*Id.; compare* Dkt. No. 178-3 at Ex. B (Class Notice). The POAA has also misled

Class Members regarding the mechanics of the Settlement approval process,

including by suggesting that objections to the Settlement would persuade the Court

to strike the contract changes from the Settlement while allowing Class Members to

collect their share of the monetary payment, and that Class Members who do not

cash their settlement checks will still be bound by the amended Consignment

Agreement. *Id.*

Meanwhile, Fox Rothschild has undermined the integrity of the Notice process

by, among other things, securing vague "representation" affidavits from Class

Members that (among many other failings) did not identify the scope of the

representation as required by the California Rules of Professional Conduct, and by misrepresenting to the Court the position of the representation affidavit signatories with respect to the Settlement. Fox Rothschild and the POAA essentially hijacked the Court's Notice program before it even began, such that the Court now has no reliable way to determine the actual level of support for the Settlement among the 167 Class Members identified on Fox Rothschild's "objection list" and the 44 Class Members who opted out of the Settlement. Mills Decl. at ¶ 3.

Courts faced with similar misleading communications and misconduct by counsel and third parties have ordered corrective notice to Class Members who opted out of or objected to the Settlement after being exposed to such communications and practices. For example, in *Retiree Support Group of Contra Costa County*, 2016 WL 4080294, at * 1, 10-11, AFSCME Local 57, a labor union, moved to intervene in order to oppose to the parties' class settlement. After the court denied Local 57's motion, the union mailed a single misleading communication to class members. The letter "included a form by which recipients could opt out of and object to the settlement, and in so doing agree to be represented by Beeson Tayer & Bodine," Local 57's counsel. *Id*. at *1. In response, Plaintiffs moved for (1) a temporary restraining order enjoining Local 57 and its officers from communicating any further with class members; and (2) an order requiring corrective notice and the striking of elections made by class members through Local 57's form. *Id*.

The court granted Plaintiffs' request to invalidate the obtained opt-outs and issue corrective notice to class members who received Local 57's letter. The court noted that parties and non-parties are free to encourage class members to opt out or vote against a class action settlement "provided they do so in a fair manner that avoids material misrepresentations and omissions." *Id*. at * 6. However, "courts may limit communications that improperly encourage potential class members to not join a suit, especially if they fail to provide adequate information about the pending class action." *Id*., citing *O'Connor v. Uber Technologies, Inc*., No. C-13-3826 EMC, 2013

1   WL 6407583 at *4-5 (N.D. Cal. Dec. 6, 2013). The court then discussed at length

2   case authority that supported the issuance of corrective notice and the striking of opt-

3   outs obtained after the dissemination of "communications that were misleading,

4   coercive, or omitted critical information." *Id*.

5       The court concluded that Local 57's letter contained three misleading

6   statements warranting corrective notice. As the court explained, while two of the

7   statements disparaging the settlement may have been technically correct, they each

8   attributed to the settlement a condition that had been the case prior to the settlement

9   and "so is not something the settlement changes." *Id*. at *7.

10      Finally, the court discussed the propriety of the opt-out form "authoriz[ing] the

11  firm of Beeson Tayer and Bodine to represent them in opting out of and objecting to

12  the settlement." The Court noted several problems with this form, including that it

13  did "not allow the recipient to specify whether they intend to opt out or object," and

14  that it did not explain "the effects of opting out or objecting." *Id*. at *8. The court

15  found that class members had been "significantly harmed" by Local 57's conduct,

16  struck all objections and opt outs obtained by Local 57, and ordered corrective notice

17  to those individuals. *Id*. at *8-11.

18      This court reached a similar result in *Masonek*, 2009 WL 10672345, at *4.

19  There, a third party soliciting opt outs to the settlement had distributed a

20  communication to class members that contained "disconcerting statements about

21  when and how absent class members must act to protect their rights." *Id*. at *3. The

22  court granted Plaintiffs' motion for curative notice and ordered the third party to bear

23  the costs of that notice. The court also enjoined the third party from further

24  communicating with absent class members in a misleading manner. *Id*. at *4.

25      Other courts faced with communications by third parties or counsel

26  significantly less misleading than those disseminated by the POAA in this case have

27  ordered corrective notice and the voiding of opt outs and objections. *See, e.g., In re*

28  *McKesson HBOC*, 126 F. Supp. 2d at 1241 (ordering corrective notice; counsel's

solicitations of opt-outs are misleading where they "provide an inadequate disclosure

of the comparative costs and benefits of participating in a class action" and "do not

identify the court-appointed lead plaintiff and counsel or the procedures safeguarding

the appropriateness of class certification. *See* Cal. R. Prof. Conduct 1–400(D)(3)

(requiring full disclosure of material facts)."); Cal. R. Prof. Conduct 7.1(a) (same);

*see also Georgine v. Amchem Products, Inc.*, 160 F.R.D. 478, 490, 497 (E.D. Pa.

1995) (invalidating exclusion requests and ordering corrective notice to remedy the

improper communications by counsel opposing the settlement, which "contained

only one-sided attacks on the terms of the settlement without any discussion of the

settlement benefits" and "interfered with the careful balance that the notice package

achieved").

      The conduct of Fox Rothschild and the POAA in this case is gravely serious.

It includes pressuring class members over the phone and in person to sign

representation agreements with counsel, failing to make required conflict of interest

disclosures to potential clients, failing to communicate with purported clients, failing

to define the scope of representation with respect to client engagements, making

unauthorized appearances for parties in a case in a manner adverse to their interests,

impugning the integrity of court proceedings and Class Counsel, and disseminating

false and misleading communications about the settlement. The relief Plaintiffs seek

is modest in comparison:

- That the court void the existing exclusion requests and objections and
re-open the objection and exclusion period for the 167 Class Members
who appear on Fox Rothschild's "objection list," as well as the 44 Class
Members who submitted opt out forms after being exposed to the
POAA misinformation campaign.

- That Plaintiffs' proposed corrective notice (Shafran Decl. at ¶ 25, Ex.
23) be sent to Class Members identified as objectors by Fox Rothschild
as well as Class Members who opted out of the Settlement (collectively

approximately 200 Class Members). The proposed notice corrects the
POAA's misrepresentations about the Settlement and provides a new
deadline of by which the approximately 200 Class Members may
exercise their right to participate in, object to, or opt out of the
Settlement.

- That Fox Rothschild and the POAA be ordered to pay the cost of such
corrective notice.

- That any solicitation of representation by or on behalf of Fox Rothschild
comply with all applicable Rules of Professional Conduct, including
that it includes a prominent designation that the solicitation is an
"Attorney Advertisement—Not An Official Notice—No Obligation To
Respond." *In re McKesson HBOC,* 126 F. Supp. 2d at 1241.

- That the Court set a new final approval hearing date in June 2020, at
which time final approval of the Settlement may be adjudicated.

## V.   CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court grant
Plaintiffs' Motion for Corrective Notice.


Dated:  January 21, 2020          RUDOLPH FRIEDMANN LLP

                                  By:  /s/ Adam Shafran
                                  _____

                                      Adam Shafran


                                  ADAM J. SHAFRAN
                                  JONATHON D. FRIEDMANN
                                  RUDOLPH FRIEDMANN LLP

                                  PETER RUKIN
                                  VALERIE BRENDER
                                  RUKIN HYLAND & RIGGIN LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WILMER J. HARRIS
SCHONBRUN SEPLOW HARRIS &
HOFFMAN LLP

THOMAS V. URMY, JR.
SHAPIRO HABER & URMY LLP

ROBERT J. WOZNIAK, JR.
FREED KANNER LONDON & MILLEN,
LLC

Attorneys for Plaintiffs and the Class